# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ASYLUMWORKS, *et al.*,<br><br>           Plaintiffs,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS,[1] in his official capacity as the purported Acting Secretary of Homeland Security, *et al.*,<br><br><br>           Defendants. | No. 2020-cv-03815-BAH |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY

---

[1] Alejandro N. Mayorkas has been substituted for Chad F. Wolf as a defendant in this case pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD......................................................................................................... 2

ARGUMENT ...................................................................................................................... 3

I.  The Government Is Not Entitled to a Stay ................................................................ 3

    A.  A Stay Would Cause Grave Harm to Plaintiffs ...................................................... 3

    B.  Defendants Have Not Met Their Burden To Show a Clear Case of Hardship or Inequity From Litigating This Case ...................................................... 5

    C.  A Stay Would Not Promote the Efficient Use of Judicial Resources ..................... 9

    D.  Plaintiffs Are Likely To Succeed on the Merits ..................................................... 9

        1.  The Rules Are Invalid Because Mr. Wolf Was Not Lawfully Serving As Acting Secretary Under The Homeland Security Act ........... 10

        2.  Mr. Wolf Also Lacked Authority Under The Federal Vacancies Reform Act To Serve As Acting Secretary Or Promulgate The Rules ............................................................................................................ 12

        3.  The Eleventh-Hour Ratifications Did Not Save The Rules' Validity ....... 14

II.  Plaintiffs' Proposed Briefing Schedule Is Reasonable .......................................... 16

CONCLUSION .................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**

*Batalla Vidal v. Wolf*, No. 16-cv-4756,
2020 WL 6695076 (E.D.N.Y. Nov. 14, 2020).................................................................. passim

*Batalla Vidal v. Wolf*, No. 16-cv-4756,
2020 WL 7121849 (E.D.N.Y. Dec. 4, 2020) ............................................................................ 12

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ........................................................................................ 2, 3, 8

*Bullock v. U.S. Bureau of Land Mgmt.*,
489 F. Supp. 3d 1112 (D. Mont. 2020)..................................................................................... 15

*Casa de Maryland, Inc. v. Wolf*,
486 F. Supp. 3d 928 (D. Md. 2020),
*appeal dismissed*, No. 20-2217, Dkt. 23 (4th Cir. Mar. 23, 2021) ................................... passim

*Clinton v. Jones*,
520 U.S. 681 (1997).................................................................................................................. 3, 5

*Ctr. for Biological Diversity v. Ross*,
419 F. Supp. 3d 16 (D.D.C. 2019) ................................................................................... 2, 3, 5, 8

*Dellinger v. Mitchell*,
442 F.2d 782 (D.C. Cir. 1971) ..................................................................................................... 3

*Greenlaw v. United States*,
554 U.S. 237 (2008).......................................................................................................................... 5

*Immigrant Legal Res. Ctr. v. Wolf*,
491 F. Supp. 3d 520 (N.D. Cal. 2020) ............................................................................. 2, 9, 12

*Intercollegiate Broad Sys. Inc. v. Copyright Royalty Bd.*,
796 F.3d 111 (D.C. Cir. 2015) ................................................................................................. 15

*La Clinica De La Raza v. Trump*, No. 19-cv-4980,
2020 WL 7053313 (N.D. Cal. Nov. 25, 2020) ................................................................. 2, 9, 12

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936)................................................................................................................ 2, 3, 5, 8

*Lockyer v. Mirant Corp.*,
398 F.3d 1098 (9th Cir. 2005) ..................................................................................................... 5

*Nw. Imm. Rights. Proj. (NWIRP) v. USCIS*, No. 19-cv-3283,
   2020 WL 5995206 (D.D.C. Oct. 8, 2020),
   *appeal dismissed*, No. 20-5369, Dkt. 7 (D.C. Cir. Jan. 12, 2021) .................................... 2, 9, 14

*Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-cv-9253,
   2021 WL 75756 (N.D. Cal. Jan. 8, 2021) ........................................................................ passim

*Wilkes-Barre Hosp. Co., LLC v. Nat'l Labor Relations Bd.*,
   857 F.3d 364 (D.C. Cir. 2017) ........................................................................................... 15

**Statutes**

5 U.S.C. § 3348(d)(2) ........................................................................................................... 14

5 U.S.C. § 705 ........................................................................................................................ 7

6 U.S.C. § 113(g)(2) ............................................................................................................. 11

**Regulations**

*Ratification of Department Actions*, 85 Fed. Reg. 59,651 (Sept. 23, 2020) .................. 13

*Ratification of Department Actions*, 85 Fed. Reg. 75,223 (Nov. 25, 2020) .................. 13

## INTRODUCTION

The balance of equities in this case tips decisively against a stay. The harm to Plaintiffs would be grave because the challenged Rules are in effect and continue to deny Plaintiffs access to work authorization. The government's vague assurance that the Department of Homeland Security ("DHS") will review the Rules at issue in this case and may repeal them at some indeterminate point in the future is inadequate to meet its burden to justify a stay. Nor does the fact that the Rules are subject to a limited preliminary injunction (the expansion of which the government has opposed) in *another* case justify staying *this* case. Litigating Plaintiffs' motion for summary judgment on a narrow question of law will not be unduly burdensome for the government or the Court.

Plaintiffs offered two different compromises that would preserve the resources of all parties involved. *First*, Plaintiffs suggested that the government could consent to a stay of the enforcement of the Rules by this Court under 5 U.S.C. § 705, so that the harm to Plaintiffs is alleviated while the DHS reviews the Rules at issue in this case. The government rejected that option.

*Second*, Plaintiffs have proposed moving for summary judgment on a narrow legal question that is dispositive in this case: whether Chad Wolf, who promulgated the Rules, was validly serving as Acting Secretary and had authority to issue the Rules in question. Notably, every court to consider that issue has ruled against the government, and in *Casa de Maryland*— the parallel litigation on the Rules at issue in this case—the government voluntarily dismissed its appeal, declining to defend Wolf's rulemaking authority. *See Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, No. 20-cv-9253, 2021 WL 75756, at *3–6 (N.D. Cal. Jan. 8, 2021); *Batalla Vidal v. Wolf*, No. 16-cv-4756, 2020 WL 6695076, at *1 (E.D.N.Y. Nov. 14, 2020); *Nw. Imm.*

1

*Rights. Proj. (NWIRP) v. USCIS*, No. 19-cv-3283, 2020 WL 5995206, at *13 (D.D.C. Oct. 8, 2020), *appeal dismissed*, No. 20-5369, Dkt. 7 (D.C. Cir. Jan. 12, 2021) ; *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 529–36 (N.D. Cal. 2020); *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 954–60 (D. Md. 2020), *appeal dismissed*, No. 20-2217, Dkt. 23 (4th Cir. Mar. 23, 2021); *La Clinica De La Raza v. Trump*, No. 19-cv-4980, 2020 WL 7053313, at *7–9 (N.D. Cal. Nov. 25, 2020). Given the overwhelming authority establishing the invalidity of Mr. Wolf's tenure and the government's apparent decision to cease defending his rulemaking authority, Plaintiffs contend that this case can be easily and dispositively resolved on that issue.

Either the government can continue to enforce the Rules and defend their legality in court, or it can stay their enforcement in the interest of equity and economy. But the government cannot have it both ways. For these reasons and those that follow, the government's motion to stay these proceedings should be denied.

## LEGAL STANDARD

In considering a motion to stay, courts should "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 20 (D.D.C. 2019).[2] Three factors guide a reviewing court's discretion in determining whether to grant a stay: the "(1) harm to the nonmoving party if a stay does issue; (2) the moving party's need for a stay—that is, the harm to the moving party if a stay does not issue; and (3) whether a stay would promote efficient use of the court's resources." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20; *see Landis*, 299 U.S. at 254–55.

---

[2] Unless otherwise noted, we have omitted internal citations, quotation marks, and alterations from citations in this brief.

"A court's stay order 'must be supported by a balanced finding that such need overrides the injury to the party being stayed.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Belize Soc. Dev.*, 668 F.3d at 732); *see also Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971). "'If there is even a *fair possibility* that the stay will work damage to some one else,' the movant 'must make out a *clear case of hardship or inequity* in being required to go forward.'" *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Landis*, 299 U.S. at 255) (emphasis added). "The proponent of a stay bears the burden of establishing its need." *Id.* (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

## ARGUMENT

### I.   THE GOVERNMENT IS NOT ENTITLED TO A STAY

#### A.   A Stay Would Cause Grave Harm to Plaintiffs

The first factor, "the injury to the party being stayed," weighs decisively against a stay. *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (quoting *Belize Soc. Dev.*, 668 F.3d at 732). The Rules at issue in this case are unlawful and are causing harm to Plaintiffs every day they are in effect. *See* Am. Compl., Dkt. 12, at 3–15.

As the Court is aware, the challenged Rules make it harder, and in some cases impossible, for asylum applicants like Individual Plaintiffs to obtain Employment Authorization Documents ("EADs"). EADs enable asylum seekers to earn income to survive while their asylum applications are being adjudicated and are often an applicant's only way of obtaining government identification, a prerequisite to accessing many other services. Am. Compl. ¶¶ 39-41. The asylum applicants harmed by these Rules are vulnerable to homelessness, hunger, inadequate healthcare, and exploitation. *Id*. ¶¶ 41-47. Without an EAD, they are less likely to be able to afford an attorney to assist with their asylum application. *Id*. ¶ 4. Some may have no choice but to abandon their asylum claims and return to danger even when they are

unquestionably entitled to asylum. *Id*. ¶ 45. In the interest of brevity, Plaintiffs will not recite all the harms alleged in the amended complaint and the accompanying declarations, but individual Plaintiffs, like many asylum applicants, have an overriding economic and psychological survival interest in obtaining an EAD. *See, e.g.*, *id.* ¶¶ 36–69. The EAD Rules challenged in this litigation impair that interest by making it vastly more difficult for asylum applicants to obtain EADs. *See Casa de Maryland*, 486 F. Supp. 3d at 968 (finding that asylum applicants "have suffered and will continue to suffer a concrete harm [caused by the rules]—one that cannot simply be rectified at final judgment" because "every additional day these individuals wait [to obtain an EAD] will visit[] on them crippling dependence on the charity and good will of others").

The challenged Rules similarly harm organizational Plaintiffs AsylumWorks, Community Legal Services In East Palo Alto ("CLSEPA"), and Tahirih Justice Center ("Tahirih"). By increasing the complexity of the EAD application process and causing uncertainty for clients, the Rules will increase the burden on the social and/or legal services programs that each organizational Plaintiff operates, thus decreasing the number of clients that organizational Plaintiffs are able to serve. Am. Compl. ¶¶ 244–46, 249, 251. The Rules similarly frustrate the legal services that CLSEPA and Tahirih provide. The complexity of the Rules has made operating *pro se* clinics impractical and forced CLSEPA to cancel plans for these clinics. *Id*. ¶ 249. The Rules will also put attorneys at Tahirih in an untenable position when advising clients by forcing clients to choose between presenting new evidence to ensure the long-term success of an asylum claim and the rejection of the client's EAD application that presenting the new evidence would trigger. *Id*. ¶ 252. And by making it impossible to determine if or when clients will obtain permission to work, the Rules frustrate AsylumWorks' employment programs that prepare asylum seekers for entry-level employment and career re-entry. *Id*. ¶¶ 242–43.

Thus, granting a stay here would be "oppressive in its consequences" for Plaintiffs. Motion to Stay ("Mot."), Dkt. 16, at 2 (quoting *Landis*, 229 U.S. at 256). The government cites no cases in which a court has stayed litigation while the Rules that Plaintiffs are challenging remain in effect. In fact, courts in this district have refused to do so because that "would sanction an ongoing violation" of the governing statute. *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 20 (collecting cases). The same is true here, and it is reason enough to deny the government's motion to stay.

### B.     Defendants Have Not Met Their Burden To Show a Clear Case of Hardship or Inequity From Litigating This Case

The government has not "'established its need' for a stay." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (quoting *Jones*, 520 U.S. at 708). Given the obvious and profound harm to Plaintiffs from allowing the Rules to remain in effect, Defendants "must make out a clear case of hardship or inequity in being required to go forward." *Id.* (quoting *Landis*, 299 U.S. at 255). They have failed to do so. Indeed, the only substantive argument the government offers in support of the stay is the "interest of economy." Mot. 2. But as a general matter, "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 (indirectly quoting *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)). And "[t]his is 'particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before the Court.'" *Id.* (quoting *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). Moreover, the government has already briefed this issue repeatedly and will do so again in the *Casa de Maryland* litigation, so the incremental burden of briefing it in this litigation is *de minimis*. For that reason alone, the Court should reject the government's appeal to the "interest of economy."

The government also notes that the new Administration may decide to change the Rules at some indeterminate date in the future. The government reports that the two Rules challenged here *might* be included in a report from the DHS Secretary to the President due to be submitted by May 3, 2021. Mot. 3. This report purportedly will include "a plan describing the steps the Department *will take* to advance the administration's immigration policies." *Id.* (emphasis added). The possibility for future change at a date uncertain and in an undefined manner is inadequate to meet the government's burden to justify a stay for at least three reasons.

*First*, though the Rules at issue in this case do seem to be under consideration for modification, the government cannot, at this point, guarantee that the Rules will be included or provide any clear timeline for potential repeal. Plaintiffs have no way of knowing what "the administration's immigration priorities" are, or whether they include fully rescinding the Rules at issue. *Id.* And if the Department stops short of fully rescinding the Rules, this lawsuit will go forward regardless of what other changes the administration might propose.

*Second*, even if the challenged Rules are included in the "plan" the Secretary submits to the president, that will not provide Plaintiffs with timely relief. Submission of the report to the President will not change the law. And the Department "will then have *180 days* to report to the President on its progress toward implementing that plan." *Id.* (emphasis added). It is entirely unclear what this progress report will entail. What *is* clear is that the government has not firmly committed to even partially repealing the Rules.

*Third*, even if the government had committed to *initiating* rulemaking to repeal the Rules, *completed* rulemaking would likely take a year or more. Plaintiffs should not be subject to the unlawful Rules during the pendency of any rulemaking.

There is an equitable solution that would preserve the parties' resources that the government declines to mention: The government could consent to a court-ordered stay of the *enforcement of the Rules* under 5 U.S.C. § 705. Plaintiffs communicated to the government that they would be amenable to staying the litigation if the Department agreed to stay the Rules. But the government declined that offer. That belies the government's argument that it is solely interested in promoting "economy." Instead, the government would prefer to avoid defending the legality of the Rules while continuing to enforce them, even though they directly harm Plaintiffs. That is plainly untenable because it grants Plaintiffs no relief during the pendency of the stay.[3]

The government also notes that the two Rules at issue are subject to a "limited preliminary injunction" in a different case. Mot. 2. That is irrelevant because that injunction does not provide complete relief to Plaintiffs in this case; indeed for many of the Plaintiffs it provides *no relief* whatsoever. *See, e.g.*, Am. Compl. ¶¶ 22–24, 32 (discussing Plaintiffs who cannot benefit from the injunction in *Casa de Maryland* because they are subject to provisions of the Rule not covered in that case); *id.* ¶¶ 27–28 (discussing Plaintiffs who are too young to become members of the associational plaintiff organizations in *Casa de Maryland*).[4] And even those Plaintiffs who have been able to attempt to mitigate the harm from the government's unlawful Rules by joining the Asylum Seekers Advocacy Project ("ASAP"), an associational plaintiff covered by the *Casa de Maryland* injunction, are not fully protected from the Rules' cruel impacts because the relief in that case is preliminary and incomplete. *See id.* at 5 n.2. Indeed, the most salient fact about the *Casa de Maryland* case is that the plaintiffs in that case have moved

---

[3] Moreover, the pendency of this lawsuit will be an incentive for the government to review the challenged rules with alacrity. A stay would remove that incentive and could well result in the Department taking longer than it otherwise would have to review and reform the rules.
[4] Many (though not all) of the individual Plaintiffs who do not benefit from the injunction in *Casa de Maryland* were added as plaintiffs in the amended complaint.

"to expand the scope of the preliminary injunction to apply uniformly," but the government has opposed that motion. Mot. 3. Again, if the government were truly interested in preserving the parties' and the Court's resources, it could simply have acquiesced in expanding the *Casa de Maryland* injunction until DHS has had the opportunity to review the lawfulness of the Rules.[5] The government's failure to acquiesce in this case is even more striking because, as noted above, in several cases it has chosen not to pursue an appeal from adverse rulings on the issue of Mr. Wolf's rulemaking authority. There is nothing inequitable about requiring the government to defend the Rules while they are still in effect and actively harming Plaintiffs.

In sum, the stay should be denied because the balance of the equities tips decidedly in Plaintiffs' favor. The government has not shown that the "injury" associated with litigating this case "override[s] the injury to the party being stayed." *Ctr. for Biological Diversity*, 419 F. Supp. 3d at 22 (quoting *Belize Soc. Dev.*, 668 F.3d at 732). Indeed, the only "injury" the government can point to is the time it would require the government to brief the issues in this case. Mot. 4. And the government certainly has not shown a "clear case of hardship or inequity in being required to" litigate this case. *Id.* (quoting *Landis*, 299 U.S. at 255).

---

[5]  The government notes parenthetically that Plaintiffs have not sought "expedited interim relief." Mot. 4. But that is because Plaintiffs believed that it was more expeditious and efficient for the parties and the Court to pursue summary judgment on a narrow legal issue instead of doing two rounds of duplicative briefing. Had counsel for Plaintiffs anticipated that the briefing schedule on this issue would be as protracted as the government now proposes, they would have sought interim relief.

### C.     A Stay Would Not Promote the Efficient Use of Judicial Resources

The government has also failed to meet its burden to show that a stay would conserve

judicial resources. Plaintiffs propose moving for summary judgment on a narrow question of

law: whether Mr. Wolf was validly acting as Acting DHS Secretary when the Rules were

promulgated. Because this is a question of law and the relevant facts are undisputed, the parties

will not be required to engage in discovery. And as noted above, the government has already

briefed, and courts have decided, that question in other cases. *See Pangea Legal Servs.*, 2021 WL

75756, at *3–6; *Batalla Vidal*, 2020 WL 6695076, at *1; *NWIRP*, 2020 WL 5995206, at *13;

*Immigrant Legal Res. Ctr.*, 491 F. Supp. 3d at 529–36; *Casa de Maryland*, 486 F. Supp. 3d at

954–60; *La Clinica De La Raza*, 2020 WL 7053313, at *7–9. The burdens associated with

litigating this motion are insufficient to justify a stay.

### D.     Plaintiffs Are Likely To Succeed on the Merits

The inequity from a stay is compounded by the fact that Plaintiffs are likely to succeed on

the merits of their claim that the Rules are unlawful. On the motion for summary judgment,

Plaintiffs will not be asking the Court to analyze the merits of the Rules and whether they are

arbitrary and capricious. Instead, Plaintiffs will be asking this court to "plow the same ground

about Wolf's authority *vel non* to change the immigration regulations" as six other courts have

already done at both the preliminary injunction and summary judgment stages. *Pangea Legal*

*Servs.*, 2021 WL 75756, at *4. And those courts have all ruled that Mr. Wolf was not validly

serving as Acting Secretary and that rules that he purported to issue are nullities. *See Pangea*

*Legal Servs.*, 2021 WL 75756, at *3–6; *Batalla Vidal*, 2020 WL 6695076, at *1; *NWIRP*, 2020

WL 5995206, at *13; *Immigrant Legal Res. Ctr.*, 491 F. Supp. 3d at 529–36; *Casa de Maryland*,

486 F. Supp. 3d at 954–60; *La Clinica De La Raza*, 2020 WL 7053313, at *7–9.

This consistent line of cases belies the government's suggestion that the validity of Mr. Wolf's service raises "multifaceted and complex" issues, of uncertain outcome. Mot. at 4. Six other courts have already "correctly identified and analyzed the salient points vitiating Wolf's claim of rulemaking authority" and have resolved the underlying issue of the validity of Mr. Wolf's service on an uncontested factual record. *See Pangea Legal Servs.*, 2021 WL 75756, at *5. Indeed, as the most recent court to rule on the validity of Mr. Wolf's service held, "[t]he government has recycled exactly the same legal and factual claims made in the prior cases, as if they had not been soundly rejected in well-reasoned opinions by several courts." *Id.* at *4. In the *Pangea Legal Services* court's words, "the government keeps crashing the same car into a gate, hoping that someday it might break through." *Id.* As in that case, the government is unlikely to succeed in "relitigating the same facts and law" that six courts have already "painstaking[ly] analy[zed]" and resolved against the government. *Id.* Indeed, the government appears to have tacitly recognized the futility of its arguments, as it has voluntarily dismissed the appeals it filed in *Casa de Maryland* and *NWIRP*, and has declined to appeal *Pangea Legal Services*, the latest decision ruling that Mr. Wolf was not validly serving. Nor should the government be heard to complain about the complexity of the case, since any factual complexity is the product of the government's own tortured and convoluted efforts to legitimate Mr. Wolf's facially illegitimate service, and the government is intimately familiar with those efforts. *See Batalla Vidal*, 2020 WL 6695076, at *9 n.11 ("The court wishes the Government well in trying to find its way out of this self-made thicket.").

### 1. The Rules Are Invalid Because Mr. Wolf Was Not Lawfully Serving As Acting Secretary Under The Homeland Security Act

The reason the government keeps losing is simple—Mr. McAleenan and his successor Mr. Wolf never validly took office as Acting Secretary under the Homeland Security Act

("HSA"), and the rules that Mr. Wolf purported to promulgate have no legal effect. The HSA authorizes the DHS Secretary to "designate" an "order of succession" for the Office of Acting Secretary. 6 U.S.C. § 113(g)(2). The government's position that Mr. Wolf lawfully became Acting Secretary hinges on the argument that Mr. McAleenan, Mr. Wolf's predecessor, lawfully became Acting Secretary in April 2019 and then lawfully amended the order of succession under 6 U.S.C. § 113(g)(2) in November 2019 so that Mr. Wolf could succeed him. Mr. McAleenan purportedly assumed office pursuant to amendments to the order of succession made by Secretary Nielsen in April 2019.

But the government's argument fails because "DHS failed to follow the order of succession as it was lawfully designated." *Batalla Vidal*, 2020 WL 6695076, at *8. As the *Pangea Legal Services* court explained, Secretary Nielsen only modified "the order of succession [applicable] in the event of a disaster or emergency," and left unchanged the order of succession applicable "in the event of resignations or other vacancies, which continued to be governed by Executive Order (EO) 13753." *Pangea Legal Servs.*, 2021 WL 75756, at *4. Because Secretary Nielsen resigned, E.O. 13753 governed, and "the operation of [E.O. 13753] should have resulted in Christopher Krebs, the Director of Cyber Security and Infrastructure Security, assuming head DHS authority."[6] *Id*. Mr. McAleenan instead "purported to be Acting Secretary," but "possessed no statutory authority to do so." *Batalla Vidal*, 2020 WL 6695076, at *8. And "[b]ecause the passing of the torch from Nielsen to McAleenan was ineffective, the attempt by McAleenan to pass it in turn to Wolf had no legal effect whatsoever," and the "rulemaking was done without

---

[6] The offices of Deputy Secretary of Homeland Security, Under Secretary for Management, and Administrator of the Federal Emergency Management Agency ("FEMA") were ahead of Mr. Krebs' position under the E.O. 13753 line of succession, but these positions were all vacant as of April 10, 2019. *See Batalla Vidal*, 2020 WL 6695076, at *8.

11

authority of law." *Pangea Legal Servs.*, 2021 WL 75756, at *5; *see also Batalla Vidal*, 2020 WL 6695076, at *9 (same).

Because the Rules at issue here were promulgated by Mr. Wolf when he was not lawfully serving as Acting Secretary, they were promulgated in violation of the HSA. The remedy for rules promulgated in violation of the HSA is vacatur. *See Batalla Vidal v. Wolf*, No. 16-cv-4756, 2020 WL 7121849, at *1 (E.D.N.Y. Dec. 4, 2020) (vacating agency action taken by Mr. Wolf following summary judgment ruling that Mr. Wolf was serving in "violation" of the HSA).

In addition to *Pangea Legal Services* and *Batalla Vidal*, other courts have analyzed the same facts and law and reached the very same conclusion—that Mr. McAleenan and Mr. Wolf were not validly serving under the HSA—and enjoined enforcement of rules Wolf purported to promulgate. *See Casa de Maryland*, 486 F. Supp. 3d at 960 ("Plaintiffs are likely to demonstrate McAleenan's appointment was invalid under the agency's applicable order of succession, and so he lacked the authority to amend the order of succession to ensure Mr. Wolf's installation as Acting Secretary"); *Immigrant Legal Res. Ctr.*, 491 F. Supp. 3d at 535 ("Plaintiffs have shown that they are likely to succeed on the merits of their claim that Mr. Wolf was not validly serving in office" under the HSA); *La Clinica De La Raza*, 2020 WL 7053313, at *7 ("[F]ormer Secretary Nielsen's April 9th order did not alter the Department's order of succession in cases of resignation and [] Executive Order 13753 continued to govern the order of succession at the time of Secretary Nielsen's resignation.").

### 2.   Mr. Wolf Also Lacked Authority Under The Federal Vacancies Reform Act To Serve As Acting Secretary Or Promulgate The Rules

The government has "resorted to the [Federal Vacancies Reform Act ("FVRA")] as a back-up theory after the HSA argument was turned aside by the court decisions" outlined *supra*. *Pangea Legal Servs.*, 2021 WL 75756, at *4. But as the *Pangea Legal Services* court has already

held, the government's FVRA back-up theory "is equally unviable." *Id*. at *5. The government has previously argued that Peter Gaynor, then the FEMA Administrator, "was properly in office as DHS Acting Secretary under the FVRA and EO13753," and "was thereby authorized to change the order of succession in Wolf's favor," thus permitting Mr. Wolf to "retroactively ratify" the Rules in September and November 2020. *Id*.; *see Ratification of Department Actions*, 85 Fed. Reg. 59,651 (Sept. 23, 2020); *Ratification of Department Actions*, 85 Fed. Reg. 75,223 (Nov. 25, 2020). But this argument stumbles out of the starting gate. The FVRA only permits an acting officer to serve for a maximum of 210 days from when the vacancy occurred, 5 U.S.C. § 3346(a)(1), and provides that actions taken by officers acting in violation of the FVRA "shall have no force or effect" and "may not be ratified." *Id*. §§ 3348(d)(1) & (2). Because Secretary Nielsen resigned on April 10, 2019, the FVRA's 210-day limitation expired by November 6, 2019. Mr. Wolf violated the FVRA's 210-day limitation by issuing the Rules seven months later, in June 2020. The Rules are thus necessarily nullities under § 3348(d)(1), and § 3348(d)(2) renders Mr. Wolf's purported ratifications of the Rules invalid.

The government's FVRA argument also fails because Mr. Gaynor never assumed the Office of Acting Secretary. In *Pangea Legal Services*, the latest case to adjudicate the lawfulness of Mr. Wolf's service, the government abandoned its FVRA argument by publicly representing to the court that "Gaynor 'never' was the Acting Secretary of Homeland Security." *Pangea Legal Servs.*, 2021 WL 75756, at *5. And as the *Pangea Legal Services* court concluded, "[b]ecause Gaynor was never the Acting Secretary, he did not have authority under the FVRA or EO 13753 to change the order of succession" by designating Mr. Wolf to be Acting Secretary, meaning that "Wolf's effort to ratify [his own] June 2020 actions as Acting Secretary is of no moment legally." *Id*.

If any additional reasons were required to reject the government's FVRA argument, courts have readily supplied them. *First*, as this Court determined in *NWIRP*, Mr. Gaynor had no authority to amend the line of succession because "an Acting Secretary may not amend the Department's order of succession under § 113(g)(2) [of the HSA]." *NWIRP*, 2020 WL 5995206, at *24. *Second*, as the *Batalla Vidal* court reasoned, "DHS cannot recognize [Mr. Gaynor's] authority only for the sham purpose of abdicating his authority to DHS's preferred choice," namely Mr. Wolf. *Batalla Vidal*, 2020 WL 6695076, at *9. And *third*, as the *Batalla Vidal* court also reasoned, it would "significantly undermine[]" the FVRA's purpose of "ensur[ing] that somebody is accountable for the Department's mission" to "allow[] two different people—Mr. Wolf and Administrator Gaynor—to simultaneously exercise the Secretary's power." *Id*. Thus Plaintiffs are likely to prevail even under the government's alternative FVRA theory.

### 3.     The Eleventh-Hour Ratifications Did Not Save The Rules' Validity

While courts have not yet considered Messrs. Wolf and Gaynor's latest and final attempt to ratify the Rules, it fares no better than their previous attempts to do so. On January 11, 2021, Mr. Wolf purported to resign as Acting Secretary in favor of Mr. Gaynor, who in turn the very next day purported to delegate to Mr. Wolf the Secretary's power to make rules and "to ratify any prior regulatory actions." Chad F. Wolf, *Ratification*, at 2 (Jan. 13, 2021), https://bit.ly/3luL0JP ("January Ratification Memo"); DHS Delegation No. 23028, *Delegation to the Under Secretary for Strategy, Policy, and Plans to Act on Final Rules, Regulations, and Other Matters* (Jan. 12, 2021), https://bit.ly/3c0wBSM. Mr. Wolf then purported to exercise that authority to ratify the rules on January 13. January Ratification Memo at 2. This latest ratification is necessarily a nullity like its predecessors because it contravenes the FVRA's prohibition on ratification of actions taken by an acting official who is not validly serving under the FVRA or another agency-specific succession statute. 5 U.S.C. § 3348(d)(2).

In addition to contravening the FVRA's prohibition on ratification, the January ratification is invalid because there was no valid delegation of rulemaking authority; Mr. Gaynor and Mr. Wolf failed to independently evaluate the merits of the rules; and Mr. Wolf's prior unlawful service tainted the ratifications. *See Intercollegiate Broad Sys. Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117 (D.C. Cir. 2015).

*First*, the purported "delegation" violates the FVRA and HSA because it functionally kept Mr. Wolf in the role of Acting Secretary despite his inability to serve in that role. *See* Am. Compl. ¶ 333. As the *Batalla Vidal* court already held, "DHS cannot recognize [Mr. Gaynor's] authority only for the sham purpose of abdicating his authority to DHS's preferred choice," namely Mr. Wolf. Nor can "the Executive Branch [] use wordplay to avoid constitutional and statutory requirements" set out in the FVRA and HSA by permitting Mr. Wolf to exercise the powers of the Acting Secretary under a different title. *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1127 (D. Mont. 2020).

*Second*, the ratification is a nullity because neither Mr. Gaynor nor Mr. Wolf "made a detached and considered judgment." *Wilkes-Barre Hosp. Co., LLC v. Nat'l Labor Relations Bd.*, 857 F.3d 364, 371 (D.C. Cir. 2017). Mr. Gaynor delegated ratification to Mr. Wolf without engaging in any independent review of the Rules, and Mr. Wolf only purported to make a "detached and considered affirmation and ratification" of certain prior actions by Mr. McAleenan—not his own prior actions. January Ratification Memo at 3-4.

*Third*, the January ratification is invalid because "there is sufficient continuing taint" arising from Mr. Wolf's initial promulgation of the Rules in violation of the FVRA and HSA. *Intercollegiate Broad Sys.*, 796 F.3d at 124. Instead of removing the taint from Mr. Wolf's prior

unlawful service by exercising independent judgment, Mr. Gaynor compounded the taint by abdicating his authority to Mr. Wolf, the very wrongdoer who unlawfully promulgated the Rules.

## II.  PLAINTIFFS' PROPOSED BRIEFING SCHEDULE IS REASONABLE

In the alternative, the government requests that the court enter an extended briefing schedule on Plaintiffs' summary judgment motion. That request is unjustified. As noted above, the government has repeatedly briefed the issues on which Plaintiffs to propose to move for summary judgment, and continues to brief them, in other cases. They are not novel, and they are—despite the government's convoluted attempts to avoid the conclusion that Mr. Wolf's tenure as Acting Secretary violated federal law—simple at their core. The Plaintiffs are suffering ongoing harm in the meantime, and the government has refused Plaintiffs' proposal to stay the Rules to mitigate that harm. In these circumstances, it is reasonable to require the government to respond on the schedule Plaintiffs have proposed.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to stay and enter a briefing schedule on Plaintiffs' motion for summary judgment as follows:

Plaintiffs' motion for summary judgment: May 14, 2021[7]

Defendants' opposition to Plaintiffs' motion and cross-motion: June 11, 2021

Plaintiffs' opposition and reply: June 18, 2021

Defendants' reply: July 2, 2021.

---

[7]  Plaintiffs originally proposed a slightly more condensed schedule to the government, *see* Mot. ¶ 8. Plaintiffs now propose a one-week delay in the filing of their motion for summary judgment to account for briefing on this motion and have proposed extensions of the governments briefing times in an effort reach a suitable middle ground. They remain, however, prepared to proceed on the originally proposed schedule.

Dated: April 29, 2021                                  Respectfully submitted,

                                        By:   */s/ Keren Zwick*   _____

Tyler Whitmer (D.C. Bar No. 1618676)            Keren Zwick (D.D.C. Bar. No. IL0055)
Deepa Acharya (D.C. Bar No. 996412)             Mark Fleming*
Carl Spilly (D.C. Bar No. 230830)               Drew Heckman
Brian McGrail (D.C. Bar No. 1672349)            NATIONAL IMMIGRANT JUSTICE CENTER
QUINN EMANUEL URQUHART &                        224 S. Michigan Ave., Suite 600
SULLIVAN, LLP                                   Chicago, IL 60604
1300 I St. NW, Suite 900                        312-660-1370
Washington, DC 20005                            kzwick@heartlandalliance.org
202-538-8000                                    mfleming@heartlandalliance.org
tylerwhitmer@quinnemanuel.com                   dheckman@heartlandalliance.org
deepaacharya@quinnemanuel.com
carlspilly@quinnemanuel.com                     Jamie Crook (D.C. Bar No. 1002504)
brianmcgrail@quinnemanuel.com                   Annie Daher
                                                CENTER FOR GENDER & REFUGEE STUDIES
Nicholas A. S. Hoy                              200 McAllister St.
QUINN EMANUEL URQUHART &                        San Francisco, CA 94102
SULLIVAN, LLP                                   415-565-4877
51 Madison Ave., 22nd Floor                     crookjamie@uchastings.edu
New York, NY 10010                              daherannie@uchastings.edu
212-849-7000
nicholashoy@quinnemanuel.com                    Scott Shuchart (D.C. Bar No. 1531377)**
                                                KIDS IN NEED OF DEFENSE
Richard Caldarone***                            1201 L St., NW, Floor 2
TAHIRIH JUSTICE CENTER                          Washington, DC 20005
6400 Arlington Blvd., Suite 400                 202-318-0595
Falls Church, VA 22042                          sshuchart@supportkind.org
571-282-6161
richardc@tahirih.org                            Wendy Wylegala**
                                                KIDS IN NEED OF DEFENSE
*Certification to practice pursuant to*         252 West 37th Street, Floor 15
*LCvR 83.2(g) to be submitted*                  New York, NY 10018
                                                646-970-2913
*** Counsel for Individual Plaintiffs only*     wwylegala@supportkind.org

**** Counsel for Tahirih Justice Center*
*only*                                          *Counsel for Plaintiffs*