UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASYLUMWORKS, *et al.*,<br><br>                        Plaintiffs,<br><br>                        v.<br><br>ALEJANDRO N. MAYORKAS, *Secretary, United States Department of Homeland Security*, *et al.*,<br><br>                        Defendants. | Civil Action No. 20-cv-3815 (BAH)<br><br>Chief Judge Beryl A. Howell |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, three nonprofit organizations and eighteen individual noncitizen asylum seekers, Am. Compl. ¶¶ 11–32, ECF No. 12, commenced this action against defendants, the Department of Homeland Security ("DHS") and two DHS officials in their official capacities, on December 23, 2020, seeking injunctive relief in the form of vacatur of two related agency rules, issued in June 2020, curtailing access to employment authorization documents ("EADs") for asylum seekers, *id.* ¶¶ 33–35; *id.*, Prayer for Relief, ¶¶ (d)–(e).[1] Defendants now move, over plaintiffs' objection, to stay proceedings in the interest of judicial and party economy, given the "developing administrative actions and parallel judicial proceedings that may moot or reshape Plaintiff[s'] claims and, in the near term, inform the appropriate pace of proceedings in this case," and further request that the parties submit a joint status report in 60 days advising the Court of the parties' positions on whether the stay should be lifted at that time. Defs.' Mot. Stay

---

[1] As to the named parties, the name of the current agency head, Alejandro N. Mayorkas, is automatically substituted for the formerly named defendant, Chad F. Wolf, as a defendant in this action, *see* Fed. R. Civ. P. 25(d), and the individual plaintiffs have been granted leave to proceed under pseudonym and, consequently, are referenced only by their initials, *see* Order (Dec. 23, 2020), ECF No. 2 (granting Motion for Leave to Proceed Under Pseudonym).

("Defs.' Mot.") at 1, ¶ 7, ECF No. 16.  For the reasons provided below, the motion to stay is denied.

## I.    BACKGROUND

Only the background relevant to resolving the pending motion to stay is summarized.  As noted, plaintiffs challenge two DHS rules: (1) Final Rule, *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants* ("Timeline Repeal Rule"), 85 Fed. Reg. 37,502, *et seq.* (Jun. 22, 2020), which eliminated an earlier regulation that imposed a thirty-day time limit for the United States Citizenship and Immigration Services ("USCIS") to process initial EAD applications and became effective August 21, 2020,  Am. Compl. ¶ 49; and (2) Final Rule, *Asylum Application, Interview, and Employment Authorization for Applicants* ("EAD Bar Rule"), 85 Fed. Reg. 38,532, *et seq.* (Jun. 26, 2020), which modified regulations governing asylum applicants' eligibility for employment authorization and became effective on August 25, 2020, *id*. ¶ 50.[2]

Plaintiffs challenge multiple aspects of the EAD Bar Rule that impose new requirements on asylum applicants seeking work authorization imposed.  Among those changes pertinent here are: (1) extension of the waiting period before an applicant may apply for an EAD from 150 days to 365 days (the "365-Day Waiting Period"), 85 Fed. Reg. at 38,548 (codified at 8 C.F.R. § 208.3(c)(3); *id.* § 208.7(a)(1)(ii), (a)(1)(iii)(E), (b)(1)(i); *id.* § 274a.12(c)(8)), and prevention of applicants, who are denied asylum within 365-days of filing an application for work authorization, from seeking an administrative appeal to the Board of Immigration Appeals

---

[2]    The operative Amended Complaint, filed on March 23, 2021, removed one plaintiff, added five new plaintiffs, and "address[ed] events that occurred since the filing of the Complaint that bear on the Plaintiffs' claims, including Mr. Wolf's resignation as Acting Secretary of Homeland Security, Mr. Gaynor's purported assumption of that role and delegation to Mr. Wolf of power to ratify his prior . . . actions, Mr. Wolf's subsequent attempt to ratify the Rules in January [2021], and the appointment of Defendant Alejandro Mayorkas as Secretary of the Department of Homeland Security."  Pls.' Mot. Leave to Amend, ECF No. 10.

("BIA"), Am. Compl. ¶ 54; (2) elimination of the "Deemed Complete" provision of the EAD rules that deemed an application complete if the agency had not "mailed the incomplete application back to the applicant within 30 days," 8 C.F.R. § 208.3(c)(3) (Jan. 1, 2020); 85 Fed. Reg. at 38,626, thereby requiring asylum applicants to wait an indefinite period for notice from USCIS, *see id.* (codified at 8 C.F.R. § 208.3(c)(3)); Am. Compl. ¶ 55; (3) grant to USCIS discretion to deny asylum seekers' EAD applications (the "Discretionary Denials" provision), 85 Fed. Reg. at 38,628 (codified at 8 C.F.R. § 274a.13(a)(1)); *see* Am. Compl. ¶ 56; (4) authorization for USCIS to deny automatically EAD applications with unresolved delays caused or requested by the applicant (the "Applicant-Caused Delay" provision), 85 Fed. Reg. at 38,626 (codified at 8 C.F.R. § 208.7(a)(1)(iv)); *see* Am. Compl. ¶ 57; (5) denial of EADs for failing to file the asylum application within one year of entering the United States unless and until an asylum officer or immigration judge ("IJ") determines that the applicant meets a statutory exception (the "One-Year Filing Bar"), 85 Fed. Reg. at 38,626 (codified at 8 C.F.R. § 208.7(a)(1)(iii)(F)); *see* Am. Compl. ¶ 62; (6) ineligibility of asylum seekers entering the United States without inspection for EAD authorization (the "Port-of-Entry Requirement"), 85 Fed. Reg. at 38,626 (codified at 8 C.F.R. § 208.7(a)(1)(iii)(G)); *see* Am. Compl. ¶ 63; (7) automatic termination of an applicant's EAD on the same date an asylum officer denies the applicant's asylum application, or thirty days after an IJ denies the asylum application unless timely appealed to the BIA or the BIA upholds a denial (the "Automatic Termination" provision), 85 Fed. Reg. at 38,627 (codified at 8 C.F.R. § 208.7(b)(2)); *see* Am. Compl. ¶ 65; and (8) imposition of new biometrics requirements and a concomitant fee (the "Biometrics Requirement"), 85 Fed. Reg. at 38,626 (codified at 8 C.F.R. § 208.7(a)(1)(i), (a)(1)(iv)(E); *id.* §

208.10)); *see* Am. Compl. ¶ 68.³  Plaintiffs contend that these two rules must be vacated because they are arbitrary and capricious and contrary to the Immigration and Nationality Act ("INA"), in violation of the Administrative Procedure Act ("APA"), and because Chad F. Wolf "was not validly serving as Acting DHS Secretary under the Homeland Security Act ("HAS"), Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause of the Constitution when he signed the rules," Am. Compl. ¶ 8.

Since the lawsuit was originally filed, the legal landscape affecting the continued viability and enforcement of the two challenged rules has shifted.  First, DHS points to certain administrative actions, including that the agency anticipates further rulemaking related to these two rules, with a notice of proposed rulemaking to be issued by December 2021 and a final rule by June 2022.  *See* Status Report at 2, *Casa de Md., Inc. v. Mayorkas*, Civil Case No. 20-2118-PX (D. Md. May 7, 2021), ECF No. 116. ⁴  In addition, on May 4, 2021, the current Secretary of Homeland Security, Alejandro Mayorkas, ratified the Timeline Repeal Rule, which defendants

---

³       Although not relevant to the instant motion, plaintiffs also challenge other aspects of the EAD Bar Rule, including new restrictions on asylum seekers applying for work authorization by: (1) eliminating the USCIS process whereby an applicant who received a "notice of recommended approval" could apply for an EAD before the waiting period expired (the "Elimination of Recommended Approvals" provision), 85 Fed. Reg. 38,626–28 (codified at 8 C.F.R. § 208.7(a)(1); *id.* § 274a.12(c)(8)); *see* Am. Compl. ¶ 61; (2) barring applicants convicted of a "particularly serious crime" or if there are "serious reasons for believing that the applicant . . . has committed a serious non-political crime outside the United States" (the "Criminal Bar"), 85 Fed. Reg. 38,626 (codified at 8 C.F.R. § 208.7(a)(1)(iii)(B)–(C)); *see* Am. Compl. ¶ 64; (3) restricting the EAD grant term to a maximum of two years where there previously was no restriction (the "Maximum Validity" provision), 85 Fed. Reg. 38,627 (codified at 8 C.F.R. 208.7(b)(1)); *see* Am. Compl. ¶ 66; and (4) eliminating USCIS' prior discretion to adjudicate parole-based employment authorization on a case-by-case basis (the "Parole Limitation" provision), 85 Fed. Reg. 38,628 (codified at 8 C.F.R. 274a.12(c)(11)); *see* Am. Compl. ¶ 67.
⁴       In their original motion to stay, defendants represented that the two rules were "under review for inclusion in the 90-day process set out in section 3(b) of Executive Order 14,012," and that the DHS Secretary was required to submit, by May 3, 2021, "a plan describing the steps the Department will take to advance the administration's immigration policies."  Defs.' Mot. ¶ 4.  By the time defendants filed their reply on May 7, 2021, DHS had "provided further details about its plan," stating that it "plan[ned] to engage in rulemaking related to the two rules challenged."  *See* Defs.' Reply Supp. Defs' Mot. Stay ("Defs.' Reply") at 1, ECF No. 19.  Under Section 3(c) of the Executive Order, DHS has 180 days after submitting its plan to provide "a report to the President describing the progress of [the agency] towards implementing the plan developed . . . and recognizing any areas of concern or barriers to implementing the plan."  Exec. Order No. 14,012 § 3(c), *Restoring Faith in Our Legal Immigration Systems and Strengthening Integration and Inclusion Efforts for New Americans*, 86 Fed. Reg. 8,277 (Feb. 2, 2021); *see also* Defs.' Mot. ¶ 4.

4

contend "resolves Plaintiffs' Homeland Security Act claim with respect to that rule" by "'remedying the defect (if any) [caused by] the initial appointment.'" Defs.' Reply at 2 (quoting *Guedes v. ATF*, 920 F.3d 1, 13 (D.C. Cir. 2019)); *see* Defs.' Reply, Ex. 1, Ratification, *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applications, Notice of Proposed Rulemaking (NPRM)*, 84 Fed. Reg. 47,148 (published Sept. 9, 2019) & *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Application*, Final Rule, 85 Fed. Reg. 37,502 (published Jun. 22, 2020) (May 4, 2021) ("Ratification"), ECF No. 19-1.

Second, defendants point to another lawsuit, pending in the District Court for the District of Maryland, seeking vacatur of these same two rules at issue here. The Maryland court, on September 11, 2020, preliminarily enjoined enforcement of the Timeline Repeal Rule in its entirety, and the following parts of the EAD Bar Rule: (1) the 365-Day Waiting Period; (2) the elimination of the "Deemed Complete" provision, 8 C.F.R. § 208(c)(3); (3) the Discretionary Denials provision; (4) the One-Year Filing Bar; and (5) the Biometrics Requirement, but only as to the members of the two organizational plaintiffs in the Maryland case, Casa de Maryland, Inc. and Asylum Seekers Advocacy Project ("ASAP"). *See Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 973–74. The Maryland court is now considering whether to expand and uniformly apply the injunction in response to a pending summary judgment motion seeking to have both rules declared invalid in their entirety because Chad Wolf did not lawfully serve as acting DHS Secretary when those rules were promulgated. *See* Pls.' Mem. Supp. Mot. Summary J. on their Homeland Security Act Claim, or in the Alternative, to Modify Preliminary Inj. ("*Casa de Md., Inc.* Mot."), *Casa de Md., Inc. v. Mayorkas*, Civil Case No. 20-2118-PX at 10–12, 17–21 (D. Md. Apr. 20, 2021), ECF No. 107-1; Letter Order ("*Casa de Md., Inc.* Letter Order"), *Casa de*

*Md., Inc. v. Mayorkas*, Civil Case No. 20-2118-PX (D. Md. May 11, 2021), ECF No. 118 (granting plaintiffs' request to modify their pending motion to encompass both the Timeline Repeal Rule and the EAD Bar Rule and permitting parties to brief both the motion to modify and the motion for summary judgment).

Six plaintiffs in the instant action (*i.e.*, D.M.C., K.N.E., N.E.F., C.A., J.H.C., M.L.V.), sought to mitigate the effect of the challenged rules by seeking membership, either individually or through a guardian, with organizational plaintiff ASAP in the Maryland case to be covered by the Maryland court's preliminary injunction. Am. Compl. ¶ 15 n.2; *id.* ¶¶ 15–18, 26, 28.[5] The remaining plaintiffs have not joined ASAP—either because they fall below the age limit (*e.g.*, H.M.R., *id.* ¶ 27), or because they claim harm from the Port-of-Entry Requirement or the Automatic Termination provision (*e.g.,* C.H.A., R.P.P., L.E.J.J., M.C.J.J. and M.A.S., *id.* ¶¶ 22–25, 32), neither of which are covered by the Maryland injunction. Meanwhile, briefing on plaintiffs' pending motions to expand the preliminary injunction and for summary judgment in the District Court of Maryland will be complete on June 15, 2021. *Casa de Md., Inc.* Letter Order at 1 (setting plaintiffs' reply deadline for June 15, 2021); *see* Response to Mot., *Casa de Md., Inc. v. Mayorkas*, Civil Case No. 20-2118-PX (D. Md. Apr. 27, 2021), ECF No. 111.[6] DHS provides no timeline for decision by the Maryland court on those pending motions.

Defendants' response to plaintiffs' complaint was originally due by March 15, 2021, but after the grant of three extensions, was due by April 26, 2021, *see* Min. Orders (March 11, 2021;

---

[5] Despite membership in ASAP, plaintiffs N.E.F. and C.A. were denied an EAD based on alleged applicant-caused delays, which denials are governed by the Applicant-Caused Delay provision not covered by the Maryland preliminary injunction. Am. Compl. ¶¶ 17–18.

[6] The Amended Complaint and plaintiffs' briefing make no representations as to whether the remaining six plaintiffs, U.O, L.G.M., L.M.M.G., M.C.R., G.S.M., and V.M.B., have applied for ASAP membership or would benefit from the Maryland preliminary injunction by such membership. Am. Compl. ¶¶ 19–21, 29–31.

6

Apr. 6, 2021; Apr. 16, 2021), but no responsive pleading has been timely filed.[7] Instead, defendants moved to stay the action on April 22, 2021, *see* Defs.' Mot. at 1, which motion became ripe for resolution on May 13, 2021, with the filing of a surreply, *see* Pls.' Surreply in Opp'n Defs.' Mot. Stay ("Pls.' Surreply") at 1, ECF No. 21.

## II.  LEGAL STANDARD

The Court's authority to order a stay of proceedings is well-settled. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Am. Life Ins. Co. v. Stewart*, 300 U.S. 203, 215 (1937) ("In the exercise of a sound discretion [the court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same." (citing *Landis*, 299 U.S. at 248)); *Enelow v. N.Y. Life Ins. Co.*, 293 U.S. 379, 382 (1935) (recognizing that district courts may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice"); *accord Dietz v. Bouldin*, 136 S. Ct. 1885, 1892–93 (2016) ("This Court has also held that district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."). The power to issue a stay is cabined, however, such that a stay must be "so framed . . . that its force will be within reasonable limits" and "an order which is to continue by its terms for an immoderate stretch of time is not to be upheld as

---

[7]  Defendants may view the filing of their motion for a stay to give them some form of automatic relief from otherwise applicable filing deadlines. This view is incorrect. Filing deadlines imposed by rule or by court order remain effective unless expressly extended. "Serving a motion under [Rule 12]" extends the deadline to serve a responsive pleading but a motion to stay is not enumerated under Rule 12 and, consequently, does not qualify to extend the deadline for filing a responsive pleading. *See* FED. R. CIV. P. 12(a)(4). No extension of defendants' April 26, 2021 deadline for filing a responsive pleading has been requested or granted, rendering defendants' delay unwarranted. *See* FED. R. CIV. P. 12(a)(2) (" . . . a United States agency, or a United States officer or employee sued only in an official capacity *must* serve an answer to a complaint . . . within 60 days after service on the United States attorney.") (emphasis supplied).

7

moderate." *Belize Soc. Dev., Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (quoting *Landis*, 299 U.S. at 257).  Put simply, "[t]he scope of the stay and the reasons for its issuance determine whether a stay is immoderate." *Id.*

When exercising the power to stay a case, courts must "'weigh competing interests and maintain an even balance' between the court's interest in judicial economy and any possible hardship to the parties." *Id.* at 733 (quoting *Landis*, 299 U.S. at 254–55).  Identifying and weighing these "competing interests" of "possible hardship[s]" and "judicial economy," *id.*, requires the court to "make such determinations in light of the particular circumstances of the case," *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980).  The party seeking the stay bears the burden "of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and specifically of "mak[ing] out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work to damage someone else," *Landis*, 299 U.S. at 255.  At the same time, a party may be required "to submit to delay not immoderate in extent and not oppressive in its consequences if . . . convenience will thereby be promoted." *Id.* at 256.

### III. DISCUSSION

Defendants move to stay this case in the interest of judicial economy on the grounds that administrative review of the rules, parallel judicial proceedings in *Casa de Md. v. Mayorkas*, and the change in political leadership at DHS "may moot or reshape" plaintiff's claims.  Defs.' Mot. at 1; *see id.* ¶¶ 4–5; Defs.' Reply at 1.  Plaintiffs object on several grounds to grant of any stay, arguing, first, that judicial economy would be better served by a stay of enforcement of the two challenged rules, pursuant to 5 U.S.C. § 705, Pls.' Opp'n at 1, 7, or by summary judgment briefing as to the narrow legal question of whether Chad Wolf was validly serving as Acting

Secretary of DHS when the rules were promulgated, *id.* at 1, 9; second, that the two challenged rules "caus[e] harm to Plaintiffs every day they are in effect," *id.* at 3 (citing Am. Compl. at ¶¶ 11–32), necessitating moving forward with the merits; and, finally, that defendants have not made out a "clear case of hardship or inequity in being required to go forward," *id.* at 5 (quoting *Ctr. for Biological Diversity v. Ross*, 419 F. Supp. 3d 16, 21 (D.D.C. 2019) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936))).  As explained below, because defendants have failed to carry their burden of establishing a need for an indefinite stay while the challenged rules remain largely in effect, this motion to stay proceedings is denied.

### A.     Judicial Economy Does Not Require A Stay

While a stay may be granted for the "economy of time and effort for [the Court], for counsel and for litigants," *Landis*, 299 U.S. at 254, a court may not order a stay "of indefinite duration in the absence of a pressing need," *Belize Soc. Dev.*, 668 F.3d at 731 (quoting *Landis*, 299 U.S. at 255).  A stay is "sufficiently indefinite to require a finding of a pressing need" where "the record fails to show either what a 'resolution' of [the] case would entail or when such a resolution is likely to be reached."  *Id.* at 732.

Defendants argue that the "case should be stayed pending the outcome of [the] rulemaking proceedings."  Defs.' Reply at 1.  Yet, this reason for a proposed stay is premised on speculative administrative changes and judicial decisions that may fall far short of providing any relief sought by plaintiffs.  Notably, neither DHS' tentative plan nor defendants' filings in this case provide any indication that DHS plans to alter or repeal either of these rules and thus exposes defendants' argument that the rulemaking "may moot or reshape the claims in this case" as entirely theoretical.  Def.'s Reply at 1.  To this point, significantly, the DHS Secretary's ratification of the Timeline Repeal Rule, which action defendants argue "resolves Plaintiffs' Homeland Security Act claim with respect to that rule," *id.* at 2, is an endorsement of the

9

challenged rule that belies defendants' argument that the result of the rulemaking could alter plaintiffs' claims.

Moreover, DHS' tentative plan "to engage in rulemaking" related to Timeline Repeal Rule and the EAD Bar Rule does not anticipate a final rule until June 2022, a year from now barring potential delays.  Defs.' Reply at 1; *see, e.g.*, *United States v. Philip Morris USA Inc.*, 841 F. Supp. 139, 141 (D.D.C. 2012) (finding a period of "at least one or more years" for resolution, with additional time for further review, to be "lengthy and indefinite").[8]  Meanwhile, plaintiffs would continue to be subject to the challenged rules, without any resolution of their claims that these rules are unlawful.

Defendants' second reason for a stay is predicated on a possible judicial decision by the Maryland court in *Casa de Md., Inc. v. Mayorkas*.  While issuance of a stay may be appropriately exercised "pending resolution of parallel actions in other courts," *Dietz*, 136 S. Ct. at 1892 (citing *Landis*, 299 U.S. at 254), "only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both," *Belize Soc. Dev.*, 668 F.3d at 732 (quoting *Landis*, 299 U.S. at 255).  Those circumstances should become rarer still where, as here, resolution of the Maryland litigation at some indefinite time in the future may not even provide any, let alone full, relief to plaintiffs in this case.  The Maryland court may again limit any relief granted to only the parties in that litigation and/or limit any relief to only part of the challenged rules, rather than expand the preliminary injunction to cover both challenged rules in their entirety and uniformly apply the

---

[8]  Plaintiffs initially argued, in its April 29, 2021 opposition brief, that the "government cannot, at this point, guarantee that the Rules will be included [for review] or provide any clear timeline for potential repeal," Pls.' Opp'n at 6, but this argument has been overtaken by defendants' May 7, 2021 status report in *Casa de Md., Inc. v. Mayorkas*, in which defendants confirmed that "DHS plans to engage in rulemaking related to the two rules" challenged in this case, Status Report, *Casa de Md. v. Mayorkas*, Civil Case No. 20-cv-2118-PX (D. Md. May 7, 2021), ECF No. 116.

injunction nationwide. Only the latter expansion of the injunctive relief would provide full relief to plaintiffs in this case. In short, the potential impact of the Maryland court's decision on the relief sought by the plaintiffs in this case are simply too speculative in both timing and scope to avoid defendants' proposed stay being "of indefinite duration" and otherwise "immoderate." *Id.*[9]

Finally, defendants urge a stay of these proceedings with the invocation of "new political leadership," "the change in administration," and the "ongoing confirmation process of appointees" as part of an argument that "additional time is required to brief new leadership on the issues underlying this case [in order to settle any] significant[] changes [in] how those issues are presented and briefed." Defs.' Mot. ¶ 6. This reason, however, reflects only a pressing need for defendants to expedite briefing of incoming agency leadership and personnel, not a pressing need for a stay in this case. In fact, proceeding promptly with the instant litigation may prioritize for the agency any underlying decisions required to defend, or not, the challenged rules.

### B. The Balance of Hardships Weighs Heavily Against A Stay

"[A] district court's issuance of an indefinite stay order must be supported by 'a balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev.*, 668 F.3d at 732 (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)). Defendants here bear the burden of "mak[ing] out a clear case of hardship or inequity in being required to go forward," given the "fair possibility that the [proposed] stay" will "damage" plaintiffs, *Landis*, 299 U.S. at 255, at a minimum, by delaying any resolution of their claims. Defendants, however,

---

[9] Plaintiffs contend that judicial economy would be better served either by (1) defendants "consent[ing] to a court-ordered stay of the *enforcement of the Rules* under 5 U.S.C. § 705," which defendants have declined to do, Pls.' Opp'n at 7 (emphasis in original), or (2) the parties proceeding to summary judgment briefing on "a narrow question of law: whether Mr. Wolf was validly acting as Acting DHS Secretary when the Rules were promulgated," *id.* at 9. The availability of these alternatives, according to plaintiffs, "belies the government's argument that it is solely interested in promoting 'economy'." *Id.* at 7. Defendants' rejection of these alternatives highlights that defendants' proposed stay places the entire burden of any delay on plaintiffs without any guarantee that either agency action or the Maryland court will resolve plaintiffs' claims in this lawsuit, let alone provide any of the relief sought.

have made no case of hardship or inequity at all, much less a clear one. Arguing solely that "a stay of these proceedings will serve the interests of judicial and party economy," Defs.' Mot. ¶ 7, defendants fail to show that, absent a stay, the agency would suffer any hardship, save for the expenditure of resources in proceeding with the litigation, Defs.' Reply at 3. That burden of litigation is wholly insufficient to warrant a stay. *See Ctr. for Biological Diversity*, 419 F. Supp. 3d at 21 ("[B]eing required to defend a suit, without more, does not constitute a clear case of hardship or inequity.").

Meanwhile, plaintiffs allege that the rules "are causing [them] harm . . . every day they are in effect." Pls.' Opp'n at 3 (citing Am. Compl. at ¶¶ 11–32). According to plaintiffs, the challenged rules "make it harder, and in some cases impossible, for asylum applicants like [individual plaintiffs] to obtain . . . EADs[]," which are necessary for asylum seekers to "earn income while their asylum applications are being adjudicated," and are a "prerequisite to accessing many other services." Pls.' Opp'n at 3 (citing Am. Compl. ¶¶ 39–41). Consequently, organizational plaintiffs will, so long as the rules remain in effect, continue to face "increase[d] . . . burden on [their] social and/or legal services programs . . . thus decreasing the number of clients [they] are able to serve," *id.* at 4 (citing Am. Compl. ¶¶ 244–46, 249, 251), rendering the operation of *pro se* clinics impractical, *id.* (citing Am. Compl. ¶ 249), and putting attorneys "in an untenable position while advising clients by forcing clients to choose between presenting new evidence to ensure the long-term success of an asylum claim and the rejection of the client's EAD application that presenting the new evidence would trigger," *id.* (citing Am. Compl. ¶ 252). When weighed against defendants' absence of harm, the balance of hardships plainly weighs in plaintiffs' favor.[10]

---

[10] Plaintiffs dedicate nearly half of their opposition brief and the entirety of their surreply to the merits of their claim that the rules are unlawful, arguing that the rules are invalid because Chad Wolf lacked authority to

Defendants advance a single argument in response, stating that "the preliminary injunction in [*Casa de Md., Inc. v. Mayorkas*] . . . if granted, would appear to provide Plaintiffs in this case with interim relief and thereby alleviate any claimed harm." Defs.' Reply at 2.  In defendants' view, even if the Court were to conclude that no stay was warranted pending the speculative outcome of the administrative rulemaking process, a stay should be imposed pending the Maryland court's decision on whether to expand the injunctive relief in that case.  *Id.* at 2–3.  This argument hardly provides an adequate basis for "a balanced finding" that the need for a stay "overrides the injury" to plaintiffs, *Dellinger*, 442 F.2d at 787, particularly since the timing and scope of the Maryland court's decision are entirely unknown.

## IV.    CONCLUSION AND ORDER

For these foregoing reasons, it is hereby

**ORDERED** that defendants' Motion to Stay, ECF No. 16, is DENIED; and it is further

**ORDERED** that the parties file, by June 8, 2021, a joint status report proposing a schedule to govern further proceedings in this matter; and it is further

**ORDERED** that defendants, by June 8, 2021, answer or otherwise respond to plaintiffs' Amended Complaint, ECF No. 12, and explain the failure to adhere to the statutorily deadlines for filing such answer or response in a timely manner.

**SO ORDERED.**

Date:  June 1, 2021

_____
BERYL A. HOWELL
Chief Judge

---

promulgate the rules under the Homeland Security Act and the Federal Vacancies Reform Act ("FVRA"), Pls.' Opp'n at 9–14; that the subsequent ratification of the rules by Peter Gaynor, then-FEMA Administrator, is null for lack of valid delegation of rulemaking authority, Pls.' Opp'n at 14–16; and that defendant Secretary Mayorkas' ratification is also invalid under the FVRA, Pls.' Surreply at 1–3.  These arguments all focus on the likelihood of success of plaintiffs' underlying claim and, no matter how persuasive, are not particularly relevant to the legal standards guiding consideration of whether a stay is warranted.  Thus, these arguments are not further considered here.