UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASYLUMWORKS, *et al.*,

      *Plaintiffs*,

v.

ALEJANDRO MAYORKAS, Secretary,
U.S. Department of Homeland Security, *et al.*,

      *Defendants*.

Civil Action No. 20-3815 (BAH)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

CHANNING D. PHILLIPS
*Acting United States Attorney*

BRIAN P. HUDAK
*Acting Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

July 28, 2021                *Counsel for Defendants*

# <u>CONTENTS</u>

*Page*

INTRODUCTION ................................................................................................................... 1

BACKGROUND ................................................................................................................... 1

    A.    Asylum and Employment Authorization ................................................................ 1

    B.    The Challenged Rules ............................................................................................ 3

        1.    The Timeline Repeal Rule ......................................................................... 3

        2.    The Broader EAD Rule.............................................................................. 5

    C.    Recent Succession of the Office of Secretary of Homeland Security ................. 10

        1.    Secretary Nielsen Is Succeeded by Acting Secretary McAleenan............ 12

        2.    Acting Secretary McAleenan Is Succeeded by Acting Secretary Wolf. ... 13

        3.    Secretary Mayorkas Is Confirmed. ........................................................... 13

    D.    Ratifications of the Timeline Repeal Rule ........................................................... 13

    E.    Related Proceedings ............................................................................................. 14

ARGUMENT ...................................................................................................................... 14

I.    The Timeline Repeal Rule and the Broader EAD Rule were lawfully promulgated........ 14

    A.    Secretary Nielsen validly prescribed an order of succession............................... 15

    B.    Acting Secretary McAleenan validly prescribed an order of succession. ............ 20

        1.    An Acting Secretary may amend the line of succession. .......................... 20

        2.    The 210-day provision of the Federal Vacancies Reform Act does not apply. .......................................................................................... 24

        3.    Wolf's service did not violate the Appointments Clause. ......................... 26

II.    Secretary Mayorkas ratified the Timeline Repeal Rule. .................................................. 28

CONCLUSION .................................................................................................................... 33

## <u>AUTHORITIES</u>

*Page(s)*

### Cases

*Advanced Disposal Servs. E., Inc. v. NLRB*,
   820 F.3d 592 (3d Cir. 2016) ................................................................... 28

*Alden v. Maine*,
   527 U.S. 706 (1999) ............................................................................. 27

*Batalla Vidal v. Wolf*,
   501 F. Supp. 3d 117 (E.D.N.Y. 2020) ..................................................... 26

*CASA de Md., Inc. v. Wolf*,
   486 F. Supp. 3d 928 (D. Md. 2020) ............................................... 14, 25-26

*Guedes v. ATF*,
   920 F.3d 1 (D.C. Cir. 2019) .............................................................. 28, 30

*Immigrant Legal Res. Ctr. v. Wolf*,
   491 F. Supp. 3d 520 (C.D. Cal. 2020) ..................................................... 26

*In re Grand Jury Investigation*,
   916 F.3d 1047 (D.C. Cir. 2019) ..................................................... 20, 23, 24

*Intercollegiate Broad. Sys. Inc. v. Copyright Royalty Bd.*,
   796 F.3d 111 (D.C. Cir. 2015) ............................................................... 28

*Jooce v. FDA,*
   Civ A. No. 18-1615, 2020 WL 680143 (D.D.C. Feb. 11, 2020) ................... 28-29

*Kajmowicz v. Whitaker*,
   Civ. A. No. 19-0187, 2021 WL 2200795 (W.D. Pa. June 1, 2021) ................ 30, 31

*Kisor v. Wilkie*,
   139 S. Ct. 2400 (2019) ......................................................................... 20

*Nw. Immigrant Rights Project v. USCIS*,
   496 F. Supp. 3d 31 (D.D.C. 2020) ................................................. 24, 30, 32

*Rosario v. USCIS*,
   365 F. Supp. 3d 1156 (W.D. Wash. 2018) ................................................. 4

*Ryan v. United States*,
   136 U.S. 68 (1890) .............................................................................. 20

*U.S. Telecom Ass'n v. FCC*,
   359 F.3d 554 (D.C. Cir. 2004) ............................................................... 32

*United States v. Eaton*,
   169 U.S. 331 (1898) ............................................................................ 27

*United States v. Harris County,*
   Civ. A. No. 16-2331, 2017 WL 7692396 (S.D. Tex. Apr. 26, 2017) ...................................... 30

*United States v. Nixon,*
   418 U.S. 683 (1974) ............................................................................................ 24

*United States v. Pellicci,*
   504 F.2d 1106 (1st Cir. 1974) ............................................................................. 24

*United States v. Tinley Park,*
   Civ A. No. 16-10848, 2017 U.S. Dist. LEXIS 234517 (N.D. Ill. July 17, 2017) .................. 30

*Weiss v. United States,*
   510 U.S. 163 (1994) ............................................................................................ 23, 28

## Statutes

5 U.S.C. App. 3 § 3 ...................................................................................................... 22
5 U.S.C. § 112 ............................................................................................... 11, 16, 22
5 U.S.C. § 3345 ..................................................................................................... 10, 25
5 U.S.C. § 3346 ............................................................................................... 10, 25, 27
5 U.S.C. § 3347 ......................................................................................... 10, 21, 25, 26
5 U.S.C. § 3348 ............................................................................................ 27, 29, 30, 31
5 U.S.C. § 3349a ............................................................................................................ 27
5 U.S.C. § 3346 ..................................................................................................................... 25
6 U.S.C. § 112 ............................................................................................... 18-19, 32
6 U.S.C. § 113 ...................................... 10, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26
6 U.S.C. § 271 ..................................................................................................................... 31
8 U.S.C. § 1101 ..................................................................................................................... 1
8 U.S.C. § 1103 ..................................................................................................................... 31
8 U.S.C. § 1158 ............................................................................................... 2, 6, 7, 8, 32
14 U.S.C. § 302 ..................................................................................................................... 22
31 U.S.C. § 901 ..................................................................................................................... 22
31 U.S.C. § 1344 ..................................................................................................................... 32

## Regulations

59 Fed. Reg. 62,284 (Dec. 5, 1994) ................................................................................. 3
68 Fed. Reg. 10,619 (Mar. 5, 2003) .............................................................................. 10
81 Fed. Reg. 90,667 (Dec. 14, 2016) ..................................................................... 11, 15
84 Fed. Reg. 47,148 (Sept. 9, 2019) ............................................................................... 5

84 Fed. Reg. 62,374 (Nov. 14, 2019) ........................................................................ 5, 6

85 Fed. Reg. 37,502 (June 22, 2020) ..................................................................... 3, 4, 5

85 Fed. Reg. 38,532 (June 26, 2020) .............................................................. 2, 6, 7, 8, 9, 26

## Other Authorities

*Office of Legal Counsel, Guidance on Application of Federal Vacancies Reform Act of 1998*,
    23 Op. O.L.C. 60 & n.3 (Mar. 22, 1999) ...................................................... 25, 31

*Designation of Acting Dir. of the Office of Mgmt. & Budget*,
    27 Op. O.L.C. 121 (2003) ............................................................................... 23

# INTRODUCTION

Plaintiffs seek to invalidate two rules about employment authorization for asylum seekers that were promulgated by the Department of Homeland Security in 2020. Plaintiffs have moved for partial summary judgment asserting that, under the Federal Vacancies Reform Act and the Homeland Security Act, Kevin McAleenan and Chad Wolf did not lawfully serve as Acting Secretaries of the Department and, therefore, that their respective issuances of the relevant notices of proposed rulemaking and final rules were without legal effect. Plaintiffs' theory is flawed, and this Court should exercise its independent judgment to reject it. Contrary to Plaintiffs' contention, Secretary Kirstjen Nielsen expressly used her statutory authority to set the order of succession for the Office of Secretary to designate McAleenan to assume the role of Acting Secretary upon her departure. And McAleenan properly realigned the order of succession so that Wolf would follow him as Acting Secretary. Further, even if McAleenan and Wolf had not lawfully discharged the authority of Acting Secretary, the Timeline Repeal Rule is valid because it has been duly ratified by the current Senate-confirmed Secretary of Homeland Security. For these reasons, Plaintiffs' motion for partial summary judgment should be denied, and Defendants' cross-motion should be granted.

# BACKGROUND

### A.   Asylum and Employment Authorization

Asylum is a discretionary benefit that may be granted to an individual who has experienced past persecution or has a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion in their country of nationality or their country of last habitual residence. Refugee Act of 1980, Pub L. No. 96-212, § 201, 94 Stat. 102, 102 (1980) (codified in relevant part at 8 U.S.C. § 1101(a)(42)(A)). By statute, an individual seeking asylum generally must apply within one year of arriving in the United States

or be deemed ineligible absent changed or extraordinary circumstances. 8 U.S.C. § 1158(a)(2)(B). Further, certain persons are barred from receiving asylum, including persecutors, those convicted of particularly serious crimes, those for whom there is reason to believe that they committed a serious nonpolitical crime (whether or not actually convicted), and those who would be a danger to national security. *Id.* § 1158(b)(2)(A).

An asylum application may be filed with either United States Citizenship and Immigration Services ("USCIS") or an immigration court under the purview of the Executive Office for Immigration Review in the Department of Justice, depending upon the applicant's circumstances. If someone is physically present in the United States, is not detained, and has not been placed in removal proceedings, they would generally file an "affirmative" asylum application with USCIS. 85 Fed. Reg. at 38,547. If the person is in removal proceedings before an immigration court, they would generally file a "defensive" application with the immigration judge. *Id.*

By statute, "[a]n applicant for asylum is not entitled to employment authorization, but such authorization may be provided under regulation[.]" 8 U.S.C. § 1158(d)(2). However, an applicant may not under any circumstances receive employment authorization prior to 180 days after the filing of an application for asylum. *Id.* Under the regulations preceding the amendments at issue in this case, an applicant for asylum had to wait 150 days after submitting a complete (or deemed complete) asylum application to apply for employment authorization. 85 Fed. Reg. at 38,598. USCIS would deem an application complete if it had been pending for 30 days without being determined to be incomplete. *Id.* Once a complete application for employment authorization was filed, USCIS had 30 days to adjudicate it. *Id.* If employment authorization was granted, it was valid until the authorization expired by its terms or 60 days after the applicant was denied asylum. *Id.* at 38,548.

B.     <u>The Challenged Rules</u>

Plaintiffs challenge various amendments to DHS's regulations governing employment authorization. Those rules were promulgated through two separate rulemakings. First, in September 2019, DHS proposed to eliminate the 30-day timeline for USCIS to adjudicate initial applications for employment authorization documents based on a pending asylum application ("C8" or "C8 EAD"). Second, in November 2019, DHS proposed several changes to the C8 EAD eligibility criteria. Each of these rulemakings is discussed in more detail below.

1.     *The Timeline Repeal Rule*

In 1994, the Immigration and Naturalization Service ("INS")—the predecessor agency of USCIS—amended its procedures for adjudicating applications for asylum and employment authorization. 59 Fed. Reg. 62,284 (Dec. 5, 1994). Among other things, to discourage the filing of meritless asylum applications solely as a means of obtaining employment authorization, INS restricted asylum applicants from seeking employment authorization until either they had been granted asylum or 150 days had passed from the filing of a complete asylum application (excluding any applicant-caused delays). *Id.* at 62,284, 62,290. The INS would then have 30 days after the 150 days had elapsed to adjudicate initial applications for employment authorization. *Id.* at 62,289.

In the two-and-a-half decades following promulgation of that rule, the volume of applications for asylum and employment authorization grew dramatically, and the process for adjudicating asylum applications underwent significant changes, particularly involving additional safeguards implemented after the terrorist attacks of September 11, 2001. Regarding the volume increase, the number of affirmative asylum applications received by USCIS increased from 44,453 in Fiscal Year ("FY") 2013, to 56,912 in FY 2014, 84,136 in FY 2015, 115,888 in FY 2016, and 142,760 in FY 2017. 85 Fed. Reg. 37,502 (June 22, 2020). Initial applications for employment

authorization increased from 41,021 in FY 2013, to 62,169 in FY 2014, 106,030 in FY 5015, 169,970 in FY 2016, and 261,782 in FY 2017. *Id.* Similarly, renewal applications for employment authorization increased from 37,86 in FY 2013, to 47,103 in FY 2014, 72,559 in FY 2015, 128,610 in FY 2016, and 121,255 in FY2017. *Id.* Along with these increases in volume, the process for adjudicating C8 employment authorization applications became more complex. For example, employment authorization cards were formerly relatively simple documents and could therefore be printed at local offices were the applications were adjudicated. *Id.* By 2006, however, DHS had fully transitioned to a more secure, tamper-resistant card that was produced at a centralized facility. *Id.* In addition, after September 11, 2001, USCIS implemented several changes to the asylum process to enhance fraud detection and prevent possible threats to national security, including verifying the identity of applicants for employment authorization and determining whether there is a possible fraud, criminal, or national security concern, which may trigger additional vetting. *Id.* at 37,508–09. As a result of these increases in the volume of applications and the new complexities involved in their adjudication, the time for USCIS to adjudicate initial C8 applications exceeded the 30 days set by the 1994 regulation more than half the time. *Id.* at 37,502 n.1.

Then, in 2018, a federal court in the Western District of Washington entered an injunction requiring USCIS to adjudicate initial C8 applications within 30 days for members of a class consisting of all applicants for initial C8 EAD's who had neither had their application adjudicated within 30 days nor received interim employment authorization. *Rosario v. USCIS*, 365 F. Supp. 3d 1156, 1163 (W.D. Wash. 2018). Compliance with that injunction placed an extraordinary strain on USCIS's already-strained resources and required the agency to significantly redirect resources from other priorities, leading to unacceptable delays in other time-sensitive adjudication timeframes. 85 Fed. Reg. at 37,503.

Concluding that this situation was not sustainable, on September 9, 2019, USCIS proposed to eliminate the 30-day deadline for the adjudication of initial C8 applications. 84 Fed. Reg. 47,148 (Sept. 9, 2019). Noting the increase in the volume of applications, 85 Fed. Reg. at 37,508, the greater complexity in adjudicating them, *id.*, and the fact that the *Rosario* injunction was requiring USCIS to "significantly divert[] resources from other adjudications," *id.* at 37,519, USCIS concluded that maintaining the 30-day deadline to adjudicate employment authorization applications was "not sustainable and unfair to other benefit requestors who also rely on timely adjudications from USCIS for other immigration status-granting benefit requests." *id.* 37,512. The notice of proposed rulemaking was signed by Kevin McAleenan, then-Acting Secretary of DHS.

USCIS considered adopting a longer timeframe—namely, 90 days—as an alternative to eliminating the timeframe altogether, but ultimately the agency determined that it was "unable to plan its workload and staffing needs with the level of certainty that a binding timeframe may require, and has no way of predicting what national security and fraud concerns may be or what procedures will be necessary in the future." 85 Fed. Reg. at 37,521. While acknowledging that eliminating the timeline may cause applicants some concern, it predicted that it would return to the adjudicatory timeframe that existed before the *Rosario* order. *Id.*

The final rule eliminating the 30-day timeframe was signed by Chad Mizelle, the Senior Official Performing the Duties of the General Counsel of DHS at the time, and went into effect on August 21, 2020. 85 Fed. Reg. at 37,507, 37,546.

### 2.     *The Broader EAD Rule*

On November 14, 2019, the Department of Homeland Security issued a notice of proposed rulemaking that would, inter alia, modify eligibility requirements for asylum applicants to obtain employment authorization. 84 Fed. Reg. 62,374 (Nov. 14, 2019). The changes were for the stated

intent of reducing incentives for noncitizens to file frivolous, fraudulent, or meritless asylum applications in order to obtain employment authorization or other non-asylum benefits and to discourage the illegal entry of persons into the United States. 85 Fed. Reg. 38,532, 38,543 (June 26, 2020). DHS expressed a belief that its changes would mitigate increased migration levels, improve the backlog of asylum applications, and help clear the way for meritorious asylum applications to be adjudicated more quickly. *Id.* The notice of proposed rulemaking was signed by Kevin McAleenan as Acting Secretary of DHS. 84 Fed. Reg. at 62,424.

The final rule implemented the following changes.

*Extension of the Waiting Period*. The final rule extended the period that an asylum applicant must wait until he or she is eligible to request employment authorization from 180 days to 365 days after the filing of a complete asylum application. 85 Fed. Reg. at 38,548. DHS stated that it intended this change to remove incentives for persons to file frivolous or meritless claims solely for the benefit of obtaining employment authorization. *Id.* DHS acknowledged that the amendment would cause some bona fide refugees to "experience potential economic hardship," but concluded that this hardship was outweighed by a need to "maintain the efficacy and integrity of the U.S. asylum system." *Id.* at 38,549.

*One-Year Filing Deadline*. As noted above, an applicant is generally deemed ineligible for asylum unless he or she applies within one year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). In the final rule, DHS also extended this ineligibility to applicants for employment authorization, providing that asylum applicants will be ineligible for employment authorization if they did not file an asylum application within one year of arriving in the United States, unless they meet the statutory criteria for an exception. 85 Fed. Reg. at 38,550. DHS stated that this provision was intended to address applicants filing skeletal or fraudulent applications to

trigger removal proceedings where they could seek cancellation of removal, incentivize bona fide asylum applicants to file sooner, and reduce backlogs. *Id.*

*Criminal Bars to Eligibility*. The final rule also aligned the eligibility criteria for a C8 EAD to the criminal bars for asylum. As noted, an individual is generally not eligible for asylum if he or she has been convicted of certain aggravated felonies or serious crimes or has committed a serious nonpolitical crime outside the United States. 8 U.S.C. § 1158(b)(2)(A)(ii), (iii). DHS provided that such criminal activity would also be a bar to employment authorization and began requiring applicants for employment authorization to submit biometric information with which the agency could conduct a criminal history background check and verify the applicant's identity, among other things. 85 Fed. Reg. at 38,550.

*Procedural Changes*. The final rule made several procedural changes to the way DHS adjudicates applications for asylum. First, it removed language providing that an application for asylum would be "deemed complete" if USCIS failed to return it within 30 days, thereby starting the waiting period to seek employment authorization. 85 Fed. Reg. at 38,550. DHS viewed this change as "consistent with the general principle that applicants and petitioners bear the burden of filing complete applications and petitions." *Id.*

Second, DHS also ended the practice of issuing "recommended approvals" of asylum applications prior to receiving the results of background checks and the effect that such recommended approvals had on eligibility for employment authorization. 85 Fed. Reg. at 38,550. DHS concluded that issuing such interim recommended approvals ran afoul of Congress's prohibition against USCIS "grant[ing] an immigration benefit unless the results of background checks required by law to be completed prior to the granting of the benefit have been received by [USCIS], and the results do not preclude the granting of the benefit." *Id.* (quoting Consolidated

Appropriations Act of 2019, Pub. L. No. 116-6, 113 Stat. 33, Div. A, tit. IV, § 402 (2019)). DHS also found it to be an inefficient use of resources to review applications for asylum twice: once for purposes of determining whether to issue an interim recommended approval and again once background check results were received for purposes of rendering a final decision. *Id.* at 38,550–51.

Finally, the final rule provided that applicants who submit substantial documentary evidence fewer than 14 days before an asylum interview will be deemed to have caused an applicant-caused delay for purposes of eligibility for employment authorization. 85 Fed. Reg. at 38,551. DHS clarified that smaller quantities of evidence, such as a police or medical report, may not qualify as an applicant-caused delay. *Id.*

*Termination of Employment Authorization.* DHS also revised the rule governing when employment authorization would terminate. 85 Fed. Reg. at 38,551. Under the revised rule, C8 employment authorization automatically terminates when a USCIS asylum officer denies the application for asylum.[1] *Id.* Under the prior rules, the employment authorization would continue to run following the denial of an asylum application until 60 days after the denial or the date on which the employment authorization would have expired, whichever was later. *Id.* If USCIS referred the asylum application to an immigration judge, however, the employment authorization would remain effective. *Id.* Further, under the revised rules, if an immigration judge denies the asylum application, the employment authorization terminates 30 days after the judge's denial,

---

[1]    The rule operates slightly differently for "unaccompanied alien children." For unaccompanied children, USCIS has initial jurisdiction to decide asylum applications even where the applicant is in removal proceedings. *See* 8 U.S.C. § 1158(b)(3)(C). If USCIS does not grant the asylum application, it is turned over to the immigration judge to decide. 85 Fed. Reg. at 38,552. In the final rule, DHS made clear that an unaccompanied child's employment authorization will not terminate in this circumstance unless and until the immigration judge denies the applicant, at which point the employment authorization will terminate after 60 days absent a timely appeal. *Id.*

unless the applicant appeals to the Board of Immigration Appeals. *Id.* Consistent with the prior regulations, DHS would deny employment authorization to an applicant who had been denied asylum by an immigration judge during the 365-day waiting period or before USCIS adjudicates the initial application for employment authorization. *Id.* In the event of a timely appeal, the employment authorization would continue during the pendency of that appeal, but it would not continue during any subsequent judicial review. *Id.* DHS concluded that these changes were necessary to prevent applicants who failed multiple times to established asylum eligibility from "abus[ing] the appeal process in order to remain employment authorized." *Id.*

*Illegal Entry.* Finally, the Broader EAD Rule provided that employment authorization may not be granted to asylum applicants who enter or attempt to enter the United States illegally without good cause. 85 Fed. Reg. at 38,552. "Good cause" in this context may include requiring immediate medical attention or fleeing imminent serious harm, and is determined by USCIS adjudicators on a case-by-case basis. *Id.* DHS expressed a belief that illegal entry "should be strongly deterred, and is therefore grounds to deny this discretionary benefit." *Id.*

\*       \*       \*

DHS has included an item on its Spring 2021 regulatory agenda titled, "Rescission of [the Broader EAD Rule] and Change to [the Timeline Repeal Rule]." *See* Office of Info. and Regul. Affairs, *DHS Agency Rule List, Spring 2021*, https://go.usa.gov/x6Mzw (last visited July 7, 2021). The abstract for that item notes that "DHS plans to issue a notice of proposed rulemaking that would rescind or substantively revise" those two rules. *Id.* As these proposed rulemakings, if finalized, would moot some or all of Plaintiffs' claims, Defendants will keep the Court apprised of their status.

C.    <u>Recent Succession of the Office of Secretary of Homeland Security</u>

The succession of officials within the Department of Homeland Security is governed by federal statutes, presidential designations, and orders issued by the Secretary of Homeland Security. In 1998, Congress enacted the Federal Vacancies Reform Act, Pub. L. No. 105-277, Div. C, tit. I, § 151, 112 Stat. 2681-611–16 (1998), to govern the designation of acting officials to perform the duties of a Senate-confirmed executive office when the incumbent officer "dies, resigns, or is otherwise unable to perform the functions and duties of the office," 5 U.S.C. § 3345(a). In such a situation, "the person serving as an acting officer" may serve "for no longer than 210 days beginning on the date the vacancy occurs," subject to extensions while a nomination is under consideration, rejected, withdrawn, or returned by the Senate. *Id.* § 3346(a).  The FVRA is the exclusive means for designating an acting officer in a vacancy unless another method is provided by statute. 5 U.S.C. § 3347(a).

In the National Defense Authorization Act for Fiscal Year 2017, Congress provided this sort of statutory authority in the event of a vacancy in the office of the Secretary of Homeland Security. Pub. L. No. 114-328, Div. A, tit. XIX, § 1903, 130 Stat. 2000, 2672 (2016). With this amendment, the Homeland Security Act now provides that, "[n]otwithstanding [the Federal Vacancies Reform Act], the secretary may designate such other officers of the Department in further order of succession to serve as Acting Secretary" after the Deputy Secretary and Under Secretary for Management. 6 U.S.C. § 113(g)(2).

Shortly after the creation of the Department of Homeland Security, on February 28, 2003, President George W. Bush signed Executive Order 13286. 68 Fed. Reg. 10,619 (Mar. 5, 2003). Section 88 of that Order set forth the order of succession for the office of Secretary of Homeland Security "during any period in which the Secretary has died, resigned, or otherwise become unable

10

to perform the functions and duties of the office of Secretary." *Id.* at 10632. This order of succession was later amended by Executive Order 13,753 on December 9, 2016. 81 Fed. Reg. 90,667 (Dec. 14, 2016). Under the amendment, the top three officials in line to serve as acting Secretary, in order of priority, were the Deputy Secretary for Homeland Security, followed by the Under Secretary for Management, followed by the Administrator of the Federal Emergency Management Agency. *Id.*

The Department of Homeland Security included the contents of this Executive Order into an administrative document called "Delegation Number 00106." Swartz Decl. ¶ 4. Delegation Number 00106 collected, in its appendixes, a variety of orders of succession and delegations for officers throughout the Department. As of December 15, 2016, Delegation Number 00106 affirmed what was required by the Executive Order, in the event of the Secretary's "death, resignation, or inability to perform the functions of the Office," the "order of succession" would be governed by "Executive Order 13753, amended on December 9, 2016." Dkt. 25-4 at 11–13. Delegation Number 00106 separately provided, pursuant to the Secretary's then-existing statutory authority to delegate certain functions, *see* 5 U.S.C. § 112(b), that, "in the event [the Secretary was] unavailable to act during a disaster or catastrophic emergency," another official would be delegated "the authority to exercise the powers and perform the functions and duties" of the office of Secretary. *Id.* At that time, the Secretary lacked the statutory authority to set an order of succession. Annex A to Delegation Number 00106 set forth the order of officials to which such authority would be delegated,[2] which matched the order of succession set forth in Executive Order 13,753.

---

[2] Plaintiffs inaccurately refer to Annex A as an "order of succession." Dkt 25-3 ¶ 186. The officials listed in the annex were not to "succeed" the Secretary. Instead, those officials were to be temporarily delegated the duties of the Secretary, to the extent permitted by law, in the event of a crisis during which the Secretary was "unavailable," yet still occupying the office. Dkt. 25-4 at 11.

1. *Secretary Nielsen Is Succeeded by Acting Secretary McAleenan.*

Secretary Kirstjen Nielsen served in office from December 6, 2017, until her resignation effective on April 10, 2019. Dkt. 25-3 ¶ 195. On April 9, 2019, pursuant to her authority under the Homeland Security Act, 6 U.S.C. § 113(g)(2), Secretary Nielsen signed an order "amending the *order of succession* in the Department of Homeland Security." Dkt. 25-4 at 102–03 (emphasis added). This was the first time this authority was exercised after the 2016 amendment to the Homeland Security Act to allow the Secretary to "designate such other officers of the Department in further order of succession to serve as Acting Secretary," 6 U.S.C. § 113(g)(2).

The order states in relevant part as follows: "By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the *order of succession* for the Secretary of Homeland Security as follows." *Id.* (emphasis added). Secretary Nielsen's order moved the Commissioner of U.S. Customs and Border Protection into the number three spot on the order of succession, just behind the Deputy Secretary of Homeland Security and the Under Secretary for Management. *Id.* Previously, the number three spot had been occupied by the Administrator of the Federal Emergency Management Agency. Dkt. 25-4 at 8.

On the that date Secretary Nielsen left office, April 10, the offices of Deputy Secretary of Homeland Security and Under Secretary for Management were vacant. Dkt 25-3 ¶¶ 205–06. As a result, pursuant to Secretary Nielsen's April 9 order, Commissioner Kevin McAleenan became the Acting Secretary of Homeland Security and began performing the duties and functions of that office. Dkt. 25-4 at 139–40. Acting Secretary McAleenan served in that role from April 10, 2019, to November 13, 2019. Dkt. 25-3 ¶ 212.

2.      *Acting Secretary McAleenan Is Succeeded by Acting Secretary Wolf.*

On November 8, 2019, Acting Secretary McAleenan signed an order stating in relevant part as follows: "By the authority vested in me as Secretary of Homeland Security, including the Homeland security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate *the order of succession* for the Secretary of Homeland Security by amending Annex A" of Delegation No. 00106. Dkt. 25-4 at 142 (emphasis added). Under the order, the top three officials in the line of succession remained the Deputy Secretary of Homeland Security, the Under Secretary for Management, the Commissioner of the U.S. Customs and Border Protection. *Id.*  The order made the fourth official in line the Under Secretary for Policy and Plans. On November 13, the day that Acting Secretary McAleenan left office, Chad Wolf was confirmed as the Under Secretary for Policy and Plans. Dkt. 25-3 ¶ 214. Pursuant to the order of succession, and the vacancies in the three offices above him in the order of succession, he assumed the duties of the Acting Secretary that same day. *Id.* Acting Secretary Wolf served in office from November 13, 2019, to January 11, 2021. Acting Secretary Wolf was nominated to serve as Secretary on September 20, 2020, but the Senate did not vote on his nomination. Dkt. 25-3 ¶ 234.

3.      *Secretary Mayorkas Is Confirmed.*

On February 2, 2021, the Senate confirmed Alejandro Mayorkas as the Secretary of Homeland Security, and he was sworn into office later than day. Dkt. 25-3 ¶ 252. He is the first Senate confirmed Secretary to serve in that office since the resignation of Secretary Nielsen.

D.      Ratifications of the Timeline Repeal Rule

On May 4, 2021, Secretary Mayorkas ratified the Timeline Repeal Rule.  Acting "[o]ut of an abundance of caution," Secretary Mayorkas ratified the notice of proposed rulemaking and final rule for the Timeline Repeal Rule. Dkt. 19-1 at 2. The Secretary noted that he had "familiarized

[himself] with those actions," and, "based on [his] review," affirmed and ratified the rule. Secretary Mayorkas has not taken any action to ratify the Broader EAD Rule.[3] *Id.*

E.    Related Proceedings

The Timeline Repeal Rule and the Broader EAD Rule are also the subject of a year-old case pending in the United States District Court in the District of Maryland. *See CASA de Maryland, Inc. v. Wolf*, Civ. A. No. 20-2118 (D. Md. filed July 21, 2020). The court in that case has entered a preliminary injunction preventing the application of key aspects of the challenged rules as to members of the plaintiff organizations. *CASA de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 973–74 (D. Md. 2020). Many of the Plaintiffs in this case either are members of one of those plaintiff organizations or are seeking membership in order to obtain the benefits of the preliminary injunction. *E.g.,* Dkt. 25-3 ¶¶ 16, 25, 33, 50, 66. Several of the individual Plaintiffs who have joined a *CASA de Maryland* plaintiff organization have had their applications for employment authorization approved. *Id.* ¶¶ 27, 39, 126.[4]

**ARGUMENT**

**I.    The Timeline Repeal Rule and the Broader EAD Rule were lawfully promulgated.**

The Timeline Repeal Rule and the Boarder EAD Rule were lawfully promulgated under the authority of Acting Secretaries Kevin McAleenan and Chad Wolf. Plaintiffs claim that these individuals lacked authority to issue the proposed and final rules because neither lawfully served

---

[3]    While the Department of Homeland Security strongly disagreed (and continues to disagree) with the conclusion of the Government Accountability Office and certain Courts that Wolf and McAleenan did not lawfully serve in the office of Acting Secretary, out of an abundance of caution and to try to resolve pending litigation, it undertook a series of measures to have Wolf ratify his and Acting Secretary McAleenan's prior actions. Defendant does not present any argument regarding those ratifications in this brief.

[4]    In addition to *CASA*, there is at least one other pending litigation challenging the rules at issue in this case. *See Nazarov v. Dep't of Homeland Sec.*, Civ. A. No. 21-3659 (E.D.N.Y. filed June 29, 2021).

in the position of Acting Secretary pursuant to the Federal Vacancies Reform Act or the Homeland Security Act. While these contentions have found some favor with a handful of other district courts, this Court should exercise its own independent judgment and conclude that both McAleenan and Wolf validly served as Acting Secretary.

A.    <u>Secretary Nielsen validly prescribed an order of succession.</u>

On December 9, 2016, President Obama issued an executive order pursuant to the Federal Vacancies Reform Act that prescribed an order of succession for the office of Secretary of Homeland Security. 81 Fed. Reg. at 90,667. On December 15, 2016, then-Secretary Jeh Johnson signed a revision to Delegation Number 00106. In Part II.A of that revised document, Secretary Johnson confirmed that the Executive Order governed, stating "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the orderly succession of officials is governed by Executive Order 13753." Dkt. 25-4 at 11.

In Part II.B, Secretary Johnson exercised his delegation authority under § 112(b)(1), "hereby delegat[ing]" to enumerated officials "[his] authority to exercise the powers and perform the functions and duties of [his] office . . . in the event [he is] unavailable to act during a disaster or catastrophic emergency." *Id.* The list of officials to whom Secretary Johnson delegated his authority was set forth in Annex A to Delegation 00106.

At the time that Secretary Johnson revised Delegation 00106 on December 15, 2016, *see* Dkt. 25-4 at 13, he lacked statutory authority to designate an order of succession, which Congress would later grant on December 23, 2016, 130 Stat. at 2000. That new designation authority was exercised by Secretary Nielsen shortly before she left office. Secretary Nielsen announced her resignation on April 7, 2019, and left office on April 10. On April 9, the day before her resignation

became effective, she issued an order titled "Amending the Order of Succession in the Department

of Homeland Security." Dkt. 25-4 at 102–03. The Order states:

> By the authority vested in me as Secretary of Homeland Security, including the Homeland Security Act of 2002, 6 U.S.C. § 113(g)(2), I hereby designate the order of succession for the Secretary of Homeland Security as follows:
>
> Annex A . . . [of] Delegation No. 00106[] is hereby amended by striking the text of such Annex in its entirety and inserting the following in lieu thereof:
>
> Annex A. Order for Delegation of Authority by the Secretary of the Department of Homeland Security.
>
> [A numbered list of 18 officials appears here].
>
> No individual who is serving in an office herein listed in an acting capacity, by virtue of so serving, shall act as Secretary pursuant to this designation.

Dkt. 25-4.

By its terms, the Order "designate[s] the order of succession for the Secretary of Homeland

Security," and does so pursuant to 6 U.S.C. § 113(g)(2), the provision that authorizes the Secretary

to designate an order of succession for her office. It establishes the order of succession by revising

the list of officials in Annex A, which previously had applied only to delegations of authority under

§ 112(b)(1), and by using the revised list as the new order of succession. By so doing, the Order

ensured that the order of succession in the event of vacancy and the order of delegation in cases of

emergency would be the same.

The order of succession designated by the Secretary applies "[n]otwithstanding" the

Federal Vacancies Reform Act, 6 U.S.C. § 113(g)(2). Secretary Nielsen's Order thus superseded

the order of succession previously prescribed by Executive Order 13,753 pursuant to the Federal

Vacancies Reform Act. McAleenan, the Senate-confirmed Commissioner of Customs and Border

Protection, became Acting Secretary pursuant to Secretary Nielsen's Order.

16

It is plain on the face of the Order that Secretary Nielsen was exercising her authority to "designate the order of succession" pursuant to "6 U.S.C. § 113(g)(2)." Dkt. 25-4 at 103. Further, the Order was accompanied by a memorandum from the General Counsel to the Secretary that confirms that the Order created a new order of succession. The memorandum states: "By approving the attached document [the Order], you will designate your desired order of succession for the Secretary of Homeland Security in accordance with your authority pursuant to Section 113(g)(2) of title 6, United States Code." *Id.*; *see also id.* ("Pursuant to your authority set forth in section 113 of title 6, United States Code, you have expressed your desire to designate certain officers of the Department of Homeland Security (DHS) in order of succession to serve as Acting Secretary. Your approval of the attached document will accomplish such designation."); *id.* ("Subject: Designation of an Order of Succession for the Secretary").

Plaintiffs nevertheless argue that despite the Secretary's manifest intent, and despite the Order's express reference to "designat[ing] the order of succession," and its express invocation of § 113(g)(2), the Order did not alter the order of succession in the event of a vacancy, but instead only revised the delegation of authority in the event of a disaster or emergency. Pls.' Br. at 23–24. They rely on the fact that Secretary Nielsen's Order did not specifically amend Part II.A of Delegation 00106, which stated that "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office, the orderly succession of officials is governed by Executive Order 13,753, amended on December 9, 2016." Dkt. 25-4 at 48. Accordingly, they contend that Part II.A continued to govern the order of succession in the event of a vacancy. Pls.' Br. at 23.

What Plaintiffs overlook is that Part II.A did not itself prescribe the order of succession, and it therefore did not need to be amended for the Secretary to change the order of succession. As noted, then-Secretary Johnson signed his revision to Delegation Number 00106 on December 15,

2016, *before* Congress amended the Homeland Security Act to give the Secretary the authority codified in § 113(g)(2) to prescribe the order of succession for her office. Accordingly, when Part II.A of Delegation 00106 stated that the order of succession "is governed by" Executive Order 13,753, it was not establishing an order of succession; it was merely identifying the document that did so.[5]   There was thus no need for Secretary Nielsen to amend the text of Part II.A. By designating an order of succession pursuant to 6 U.S.C. § 113(g)(2), Secretary Nielsen's Order superseded Executive Order 13,753 by operation of law. Nothing more was required.[6]

Plaintiffs and district courts in other cases have noted that when the Department compiled an updated version of Delegation 00106 after Secretary Nielsen's Order, the update did not change Part II.A. Pls.' Br. at 23–24; *see* Dkt. 25-4 at 105. But the revisions to Delegation Number 00106 were not signed by Secretary Nielsen and were made as an administrative matter for internal purposes. *See* Swartz Decl. ¶ 4. That Part II.A was not correctly updated as an administrative matter to reflect that Secretary Nielsen's Order superseded Executive Order 13,753 does not change the legal effect of her Order.

Plaintiffs likewise err in arguing that Secretary Nielsen's Order was limited to unavailability in cases of disaster or emergency because the Order merely revised Annex A of Delegation 00106. Pls.' Br. at 23. At the time that Secretary Nielsen issued her Order, Annex A listed the officials to whom the Secretary had temporarily *delegated* authority pursuant to 6 U.S.C.

---

[5]   The text of Secretary Johnson's revision to Delegation 00106 makes this distinction clear. Part II.A stated that the order of succession "is governed by" Executive Order 13753. In contrast, Part II.B stated that "I hereby delegate . . . my authority" in cases of disaster or emergency. Dkt. 25-4 at 48.

[6]   When then-Acting Secretary McAleenan later issued a new order of succession on November 8, 2019, his order amended the text of Part II.A of Delegation 00106. *See* Dkt. 25-4 at 214. The amending language merely provided additional clarity regarding the operative order of succession; it did not (and could not) change the prior legal effect of Secretary Nielsen's order.

§ 112(b)(1) during times of unavailability due to disaster or catastrophic emergency. Dkt. 25-4 at 48. But Secretary Nielsen's Order put the list of officials in Annex A to an additional use pursuant to a different statutory authority. The Order expressly made the revised Annex A the order of *succession* pursuant to § 113(g)(2), which applies in cases of "absence, disability, or vacancy in office," *id.* § 113(g)(1). Plaintiffs, like the district courts in other cases, focus solely on the language of the order that amends Annex A and ignore the critical language of the order, which states: "By the authority vested in me as Secretary of Homeland Security, *including . . . 6 U.S.C. § 113(g)(2), I hereby designate the order of succession* for the Secretary of Homeland Security *as follows*[.]" Dkt. 25-4 at 103 (emphasis added). What "follows" is a list of 18 officials in numeric order of succession. The final sentence of the Order confirms that the Order is a "designation" of who "shall act as Secretary." Dkt. 25-4 at 103.

It makes no difference that the revised list of officials in Annex A was preceded by another clause and title referring to "delegation of authority." Dkt. 25-4 at 103. That language merely showed that revised Annex A would *also* continue to serve its original function regarding delegation of the Secretary's functions in the event of disaster or emergency. If Secretary Nielsen's Order merely amended the delegation of authority in the event of disasters or emergencies, there would have been no reason for the Order to rely on § 113(g)(2). Indeed, if that were all that the Order did, the entire first paragraph of the Order was unnecessary; the Order could have simply begun with the second paragraph, stating that "Annex A of DHS Orders of Succession and Delegations of Authorities for Named Positions, Delegation No. 00106, is hereby amended[.]" Plaintiffs' proposed reading of the statute thus not only fails to take account of the terms of the first paragraph but renders the paragraph superfluous.

19

In short, the plain terms of the Order make clear that it not only revised Annex A, but also used Annex A to designate the order of succession. Contemporaneous official actions by the Department of Homeland Security confirm that understanding of the Order. Nielsen personally swore in McAleenan as Acting Secretary pursuant to the Order, https://bit.ly/2TqWjcA, and the Department treated McAleenan as the Acting Secretary and identified § 113(g)(2) as the authority for the designation in its official notice of his acting service, Dkt. 25-4 at 140. Even if the terms of the Order were ambiguous, that contemporaneous understanding would be entitled to significant weight. *Cf. Kisor v. Wilkie*, 139 S. Ct. 2400, 2415-18 (2019).

B.  Acting Secretary McAleenan validly prescribed an order of succession.

1.  *An Acting Secretary may amend the line of succession.*

Plaintiffs contend that even if McAleenan had validly succeeded to the office of Acting Secretary, he lacked authority to himself amend the line of succession because he was an Acting Secretary, not a Senate-confirmed Secretary. Pls.'s Br. at 24, 34–36. The Acting Secretary, however, may perform all the functions and duties of the Secretary's office, for "an acting officer is vested with the same authority that could be exercised by the officer for whom he acts." *In re Grand Jury Investigation*, 916 F.3d 1047, 1055 (D.C. Cir. 2019); *see Ryan v. United States*, 136 U.S. 68, 81 (1890) ("It is equally clear that, in the absence of the secretary, the authority with which he was invested could be exercised by the officer who, under the law, became for the time acting secretary of war."). There is no textual basis in the Homeland Security Act for treating the Secretary's authority under § 113(g)(2) differently from the countless other authorities conferred on the Secretary by the Homeland Security Act. If an Acting Secretary may not prescribe an order of succession under § 113(g)(2) because that section refers to "the Secretary," then under plaintiffs' logic, an Acting Secretary may not exercise any of the authority that the Homeland Secretary Act

assigns to "the Secretary." That cannot be what Congress intended when it provided by statute for the Deputy Secretary and the Under Secretary of Management to serve, in that order, as the Acting Secretary. 6 U.S.C. § 113(a)(1)(A), (g)(1).

Plaintiffs' reliance on the text of the Federal Vacancies Reform Act's exclusivity provision, 5 U.S.C. § 3347(a), to limit the operation of § 113(g)(2) likewise fails. Plaintiffs argue that § 3347(a) makes the Federal Vacancies Reform Act's provisions exclusive unless another statute "expressly" authorizes "the head of an Executive department" to designate an order of succession, and that an Acting Secretary therefore may not proceed under § 113(g)(2) because that provision does not "expressly" refer to Acting Secretaries. Pls.' Br. at 34–35. But Congress provided that the designation authority in § 113(g)(2) operates "[n]otwithstanding chapter 33 of title 5" (i.e., the Federal Vacancies Reform Act). Accordingly, the provisions of the Federal Vacancies Reform Act, including the exclusivity rule in § 3347(a), do not limit the authority conferred by § 113(g)(2).

Even if § 3347 limited the scope of § 113(g)(2), Plaintiffs' argument would still fail. Plaintiffs complain that § 113(g)(2) does not "expressly" authorize the Acting Secretary to designate an acting official. But § 113(g)(2) expressly authorizes the "head of an Executive department," the Secretary of Homeland Security, to designate an acting official. That is all that is required for § 113(g)(2) to come within the exception to the Federal Vacancies Reform Act's exclusivity. The question of whether the Acting Secretary can perform all the functions of the Secretary is a separate question and, as explained below, the settled answer is yes. The Federal Vacancies Reform Act does not require statutes that authorize the designation of acting officials to expressly enumerate each of the functions that such acting officials will be authorized to perform.

Plaintiffs argue that § 113(g)(2) should be construed narrowly to minimize the departure from the designation rules of the Federal Vacancies Reform Act. Pls.' Br. at 35. If that had been

Congress's goal, it would not have explicitly provided for § 113(g)(2) to apply "notwithstanding" the Federal Vacancies Reform Act. In any event, Plaintiffs overstate the degree to which § 113(g)(2) departs from the Federal Vacancies Reform Act. Regardless of whether the designation of power is exercised by the Secretary or the Acting Secretary, it is confined to an officer who is serving as the head of the Department. And contrary to plaintiffs' contention, it does not authorize an Acting Secretary to pass off the powers of the Secretary "to lower-level officers whom the President did not appoint." Pls.' Br. at 35 (quotation marks omitted).

Section 113 is titled "Other officers," and it creates specific officer positions within the Department, all of which are to be filled through Presidential appointment. *See* 6 U.S.C. § 113(a)–(e).[7] When § 113(g)(2) then authorizes the Secretary to designate "such other officers of the Department" to serve as Acting Secretary, it is referring to the "other officers" whose offices are created and enumerated in § 113.[8] As a result, only those officers are eligible for designation under § 113(g)(2), and all of them are appointed by the President. Conversely, if plaintiffs were correct that an Acting Secretary could not modify an order of succession that a Secretary had adopted, the President's control over the succession process would be reduced, because an order of succession that he wishes to change could not be altered.

---

[7]     Subsections (a) and (d) provide that the officers specified in those subsections are to be appointed by the President." Subsections (b), (c), and (e) provide for the appointment of certain other officers in accordance with other statutes, each of which in turn provides for Presidential appointment. *See* 5 U.S.C. App. 3 § 3(a) (Inspector General); 14 U.S.C. § 302 (Coast Guard Commandant); 31 U.S.C. § 901(a)(1)(A) (Chief Financial Officer).

[8]     Section 113(g)(2) contrasts in this regard with § 112(b)(1), which permits the Secretary to delegate functions to "*any* officer, employee, or organizational unit of the Department" (emphasis added). To the extent that Secretary Nielsen's revision of Annex A included officers who are not listed in § 113, those officers were eligible only for delegations of authority under § 112(b)(1), not for service as Acting Secretary under § 113(g)(2). McAleenan, as Customs and Border Protection Commissioner, held an office enumerated in § 113 and therefore was eligible to serve as Acting Secretary.

Plaintiffs' suggestion that an Acting Secretary's exercise of the authority in § 113(g)(2) may violate the Appointments Clause of the Constitution (Pls.' Br. at 35–36) likewise fails. At the outset, the "designat[ion]" of an "officer[] of the Department" to serve under §  113(g)(2) is properly regarded not as an "appointment" in the constitutional sense, but instead as an assignment of additional duties to someone who already enjoys an appointment to a constitutional office. *See Weiss v. United States,* 510 U.S. 163, 176 (1994) (Senate-confirmed commissioned officers could serve as military judges without second confirmation because they acquired duties in their official capacity that were germane to those of their underlying office); Designation of Acting Dir. of the Office of Mgmt. & Budget, 27 Op. O.L.C. 121, 122 n.3 (2003) (noting that the question whether an acting officer is an officer or employee "does not arise for anyone who is already an 'Officer of the United States' . . . , as any duties arising [from the acting service] can be regarded as part and parcel of the office to which he was appointed" (citing *Weiss*, 510 U.S. at 174)). Because the exercise of the authority to designate officers of the Department under § 113(g)(2) does not involve an "appointment" in the constitutional sense, the requirements of the Appointments Clause do not come into play, and an officer may serve as Acting Secretary without a separate appointment.

Even if designation under § 113(g)(2) is viewed as an appointment in the constitutional sense, plaintiffs' argument that a designation may not be performed by an Acting Secretary still fails. As the D.C. Circuit recognized in *In re Grand Jury Investigation*, the acting head of an executive Department is the head of the Department for purposes of appointing inferior officers under the Appointments Clause. *See* 916 F.3d at 1054 ("Acting Attorney General Rosenstein was the 'Head of Department' under the Appointments Clause" and therefore could appoint inferior officers). The district court in *Northwest Immigrant Rights Project v. USCIS* attempted to confine this Court's reasoning in *In re Grand Jury Investigation* to the Deputy Attorney General, on the

ground that a separate statute authorizes him to "exercise all the duties" of the office of Attorney General when it is vacant. 496 F. Supp. 3d 31, 66–67 (D.D.C. 2020). But the court of appeals reasoned that "the Deputy Attorney General became the head of the Department by virtue of becoming the Acting Attorney General," 916 F.3d at 1056 (emphasis added), not by virtue of his own office's statutory authority.

The scope of an acting official's authority does not depend on his underlying office. In *United States v. Nixon*, the Supreme Court explained that "Congress ha[d] vested in the Attorney General"—referring to Acting Attorney General Bork, who was the Solicitor General and not the Deputy Attorney General—"the power to appoint subordinate officers," including the "Special Prosecutor" at issue in that case. 418 U.S. 683, 694 (1974). And in *United States v. Pellicci*, the First Circuit held that "a Solicitor General acting as Attorney General has no less authority than a Deputy Attorney General who is an Acting Attorney General." 504 F.2d 1106, 1107 (1st Cir. 1974). The court explained that "[t]here is no basis for concluding that one 'acting' as Attorney General has fewer than all the powers of that office." *Id.* So too here. There is no basis for concluding that Acting Secretary McAleenan had fewer than all of the powers of the Secretary, including the Secretary's power to designate an order of succession pursuant to § 113(g)(2). Accordingly, he validly issued an order of succession on November 8, 2019, and when he resigned, Chad Wolf— the Senate-confirmed Under Secretary for Strategy, Policy, and Plans—lawfully began serving as Acting Secretary under § 113(g)(2).

> 2.      *The 210-day provision of the Federal Vacancies Reform Act does not apply.*

Plaintiffs next argue that Wolf unlawfully assumed office because McAleenan remained Acting Secretary for longer than the Federal Vacancy Reform Act's 210-day limit. Pls.' Br. at 26– 27. Under the April 2019 order of succession, however, McAleenan validly served as Acting

Secretary *pursuant to the Homeland Security Act*, not the Federal Vacancies Reform Act, upon succeeding former Secretary Nielsen. Accordingly, under the plain text of both the Federal Vacancies Reform Act and the Homeland Security Act, his service was not subject to the 210-day time limitation for acting service, 5 U.S.C. § 3346.

The Federal Vacancies Reform Act imposes an initial 210-day time limit on acting service, but only on a "person serving as an acting officer as *described under section 3345*." 5 U.S.C. § 3346(a)(1) (emphasis added).[9] Plaintiffs suggest that the Court apply the 210-day limit not just to acting officers "as described under section 3345" but as to all acting officers serving under or "described by" any statute. That suggestion fails. When it enacted the Federal Vacancies Reform Act, Congress was aware that "[m]ost" office-specific vacancy statutes "do not place time restrictions on the length of an acting officer." S. Rep. No. 105-250, at 17 (1998). Nevertheless, it retained those statutes as an alternative to the Federal Vacancies Reform Act, 5 U.S.C. § 3347(a)(1)(A)-(B). And it limited acting service to 210 days only for those serving under the Federal Vacancies Reform Act. *Id.* § 3346(a)(1). That is, Congress placed no such restriction on acting service under office-specific vacancy statutes. *See id.*; Office of Legal Counsel, *Guidance on Application of Federal Vacancies Reform Act of 1998*, 23 Op. O.L.C. 60, 66-67 & n.3 (Mar. 22, 1999) (time limits "do not apply" to office-specific vacancy statutes).

The Homeland Security Act is one such office-specific vacancy statute. *See* 6 U.S.C. § 113(g)(1)-(2). By § 3346's unambiguous text, the Federal Vacancy Reform Act's 210-day time limit does not apply to designations under the Homeland Security Act. Three other district courts have agreed, and no other Court has reached a contrary finding. *See CASA de Md.*, 486 F. Supp.

---

[9]     That 210-day period can be extended if the President submits a nomination for the office, or there is a change in presidential administrations. *See* 5 U.S.C. §§ 3346(a)(2), (b), 3349a(b).

3d at 953–55 ("[T]he Court cannot find that Wolf's tenure contravenes the [Federal Vacancies Reform Act], despite his serving well past the . . . 210-day time frame."); *see also Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 129–31 (E.D.N.Y. 2020) (holding that the time limitation does not apply to persons serving in an acting capacity under the Homeland Security Act); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 536–38 (C.D. Cal. 2020) (same);  Nor does the Homeland Security Act's text provide any basis to read that time limit into it. And the statute itself contains no express time limit. Not only that, the Secretary's authority to designate an officer under § 113(g)(2) applies "[n]otwithstanding chapter 33 of title 5," which includes the Federal Vacancies Reform Act. The "notwithstanding" phrase makes clear that 6 U.S.C. §113(g)(2)— consistent with 5 U.S.C. § 3347(a)(1)(A)—authorizes the Secretary to designate a line of succession under the Homeland Security Act, distinct from the Federal Vacancies Reform Act. That phrase resolves any conflict between the Federal Vacancies Reform Act's 210-day limit and Congress's choice to include no time limit on acting service under the Homeland Security Act.

Plaintiffs also contend, in a somewhat cursory analysis, that Chad Mizelle, who served as the "Senior Official Performing the Duties of the General Counsel," unlawfully signed the Timeline Repeal Rule and the Broader EAD Rule because he had been effectively serving as Acting General Counsel for more than 210 days. Pls. Br. at 27–28. Acting Secretary Wolf, however, delegated to Mizelle only the ministerial duty of *signing* the rules *on his behalf*, not the authority to approve the rules. 85 Fed. Reg. at 37545; 85 Fed. Reg. at 38626. Accordingly, there is no issue as to whether or not Mizelle was properly serving as General Counsel.

### 3. *Wolf's service did not violate the Appointments Clause.*

Plaintiffs argue that the length of Wolf's service in an acting capacity violated the Appointments Clause of the Constitution. Pls.' Br. at 28–31. It did not. To be sure, the absence of

a statutory time limit for acting service under the Homeland Security Act does not mean that an Acting Secretary can serve indefinitely. The Supreme Court has recognized that an acting designation must be "temporary." *United States v. Eaton*, 169 U.S. 331, 343 (1898). By definition, acting service cannot be permanent. But neither the Appointments Clause nor any other provision of the Constitution sets forth an express limit on acting service. Nor is there any reason to believe that the 210 days set forth in the Federal Vacancies Reform Act has any constitutional valence. Congress has frequently changed the time limit for acting service under the general vacancies statutes. *See, e.g.*, Act of Feb. 13, 1795, 1 Stat. 415 (six months); 5 U.S.C. § 3348(a) (1994) (120 days). Indeed, the first vacancies statute, enacted shortly after the Founding, had no express time limit. *See* Act of May 8, 1792, ch. 37, § 8, 1 Stat. 279, 281; *see also Alden v. Maine*, 527 U.S. 706, 743-44 (1999) ("[E]arly congressional practice . . . provides contemporaneous and weighty evidence of the Constitution's meaning.").

For that matter, the Federal Vacancies Reform Act does not limit acting service to 210 days. The Federal Vacancies Reform Act expressly permits an official acting under its authority to serve beyond the initial 210-day period, during the pendency of a first Senate nomination, for 210 days following that nomination's rejection, return, or even withdrawal by the President, during the pendency of a second nomination, and for a final 210 days following the second nomination's rejection, return, or withdrawal. *See* 5 U.S.C. § 3346(b)(1)–(2). A Presidential transition affords an acting officer even more time. *See id.* § 3349a(b). The length of acting service permitted under the Federal Vacancies Reform Act is consistent with constitutional limitations and longstanding practice. *See Eaton*, 169 U.S. at 343-44.

This case also does not present the spectral example of Executive overreach that the Plaintiffs suggest. At the time of that he signed the challenged rules, Acting Secretary Wolf had

been serving in his role for approximately seven months, and was previously appointed and confirmed as Under Secretary for the Office of Strategy, Policy, and Plans—a position that is "germane" to the Secretary role. *See Weiss v. United States*, 510 U.S. 163, 176 (1994). Wolf's Senate confirmation also came at a time when it was expected that he would assume the Acting Secretary position, and the President subsequently submitted Wolf's nomination to serve as Secretary to the Senate, further diminishing any suggestion of Executive overreach.

## II.    Secretary Mayorkas ratified the Timeline Repeal Rule.

While Defendants maintain that McAleenan and Wolf were lawfully serving in the office of Acting Secretary when they proposed and finalized the Timeline Repeal Rule, Secretary Mayorkas's May 4, 2021 ratification, Dkt. 19-1, cures any alleged defects in the rule arising from McAleenan's and Wolf's service. The D.C. Circuit has held that "a properly appointed official's ratification of an allegedly improperly official's prior action . . . resolves the claim on the merits." *Guedes v. ATF*, 920 F.3d 1, 13 (D.C. Cir. 2019); *see also Intercollegiate Broad. Sys. Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 119 n.3 (D.C. Cir. 2015) (ratification defeats Appointments Clause challenge). Thus, Secretary Mayorkas's ratification of the Timeline Repeal Rule resolves Plaintiffs' challenge to that rule on the merits and in Defendants' favor.

Plaintiffs' attempts to avoid the effects of the Mayorkas ratification come up short. First, they argue that the Court should disregard Secretary Mayorkas's ratification because he did not set forth detailed reasons for his ratification and did not specifically explain why he disagreed with a judicial decision from the District of Maryland concluding that the Timeline Repeal Rule was arbitrary and capricious. Pls.' Br. at 42–43. But there was no requirement for the Secretary to do any such thing. *See Advanced Disposal Servs. E., Inc. v. NLRB*, 820 F.3d 592, 605 (3d Cir. 2016) ("[M]ere lack of detail in . . . express ratification is not sufficient to overcome the presumption of regularity."); *Jooce v. FDA*, Civ A. No. 18-1615, 2020 WL 680143, at *5 (D.D.C. Feb. 11, 2020)

(taking ratification "at face value" where agency officials stated that they made a "detached and considered judgment" based on a "review of the rule"), *aff'd*, 981 F.3d 26 (D.C. Cir. 2020). Moreover, the ratification makes clear that it is the result of the Secretary's independent and considered judgment. He notes that he reviewed and familiarized himself with both the notice of proposed rulemaking and final rule for the Timeline Repeal Rule and, "based on [that] review," affirmed and ratified those actions. Dkt. 19-1. Plaintiffs present no authority that would permit the Court to disregard the effect of this ratification simply because it was not accompanied by detailed reasons or an explicit mention of a judicial decision finding the ratified rule to be arbitrary.

Second, Plaintiffs argue that the Federal Vacancies Reform Act prohibits Secretary Mayorkas from ratifying the rule. Pls.' Br. at 43. Not so. The Federal Vacancies Reform Act, while prohibiting some ratifications, does not prohibit the ratification of the Timeline Repeal Rule. Section 3348(d) provides that "[a]n action taken by any person" not properly acting under the Federal Vacancies Reform Act provisions "in the performance of any function or duty of a vacant office . . . shall have no force or effect," and that such an action "may not be ratified." 5 U.S.C. § 3348(d)(1), (2). The term "function or duty" is defined narrowly, however, as any function or duty of the applicable office that is:

> (A)
>
> (i) established by statute; and
>
> (ii) is required by statute to be performed by the applicable officer (and only that officer); or
>
> (B)
>
> (i)
>
> (I) is established by regulation; and
>
> (II) is required by such regulation to be performed by the applicable officer (and only that officer); and

(ii) includes a function or duty to which clause (i) (I) and (II) applies,
and the applicable regulation is in effect at any time during the 180-
day period preceding the date on which the vacancy occurs.

5 U.S.C. § 3348(a)(2) (emphasis added).

Thus, the definition of "function or duty" for purposes of § 3348(d) does not encompass functions or duties that may be delegated to other officials. Rather, it covers only non-delegable duties. *See Guedes*, 920 F.3d at 12 (recognizing that "function or duty" applies "only" to "nondelegable duties"); *Kajmowicz v. Whitaker*, Civ. A. No. 19-0187, 2021 WL 2200795, at *6 (W.D. Pa. June 1, 2021) ("The natural reading of the Federal Vacancy Reform Act's definition of 'function or duty' is that it only applies to nondelegable functions made exclusive to the specific office by a statute (or by a regulation so long as the applicable regulation was in effect at any time during the 180-day period preceding the vacancy)"); *Nw. Immigrant Rights Project*, 496 F. Supp. 3d at 53 (Secretary of Homeland Security did not perform a function or duty when he took an action that relied on power that wasn't "exclusive[]" to the Secretary); *United States v. Harris County*, Civ. A. No. 16-2331, 2017 WL 7692396, at *3 n.5 (S.D. Tex. Apr. 26, 2017) (authorization of complaint by Principal Deputy Assistant Attorney General was not "function or duty" because "the relevant duties of the [office] are delegable"); *United States v. Tinley Park*, Civ A. No. 16-10848, 2017 U.S. Dist. LEXIS 234517, at *10 (N.D. Ill. July 17, 2017) ("holding that "function or duty . . . does not include a delegable duty that could be performed by another officer"). That is because if a function or duty is lawfully delegable, then necessarily, the statute or regulation creating that function or duty does not "require" it to be performed only by the vacant office.

That conclusion is compelled by the plain text. *Cf. Kajmowicz*, 2021 WL 2200795, at *6 ("begin[ning] with the text of the provision" and reading the definition of function or duty in this way). If a function or duty is lawfully delegable, then necessarily, the statute or regulation creating that function or duty does not "require" it to be performed only by the applicable officer. *See id.*

30

("The FVRA provides that the statute must 'require' the function or duty to be performed 'only' by the applicable officer. That a function or duty is lawfully delegable necessarily means that the source of that function or duty, whether statute or regulation, does not 'require' the action to be performed 'only' by the applicable officer."). Rather, the statute or regulation permits other individuals to perform that function or duty by delegation.

That plain-text reading is further confirmed by the Senate Committee Report accompanying the bill that became the Federal Vacancies Reform Act. *Kajmowicz*, 2021 WL 2200795, at *6. That Report, addressing a definition of "function or duty" materially identical to that now found in § 3348(a)(2), says that "functions or duties of the office" are "defined as the non-delegable functions or duties of the officer." S. Rep. No. 105-250, at 18 (1998). The narrowness of that definition preserves a critical Government interest by ensuring that "[d]elegable functions of the [vacant] office could still be performed by other officers or employees," such that "[a]ll the normal functions of government thus could still be performed." See id.; accord id. at 31 (views of supporting Senators); id. at 36 (views of opposing Senators). Moreover, the Executive Branch has understood the Federal Vacancies Reform Act to operate in this manner since its enactment. See Guidance on Application of Federal Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 72 (1999) (recognizing that Federal Vacancies Reform Act "permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency" to ensure that "the business of the government [w]ould [not] be seriously impaired").

Here, the Immigration and Nationality Act provides the general authority authorizing the Secretary to administer and enforce the immigration and nationality laws and to establish such regulations as he deemed necessary for carrying out such authority. 8 U.S.C. § 1103(a); *see also* 6 U.S.C. § 271(a)(3)(A), (b). The specific authority for issuing the Timeline Repeal Rule is also

found in the Immigration and Nationality Act, which provides that an applicant for asylum is not entitled to employment authorization and may not be granted asylum application-based employment authorization prior to 180 days after filing of the application for asylum, but otherwise authorizes the Secretary to prescribe by regulation the terms and conditions of employment authorization for asylum applicants. 8 U.S.C. § 1158(d)(2).

The responsibility to issue a rule like those at issue here is delegable and thus not a "function or duty" under the Federal Vacancies Reform Act. Indeed, Congress has explicitly authorized the Secretary to delegate his authority except where statutes prohibit it. 6 U.S.C. § 112(b)(1) (general authorization of delegations). Another court in this district has already concluded that rulemaking authority was not a function or duty belonging only to the Secretary. *See Nw. Immigrant Rights Project*, 496 F. Supp. 3d at 31 ("because the Secretary delegated the authority to issue Department rules in 2003, that power is not vested exclusively in the Secretary and is therefore not the type of action that is voided under the FVRA."). Here, no statute prevents the Secretary from delegating the power to issue rules. Congress knows how to specify when certain authorities are to be exercised only by the Secretary of Homeland Security, *see, e.g.*, 31 U.S.C. § 1344(d)(3), and it did not do so here. Moreover, "[w]hen a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C. Cir. 2004). Nothing overcomes that presumption here.

More than simply being delegable, the duty to issue rules like the Timeline Repeal rule has in fact been delegated for almost two decades. In 2003, the Secretary delegated rulemaking authority to the Deputy Secretary. Blackwell Decl. ¶ 2, Ex. 1, Delegation to Deputy Secretary,

DHS Delegation No. 00100.2, ¶ II.G (June 23, 2003). Thus, there can be no doubt that the promulgation of the Proposed and Final Timeline Rule is not a function or duty as defined by § 3348(a)(2) and thus not subject to the Federal Vacancies Reform Act's ratification bar. As such, the ratification of the challenged rules was proper.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment and deny Plaintiffs' motion for summary judgment.

Dated: July 28, 2021
       Washington, D.C.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:  /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*