UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ASYLUMWORKS, *et al.*,

　　　　　*Plaintiffs*,

　　v.

ALEJANDRO MAYORKAS, Secretary,
U.S. Department of Homeland Security, *et al.*,

　　　　　*Defendants*.

Civil Action No. 20-3815 (BAH)

**REPLY IN SUPPORT OF
<u>DEFENDANTS' CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

CHANNING D. PHILLIPS
*Acting United States Attorney*

BRIAN P. HUDAK
*Acting Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

United States Attorney's Office
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
johnny.walker@usdoj.gov

September 3, 2021　　　　　　　*Counsel for Defendants*

## <u>CONTENTS</u>

*Page*

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 1

I.      Secretary Mayorkas ratified the Timeline Repeal Rule. .......................................... 1

II.     Secretary Nielsen validly prescribed an order of succession. ............................... 9

III.    An Acting Secretary may amend the line of succession. ..................................... 15

IV.    The 210-day provision of the Federal Vacancies Reform Act does not apply. ................. 17

V.     Wolf's Service did not violate the Appointments Clause. .................................... 20

CONCLUSION .................................................................................................................. 24

## <u>AUTHORITIES</u>

*Page(s)*

### Cases

*Behring Regional Center LLC v. Wolf, Civ. A.*
  No. 20-9263, 2021 WL 2554051 (N.D. Cal. June 22, 2021) ............................................. 3

*Brown v. Gardner,*
  513 U.S. 115 (1994) ........................................................................................................... 15

*Bullock v. United States,*
  489 F. Supp. 3d 1112 (D. Mont. 2020) ............................................................................. 23

*Casa de Maryland v. Wolf,*
  486 F. Supp. 3d 928 (D. Md. 2020) ...................................................................... 18, 19, 20

*District of Columbia v. Heller,*
  554 U.S. 570 (2008) ..................................................................................................... 10, 11

*Guedes v. ATF,*
  356 F. Supp. 3d 109 (D.D.C. 2019) ................................................................................... 21

*In re Grand Jury Investigation,*
  916 F.3d 1047 (D.C. Cir. 2019) ......................................................................................... 16

*Jooce v. FDA,*
  Civ. A. No. 18-1615, 2020 WL 680143 (D.D.C. Feb. 11, 2020) ........................................ 9

*Kajmowicz v. Whitaker,*
  Civ. A. No. 19-0187, 2021 WL 2200795 (W.D. Pa. June 1, 2021) ................................. 6, 7

*Kingdomware Tech, Inc. v. United States,*
  136 S. Ct. 1969 (2016) ....................................................................................................... 10

*Kisor v. Wilkie,*
  139 S. Ct. 2400–18 (2019) ........................................................................................... 11, 12

*L.M.-M. v. Cuccinelli,*
  442 F. Supp. 3d 1 (D.D.C. 2020) ......................................................................................... 6

*Long Isl. Care at Home, Ltd. v. Coke,*
  551 U.S. 158 (2007) ........................................................................................................... 12

*Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.,*
  199 F.3d 507 (D.C. Cir. 2000) ........................................................................................... 15

*Nw. Immigrant Rights Project v. USCIS,*
  496 F. Supp. 3d 31 (D.D.C. 2020) .......................................................................... 2, 6, 7, 8-9

*SW General, Inc. v. NLRB,*
  796 F.3d 67 (D.C. Cir. 2015) ............................................................................................. 19

*Ryan v. United States*,
   136 U.S. 68 (1890) ................................................................................ 16

*United States v. Detroit Timber & Lumber Co.*,
   200 U.S. 321 (1906) .............................................................................. 13

*United States v. Eaton*,
   169 U.S. 331 (1898) .............................................................................. 21

*United States v. Long*,
   997 F.3d 342 (D.C. Cir. 2021) ............................................................. 18

*United States v. Smith*,
   962 F.3d 755 (4th Cir. 2020) ............................................................... 21

*United States v. Tinley Park,*
   Civ A. No. 16-10848, 2017 U.S. Dist. LEXIS 234517 (N.D. Ill. July 17, 2017) ............................ 6, 7

*United States v. Valencia,*
   No. 17-0882, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018) ...................................... 22, 23

*United States v. Welden*,
   377 U.S. 95 (1964) ................................................................................ 13

*Weiss v. United States*,
   510 U.S. 163 (1994) .............................................................................. 22

*Winston & Strawn, LLP v. McLean,*
   843 F.3d 503 (D.C. Cir. 2016) ............................................................. 6

## Statutes

1 U.S.C. § 1 ............................................................................................ 3-4

5 U.S.C. § 3346 ...................................................................................... 18

5 U.S.C. § 3347 ...................................................................................... 16, 17

5 U.S.C. § 3348 ...................................................................................... 2, 3, 5, 7, 20

6 U.S.C. § 112 ........................................................................................ 2, 14

6 U.S.C. § 113 ........................................................................................ 9, 10, 13, 14, 15, 16, 17, 19

8 U.S.C. § 1158 ...................................................................................... 4

## <u>INTRODUCTION</u>

The Court should grant Defendants' motion for partial summary judgment. Most importantly, putting to the side all the arguments that flow from the designation of Acting Secretaries Kevin McAleenan and Chad Wolf, the Timeline Repeal Rule must be upheld because it was properly ratified by Secretary Alejandro Mayorkas, a lawful exercise of authority that falls squarely within existing doctrine and that Plaintiffs' fail to convincingly undermine.

And the other succession-focused arguments Plaintiffs raise (which are beside the point as to the Timeline Repeal Rule given the ratification) lack merit. First, Secretary Kirstjen Nielsen's order explicitly set forth an "order of succession," and the Court should reject Plaintiffs' attempts to construe it otherwise. Second, the Court should reject Plaintiffs' argument that an Acting Secretary cannot amend the line of succession. The authority of the Secretary passes to the Acting Secretary in the event of a vacancy. There is no statutory or constitutional basis to treat the authority to amend the line of succession differently from all the other duties of the Acting Secretary. Third, Plaintiffs' attempt to conscript the Federal Vacancy Reform Act's 210-day enforcement provision into their service also fails, as the Act makes plain that it applies only where officials serve in an acting capacity under the Act itself, which the officials here indisputably did not. Finally, Plaintiffs have supplied no persuasive authority demonstrating that the challenged rules were approved in contravention of the Appointments Clause. Nor could they, as the Appointments Clause does not require confirmation of acting officials temporarily performing the functions of a principal office, and, further, Wolf himself was a Senate-confirmed official.

## <u>ARGUMENT</u>

**I.    Secretary Mayorkas ratified the Timeline Repeal Rule.**

As in initial matter, the Court need not get into whether Wolf or McAleenan was properly serving as Acting Secretary with respect to the Timeline Repeal Rule because the current Senate-

confirmed Secretary of Homeland Security validly ratified it. Defs.' Br. at 28. The Federal Vacancies Reform Act does not forbid this ratification. The Act states that an action by a person not properly serving as an acting official "in the performance of any function or duty of a vacant office . . . shall have no force or effect" and "may not be ratified." 5 U.S.C. § 3348(d)(1), (2). Critically, the term "function or duty" is specifically and narrowly defined as any function or duty that is "established by statute" and "required by statute to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a). Thus, as multiple courts have held, the term "function or duty" as used in the Federal Vacancies Reform Act includes only nondelegable duties, Def.'s Br. at 30 (collecting cases), a conclusion that is further bolstered by the Act's legislative history, which notes that nonratifiable functions or duties are "defined as the non-delegable functions or duties of the officer," *id.* at 31 (quoting S. Rep. No. 105-250, at 18 (1998)).

The responsibility to issue rules like the Timeline Repeal Rule was a delegable function of the Secretary, 6 U.S.C. § 112(b)(1), and has in fact been delegated continuously since 2003, Blackwell Decl. ¶ 2 & Ex. 1, Delegation to Deputy Secretary, DHS Delegation No. 00100.2 ¶ II.G (June 23, 2003), ECF No. 28-3. Accordingly, it is not subject to the ratification bar in the Federal Vacancies Reform Act. *See* Defs.' Br. at 31–33. Indeed, another Court in this district has already relied on this very same rationale in finding that a rule can be ratified. *See Nw. Immigrant Rts. Project* ("*NWIRP*") *v. USCIS*, 496 F. Supp. 3d 31, 59–60 (D.D.C. 2020).

Plaintiffs accuse Defendants of attempting to "rewrite" the statute with this reading, Pls.' Opp'n & Reply at 38–39, but it is Plaintiffs who do so. Their argument relies on their repeated characterization of the "function or duty" definition as encompassing duties that are "assigned" (a word they use repeatedly) to only one officer. *Id.* But the word "assigned" appears nowhere in the statutory text. *See* 5 U.S.C. § 3348(a)(2). The text, which is clear, specifies that "function or duty"

narrowly means, relevant here, a function or duty of an officer "required by statute to be performed by . . . only that officer." Thus, it is not enough that a duty be initially "assigned" (Plaintiffs' word) to only one officer; the duty must be statutorily "required" to be "performed" (the statute's words) by only that officer. *Id.* § 3348(a)(2)(A)(ii). Plaintiffs are correct that rulemaking functions (like many functions of the Department of Homeland Security) are statutorily assigned to the Secretary in the first instance. Pls.' Opp'n & Reply at 39 (citing 8 U.S.C. §§ 1103(a), 1158(d)(2)). But they do not even attempt to show that rulemaking functions are "required" to be "performed" by only the Secretary. Nor could they. As Defendants have demonstrated above and in their opening brief, rulemaking is among the duties that the Secretary may—and did—delegate to be performed by other officers. Defs.' Br. at 32–33.

Plaintiffs next try to escape the effect of the provision demonstrating that rulemaking functions are delegable by insisting that the Court cannot consider it. Pls.' Opp'n & Reply at 39. Adopting an argument relied upon by the court in *Behring Regional Center LLC v. Wolf*, Civ. A. No. 20-9263, 2021 WL 2554051, at *6 (N.D. Cal. June 22, 2021), appeal docketed, No. 21-16421 (9th Cir. Aug. 30, 2021),[1] Plaintiffs contend that, because the "function or duty" definition uses the singular form of the word "statute" in the phrase "by statute," the Court cannot look to a second statute in evaluating whether a duty may only be "performed" by—or, in Plaintiffs' nontextual formulation, "assigned" to—only the relevant officer. Pls.' Opp'n & Reply at 39. This reading does not comport with the U.S. Code or the rules of grammar. The U.S. Code expressly specifies that "[i]n determining the meaning of any Act of Congress, unless the context indicates otherwise[,] words importing the singular include and apply to several persons, parties, or things." 1 U.S.C.

---

[1]    The magistrate judge's analysis of the relevant statutory provisions in *Behring Regional* is terse and undeveloped, spanning only two paragraphs and less than 300 words. 2021 WL 2554051, at *8. The Court should not give it persuasive weight.

§ 1. The rules of grammar work the same way here. When directly following the preposition "by," the word "statute" is a noncount noun. *See Statute*, Merriam-Webster Learner's Dictionary, https://bit.ly/2WmZXFC (last visited Aug. 25, 2021). Noncount nouns, as the name implies, refer to something not countable, like abstractions or aggregations, not single items. *See Chicago Manual of Style* § 5.8 (16th ed. 2010), https://bit.ly/3mFeY0a (last visited Aug. 25, 2021). It is thus grammatically incorrect for Plaintiffs—and the *Behring Regional* court—to assume that the phrase "by statute" means "by only one statute." To the contrary, the word "statute" in this context is a noncount noun referring to the aggregation of federal statutes. Thus, it matters not that the provision allowing the Secretary to delegate rulemaking functions is in a separate statute from the provisions establishing that rulemaking authority.

Plaintiffs also try to morph the meaning of the phrase "required to be performed" in the larger phrase "required to be performed by that officer (and only that officer)" by asserting that it is "more natural" to read the smaller phrase as referring to a duty that is "mandatory," not a restriction on who performs the duty. Pls.' Opp'n & Reply at 39–40. Had Congress intended Plaintiffs' meaning, however, it could easily have arranged the provision in a way to clearly convey that meaning, such as by defining the term to include a function or duty that "the officer (and only that officer) is required by statute to perform." But Congress instead opted to place the preposition "by that officer (and only that officer)" after the word "perform," thereby making the full infinitive phrase "to be performed by that officer (and only that officer)" the subject of what is "required." Given this syntax, it is Defendants' reading of the provision that is "more natural."[2]

---

[2]     In any event, Plaintiffs' reading of the provision as applying only to "mandatory" duties would not help them because the work authorization rules at issue in this case are not mandatory. *See* 8 U.S.C. § 1158(d)(2) ("An applicant for asylum is not entitled to employment authorization, but such authorization *may* be provided under regulation[.]" (emphasis added)).

4

Defendants' reading is also better supported by the function and purpose of the Federal Vacancies Reform Act. It would be arbitrary—if not antithetical to legislative purpose—to nullify and prohibit the ratification of actions by improperly acting officials only where those officials are performing actions that are specifically made mandatory by Congress, while permitting improperly acting officials to perform functions committed solely to the discretion of the vacant office. Indeed, the enforcement provision of the Federal Vacancies Reform Act would be dramatically undermined were the Court to accept Plaintiffs' invitation and to construe it in a way that permits an improperly acting official to exercise the full range of functions committed to the vacant office's sole discretion, while nullifying and forbidding ratification only of those specific actions that Congress has mandated the officer holder to perform.

Plaintiffs argue that it is Defendants' reading does not conform to the purposes of the Federal Vacancies Reform Act because it would mean that the nullification and nonratification provision would be triggered only "in the exceedingly rare circumstance that Congress expressly makes a duty non-delegable in a statute." Pls.' Opp'n & Reply at 41. But this argument is overblown because it refers only to the part of the "function or duty" definition that concerns *statutory* functions and duties. But the definition also includes functions and duties that are "established by *regulation*." 5 U.S.C. § 3348(a)(2)(B)(i)(I) (emphasis added). Indeed, Congress recognized that "many executive agency positions filled with the advice and consent of the Senate lack any meaningful statutory duties." S. Rep. 105-250 at 18. That is why Congress also included regulatory duties required to be performed by only the relevant officer as part of the definition and prohibited agencies from reassigning those duties during (or in anticipation of) a vacancy. *Id.*; *see also* 5 U.S.C. § 3348(a)(2)(B)(ii).

As shown, Defs.' Br. at 30, Plaintiffs' position also buckles under the weight of persuasive case law, and Plaintiffs' attempt to undermine those authorities falls short. Plaintiffs attempt to turn *NWIRP*—which firmly supports Defendants—to their own advantage by noting that Judge Moss, who wrote the opinion in that case, also wrote the opinion in *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1 (D.D.C. 2020), and referred back to that prior opinion's holding that the definition of "function or duty" includes delegable functions or duties "that were not delegated during the 180-day window preceding the vacancy." Pls.' Opp'n & Reply at 42 (quoting *NWIRP*, 796 F. Supp. 3d at 59). The problem for Plaintiffs, however, is that the Court in *NWIRP* went on to conclude that the Secretary's rulemaking authority—the very authority at issue in this case—had in fact been previously delegated and, as a result, rulemaking functions did not fall under the definition of "functions or duties" and were therefore not voided. *See NWIRP*, 496 F. Supp. 3d at 59 ("[B]ecause the Secretary delegated the authority to issue Department rules in 2003, that power is not vested exclusively in the Secretary and is therefore not the type of action that is voided under the FVRA.").[3]

Plaintiffs also summarily reject *Kajmowicz v. Whitaker*, Civ. A. No. 19-0187, 2021 WL 2200795 (W.D. Pa. June 1, 2021), and *United States v. Tinley Park*, Civ A. No. 16-10848, 2017 U.S. Dist. LEXIS 234517 (N.D. Ill. July 17, 2017), asserting that neither case "grapples with the

---

[3]     Plaintiffs attempt to distinguish *NWIRP* by noting that it arose in the context of a motion for a preliminary injunction where the Plaintiffs bore the burden and therefore could not benefit from the 2003 Delegation's purported "ambiguities." Pls.' Opp'n & Reply at 43 n.20. But Plaintiffs' do in fact bear the burden if they wish to prevail on their motion for summary judgment. *See Winston & Strawn, LLP v. McLean*, 843 F.3d 503, 505 (D.C. Cir. 2016). Further, as explained further later in this brief, the court in *NWRIP* also concluded that it had "no reason to question" the 2003 Delegation as a "preexisting (and, the Court can only assume, still existing) delegation." *NWIRP*, 496 F. Supp. 3d at 39. Further still, Defendants in this case have resolved any ambiguity as to whether the 2003 Delegation is still in effect by proffering sworn testimony affirming that it is. *See* Blackwell Decl. ¶ 2 (attesting that the delegation "has remained in continuous effect since June 23, 2003 and has not been rescinded or revoked"), ECF No. 28-3.

statutory purpose of the FVRA or convincingly responds to Plaintiffs' textual argument." Pls.' Opp'n & Reply at 42. But the very statutory construction question before the Court here was heavily litigated in *Kajmowicz*. Indeed, the court there noted that the "central disagreement that the parties debate in their briefs is whether the FVRA's definition of 'function or duty' applies only to nondelegable duties." 2021 WL 2200795, at *6. After a thorough analysis of the statutory text and legislative history, the court adopted the construction that Defendants advance here. *Id.* at *5–8. Similarly, the court in *Tinley Park* examined the text and legislative history and concluded that the statute "clearly limits" the definition of "function or duty" to "non-delegable" functions or duties. 2017 U.S. Dist. LEXIS 234517, at *10.

Notably, even if the Court were to adopt the reasoning of *L.M.-M.*, which Plaintiffs hold up as a model of "careful analysis," Pls.' Opp'n & Reply at 42, Defendants would still prevail. As Plaintiffs acknowledge, the *L.M.-M.* court held that a function or duty does not fall under the statutory definition of that term if it is delegated at least 180 days prior to the vacancy in the office. *Id.*; *see also* 5 U.S.C. § 3348(a)(2)(B)(ii). But, as Defendants have shown and as the *NWIRP* court concluded, the Secretary of Homeland Security delegated rulemaking authority in 2003. 496 F. Supp. 3d at 59. As a result, rulemaking functions and duties are neither voided nor unratifiable for having been performed by an acting official serving in violation of the Federal Vacancies Reform Act.

Plaintiffs make several attempts to invalidate the effect of the 2003 rulemaking delegation, but neither is persuasive. First, they argue that the 2003 delegation did not do what the *NWIRP* court concluded that it did: delegate rulemaking functions to the Deputy Secretary. Plaintiffs first insist that the 2003 Delegation did not include the authority to "establish the substantive content" of rules, only to sign and approve them. Pls.' Opp'n & Reply at 43. But Plaintiffs do not explain

what they believe "establishing the substantive content" of a rule to entail or how it is any different from signing and approving a rule. Even more critically, Plaintiffs make no attempt to show that McAleenan or Wolf, as acting heads of the Department of Homeland Security, did anything other than "approve" the rules at issue here. Indeed, Plaintiffs themselves have described Wolf as having "approved" the final rules. *See* Compl. ¶ 296; Pls.' Br. at 43. Thus, the actions that McAleenan and Wolf took here are precisely what was delegated in 2003 and, under the reasoning of *L.M.-M.*, this removes those actions from the definition of "function or duty," thereby preventing their nullification and permitting their ratification.

Next, Plaintiffs state that the 2003 Delegation conferred rulemaking authority "only when '[a]cting for the Secretary.'" Pls.' Opp'n & Reply at 43 (quoting Dkt. 29-2 at 3). That is not what the delegation says. It says that it "hereby delegate[s]," with immediate effect, several responsibilities, including "[a]cting for the Secretary to sign, approve, or disapprove any propose or final rule, regulation or related document." Dkt. 29-2 at 3. There is no condition that this delegation will take effect only when the Deputy Secretary is serving in a broader acting capacity for the Secretary. Indeed, in such circumstances, an additional delegation of authority would be superfluous because the Deputy Secretary would already be authorized to exercise the functions and duties of the Secretary, including rulemaking, by virtue of the acting role.

Plaintiffs, with no evidence, ask the Court to believe their naked, unsupported assertion that a long-standing organizational regulation within the Department is simply no longer operative. Pls.' Opp'n & Reply at 43–44. They are doing this in spite a of declaration, which is entitled to the presumption of regularity in government operations, confirming this document continues to remain in effect. Dkt. 29-2 ¶ 2; *see also NWIRP*, 496 F. Supp. 3d at 59–60 ("the Court has no reason to question Defendants' good faith in proffering the 2003 document as a preexisting (and, the Court

can only assume, still existing) delegation"). There is absolutely no reason to doubt Defendants' declaration, and the Court should reject this argument completely.

Plaintiffs next contend that the Court should "set aside" the Mayorkas ratification because he purportedly did not provide sufficient reasons as to "why he ratified the Rule." Pls.' Opp'n & Reply at 44–45. Plaintiffs, however, ignore the "highly deferential standard of review that the Circuit established for agency ratifications." *See Jooce v. FDA*, Civ. A. No. 18-1615, 2020 WL 680143, at *5 (D.D.C. Feb. 11, 2020). What is required is that "a properly appointed official has the power to conduct an independent evaluation of the merits and does so." *Id.* (quoting *Intercollegiate Broad. Sys. v. Copyright Royalty Bd.*, 796 F.3d 111, 117 (D.C. Cir. 2015)). Secretary Mayorkas has shown that he did exactly that. His ratification states that he "familiarized [him]self with" the *Federal Register* publications for both the proposed and final Timeline Repeal Rule and, "based on [that] review," affirmed and ratified them. Dkt. 19-1. In any event, it is not the agency's burden to show that the ratification was based on an independent evaluation; instead, it is "the Plaintiffs' burden to present evidence—beyond the mere fact of the ratification—'to suggest that the [agency] failed to conduct an independent evaluation of the merits or to make a detached and considered judgment.'" *Jooce*, 2020 WL 680143, at *4 (quoting *Wilkes-Barre Hosp. Co. v. NLRB*, 857 F.3d 364, 371 (D.C. Cir. 2017)). Plaintiffs have presented no such evidence here.

## II.   Secretary Nielsen validly prescribed an order of succession.

On April 9, 2019, Secretary Nielsen invoked her authority under 6 U.S.C. § 113(g)(2), which authorized her to "designate such other officers of the Department in further order of succession to serve as Acting Secretary," and issued an order "designat[ing] the *order of succession* for the Secretary of Homeland Security," Dkt. 25-4 at 102 (emphasis added). This order included a memorandum drafted by the General Counsel of the Department—which Secretary Nielsen

endorsed—noting that the Secretary had "expressed [her] desire to designate certain officers of the [Department] in order of succession to serve as Acting Secretary" and advising the Secretary that approving the order would allow her to "designate [her] desired order of succession." *Id*. To give full effect to the clear language of the order, the Court must construe it as doing what it says: designating an order of succession.

Plaintiffs, however, argue that the Court should discount the part of the order stating that it "designate[s] an order of succession" as an inoperative "prefatory clause." Pls.' Opp'n & Reply at 12–13. That language, however, is not prefatory, and there is no rule of interpretation that provides for disregarding the documents signed by Secretary Nielsen. It does not simply "state the reason or occasion" for the order or "explain in general terms the policy" of the order. *See* 1A *Sutherland Statutory Construction* § 20:3 (7th ed.) (describing the qualities of a preamble). And, unlike the prefatory material addressed in the cases relied upon by Plaintiffs, it does not "announce[] an objective," *Kingdomware Tech, Inc. v. United States*, 136 S. Ct. 1969, 1978 (2016), or "announce[] a purpose," *District of Columbia v. Heller*, 554 U.S. 570, 577 (2008). To the contrary, it dictates the order's central operative effect, which is to "hereby designate the order of succession" for the office of Secretary. Dkt. 25-4 at 103.

As a backup, Plaintiffs insist that phrase "hereby designate the order of succession" could be read as consistent with an intent to amend not the order of succession, but only the emergency delegation line. Pls.' Opp'n & Reply at 14. But this reading ignores the obvious meaning of the phrase "order of succession" as used in the Department of Homeland Security's delegation documents. Delegation Order 00106 makes clear that the term "order of succession" refers to the designation of an acting official in the event of a vacancy, Dkt. 25-4 pt. II.A, C, whereas the word "delegate" is used to refer to the temporary assignment of someone to perform the functions of the

Secretary during a disaster or catastrophic emergency, *id.* pt. II.B, D. Indeed, elsewhere in their opposition, Plaintiffs contradict themselves by acknowledging this plain meaning of the word "succession" in the agency's delegation documents. Pls.' Opp'n & Reply at 11. Thus, there can be no doubt that when the Secretary said that she was designating an "order of succession," she was designating a line of individuals to serve as Acting Secretary upon the Secretary's death, resignation, or inability to perform the functions of the office.

Contemporaneous official actions by the Department of Homeland Security—and, in particular, by Secretary Nielsen—demonstrate that the Secretary and the agency officially interpreted the order as designating a line of succession whereby McAleenan became Acting Secretary upon Secretary Nielsen's resignation, and the Court should defer to that interpretation. Defs.' Br. at 20 (citing *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415–18 (2019)). Indeed, not doing so risks throwing agencies into chaos based on language nuances discovered months or years after the fact.  Plaintiffs' attempts to prevent such deference fail. First, they argue that the "news article" presented with Defendants' brief is not a position by the agency. Pls.' Opp'n & Reply at 16. But it is clearly not the news article itself that supports Defendants, but the action that the news article describes—the fact that Secretary Nielsen swore in McAleenan as Acting Secretary the day after she executed the designation documents. Defs.' Br. at 20. And Plaintiffs do not even address the fact that DHS reported to Congress that McAleenan had been designated as Acting Secretary in official paperwork.  Dkt. 25-4 at 140. Thus, even were Plaintiffs successful at picking off the documents addressed in their brief, there are other sources for the agency's position to which deference should be afforded.

Second, Plaintiffs attempt to dismiss the memorandum accompanying Secretary Nielsen's order, Dkt. 25-4 at 102, as an "internal document," Pls.' Opp'n & Reply at 16. The document is in

11

the record and obviously not internal at this point. And the fact that an interpretation appears on an internal document does not mean that it cannot convey a position that must be given deference, and it is this document that Secretary Nielsen signed to effectuate her intent. *See Long Isl. Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171 (2007) (affording *Auer* deference to an interpretation set forth on a memorandum "issued only to internal Department personnel"). Plaintiffs cite *Kisor* for the proposition that a document, to be entitled to deference, must be a "vehicle[] understood to make authoritative policy." Pls.' Opp'n & Reply at 16 (citing 139 S. Ct. at 2416). That quoted language, however, was specifically discussing limitations on affording deference to memoranda drafted by agency staff that were "never approved by the agency head." *Kisor*, 139 S. Ct. at 2416. The memorandum here, by contrast, was drafted by the General Counsel and signed by the Secretary. It therefore plainly was approved by the agency head and conveys the agency's official position.

*Third*, Plaintiffs contend that deference is not warranted because this is not an area that engages in the Department's expertise. Pls.' Opp'n & Reply at 16–17. To the contrary, the issue here deals with the Department's own internal orders governing succession and delegation of its own officials. The agency certainly has "substantive expertise" about these internal matters. *Kisor*, 139 S. Ct. at 2417.

Plaintiffs attempt to shift the focus from Secretary Nielsen's April 2019 to Delegation Order 00106. They contend that the April 2019 order of succession did not sufficiently amend Delegation Order 00106 so as to change the order of succession as set forth in that document. Pls.' Opp'n & Reply at 5–8. As Defendants have explained, however, the April 2019 order—which expressly establishes a new "order of succession"—must be given primary legal effect. Delegation Order 00106 was signed by Secretary Johnson in 2016 (before Congress gave the Secretary the

authority to set an order of succession) and, since that time, has served only as "an administrative document that is periodically updated to consolidate and maintain in a single document the orders of succession for many senior positions [at the Department]." Dkt. 29-1 ¶ 4. The Court should therefore resolve any conflicts between the administratively updated Delegation Order 00106 and Secretary Nielsen's April 2019 order in favor of the latter.

Plaintiffs contend that the Court must strictly enforce the updated version of Delegation Order 00106, despite the language of the April 2019 order, because it is the only repository of succession orders and is updated every time the Secretary amends the lines of succession. Pls.' Opp'n & Reply at 10. Neither of those observations, however, require that the updated Delegation Order 00106 override the Secretary Nielsen's April 2019 order. The latter was the most recent official pronouncement by the Secretary of Homeland Security and its text should be given legal effect. Indeed, Congress granted the Secretary the authority to change the order of succession, 6 U.S.C. § 113(g)(2), and Plaintiffs' argument would permit a scrivener documenting the Secretary's order to override that authority. The Court should reject such an approach.[4]

When it was issued in 2016, Delegation Order 00106 did not have the legal effect of establishing an order of succession because it was issued before the Homeland Security Act had been amended to imbue the Secretary with that authority. Defs.' Br. at 18. Instead, the Order merely observed the then-true fact that the order of succession would be "governed by" Executive Order 13753. *Id.* at 18 n.5. The order of succession set by the Executive Order was superseded when

---

[4]     Analogously, Plaintiffs' approach amounts to relying on the content of a syllabus over the text of a Supreme Court decision or language in the United States Code over the contradictory text of an act of Congress, neither of which is permissible. *See United States v. Detroit Timber & Lumber Co.*, 200 U.S. 321, 337 (1906) ("the headnote is not the work of the court, nor does it state its decision"); *United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) ("the Code cannot prevail over the Statutes at Large when the two are inconsistent") (quoting *Stephan v. United States*, 319 U.S. 423, 426 (1943)).

Secretary Nielsen used her new authority under the Homeland Security Act to set the order of succession and directed that Annex A thenceforth govern the "order of succession." Dkt. 25-1 at 103. Plaintiffs respond to this by again simply noting that Designation Order 00106 served as a repository for changes to the order of succession and was updated whenever such changes were made. Pls.' Opp'n & Reply at 8–9. But Plaintiffs do not and cannot dispute the central premise of Defendants' point: at the time that Secretary Johnson signed the delegation, Part II.A did not have the legal effect of designating an order of succession because Secretary Johnson lacked such authority.

Plaintiffs also argue that the Court should construe Secretary Nielsen's April 2019 order not to do what it explicitly says—"designate the order of succession," Dkt. 25-4 at 103—because the Secretary did not also amend the title of Annex A, which was "Order for Delegation of Authority by the Secretary of the Department of Homeland Security." Pls.'Opp'n & Reply at 10–12. As Defendants have explained, however, it makes sense for Annex A to have retained that title because, following Secretary Nielsen's order, it served the dual purpose of establishing both the order of succession in the event of a vacancy and the order for delegation of authority in the event of an emergency or catastrophic disaster, using the Secretary's separate statutory authority to set a succession order, 6 U.S.C. § 113(g)(2), and delegation order, 6 U.S.C. § 112(b)(1). Defs.' Br. at 19. Plaintiffs accurately observe that Delegation Order 00106 uses the word "succession" when designating individuals to serve as Acting Secretary in the event of a vacancy and "delegation" when referring to a temporary assignment of duties during an emergency. Pls.' Opp'n & Reply at 11. But the mere continued use of the word "delegation" in the title of Annex A cannot possibly override the Secretary's clear (and repeated) statement that Annex A would establish the "order of succession," Dkt. 25-4 at 103, which phrase Plaintiffs admit clearly indicates the order of

individuals to serve as Acting Secretary in the event of a vacancy, Pls.' Opp'n & Reply at 11. *See Nat'l Ctr. for Mfg. Scis. v. Dep't of Def.*, 199 F.3d 507, 511 (D.C. Cir. 2000) ("The plain meaning of a statute cannot be limited by its title.").

### III.   An Acting Secretary may amend the line of succession.

Plaintiffs contend that 6 U.S.C. § 113(g)(2)—by authorizing the "Secretary" to establish a line of succession—implicitly prohibits an Acting Secretary from doing so. Pls.' Opp'n & Reply at 19–24. This reading is untenable given that, in all instances, the Homeland Security Act—like other statutes—assigns duties to the "Secretary" without also explicitly specifying that those duties may be performed by an "Acting Secretary" in the event of a vacancy. Defs.' Br. at 20–21. The Court should construe the term "Secretary" in § 113(g)(2) to have the same meaning as it does in other portions of the statute. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (recognizing a "presumption that a given term is used to mean the same thing throughout a statute").

Plaintiffs insist that this presumption falls away when there are indications that Congress intended the same term to have a different meaning in different parts of a statute. Pls.' Opp'n & Reply at 20. But there are no such indications here. To manufacture one, Plaintiffs characterize § 113(g)(2) as "distinguish[ing]" between the Secretary and the Acting Secretary. *Id.* But it does not. It simply uses the term "Acting Secretary" two times to accurately and specifically refer to the role of someone succeeding to the office in the event of a vacancy. *See* 6 U.S.C. § 113(g)(2) (noting that the Under Secretary for Management "shall serve as the Acting Secretary" and permitting the Secretary to designate a "further order of succession to serve as Acting Secretary"). Nowhere does the provision—or any other provision—"distinguish" the Secretary from the Acting Secretary in terms of the scope of their authority or the functions they may perform. There is therefore no indication that Congress intended the word "Secretary" to have any other meaning than it does elsewhere in the statute.

15

Plaintiffs also attempt to distinguish the case law cited by Defendants on the purported grounds that "they considered statutes expressly providing that [the relevant officials] could exercise the powers of the Attorney General in the event of an absence, disability, or vacancy." Pls.' Opp'n & Reply at 21. As Defendants have explained, however, the D.C. Circuit in *In re Grand Jury Investigation* reasoned that it was the Deputy Attorney General's role as an acting official— not the authority assigned to the  Deputy Attorney General by statute—that caused him to become the "head of the department." Defs. Br. at 24 (citing 916 F.3d 1047, 1056 (D.C. Cir. 2019)). Further, Plaintiffs cannot possibly contend that the Homeland Security Act does not imbue Acting Secretaries with the powers and duties of the Secretary. *Ryan v. United States*, 136 U.S. 68, 81 (1890) ("It is equally clear that, in the absence of the secretary, the authority with which he was invested could be exercised by the officer who, under the law, became for the time acting secretary of war.").

Plaintiffs next contend that their interpretation "gives effect" to the Federal Vacancies Reform Act's exclusivity provision, which states that the Act is the exclusive means of designating an acting official unless a statutory provision "expressly authorizes the President, a court, or the head of an Executive department, to designate an office or employee to perform the function and duties of a specific office temporarily in an acting capacity," 5 U.S.C. § 3347(a)(1). Pls.' Opp'n & Reply at 21–22. As Defendants have pointed out, however, § 113(g) indisputably provides exactly such an express authorization. Defs.' Br. at 21. It states that, "notwithstanding" the Federal Vacancies Reform Act, the Secretary (the head of the Department) "may designate such other officer of the Department in further order of succession to serve as Acting Secretary." 6 U.S.C. § 113(g)(2). This fully satisfies the function of the Federal Vacancies Reform Act's exclusivity provision by establishing that the Act is not, in fact, exclusive in this circumstance. Whether the

Acting Secretary can exercise the authority granted in § 113(g)(2) is an entirely separate question that is answered in Defendants' favor through the analysis set forth above.

Plaintiffs are also incorrect that allowing an Acting Secretary to amend the line of succession would frustrate the purpose of the Federal Vacancies Reform Act. Pls.' Opp'n & Reply at 22–23. To the contrary, the Act specifically provides that "the head of an Executive department"—which would include an Acting Secretary—may designate acting officials where there is an express statutory authorization. 5 U.S.C. § 3347(a)(1). Thus, permitting an Acting Secretary to amend the order of succession accords with the statute's plain text.

Nor does the Appointments Clause compel the Court to adopt Plaintiffs' interpretation. Plaintiffs contend that Defendants' reading could lead to situations—not present here, *see* Pls.' Opp'n & Reply at 24 n.11—where an inferior officer is permitted to appoint another inferior officer to be Acting Secretary, *id.* at 23. Defendants have shown, however, that this concern is unfounded because the only other officers who may serve as Acting Secretary are the presidentially appointed "officers" listed in § 113. Defs.' Br. at 22. Plaintiffs insist that the term "other officers" means only officers other than the Deputy Secretary and Under Secretary for Management and that the term could be read to include nonofficers who are serving for an officer in an acting capacity. Pls.' Opp'n & Reply at 23. But the context shows otherwise. Section 113(g)(2)'s reference to "other officers" is contained in a provision that is itself titled "other officers" and that specifically lists other "officers" of the Department, all of whom must be presidentially appointed. 6 U.S.C. § 113.

## IV.     The 210-day provision of the Federal Vacancies Reform Act does not apply.

Plaintiffs next contend that the rules are unlawful because McAleenan amended the line of succession and Wolf approved the rules after those officials had been serving as Acting Secretary for more than 210 days, making their actions invalid under the Federal Vacancies Reform Act. Pls.' Opp'n & Reply at 25–30. Defendants have demonstrated why this aspect of the Federal Vacancies

Reform Act does not apply—because the 210-day limit applies only to a "person serving as an acting officer as described under section 3345," 5 U.S.C. § 3346(a)(1), which McAleenan and Wolf were not. Defs.' Br. at 24–26. Plaintiffs would have the Court read § 3345 as describing essentially *any* acting officer. Pls.' Opp'n & Reply at 28. But § 3345 shows that what it "describe[s]" is a specific means for temporarily authorizing an officer to act in the role of a vacant office. It is not disputed that McAleenan and Wolf did not serve as Acting Secretary under the means described in § 3345. Consequently, they were not subject to the 210-day limitation.

Plaintiffs also argue that this construction would lead to "absurd internal inconsistencies" because it would apply the 210-day limit to the first assistant and not to other officers designated by § 113(g)(2). As another court has noted, however, there are eminently reasonable explanations as to why Congress would desire such a result. *See Casa de Maryland v. Wolf*, 486 F. Supp. 3d 928, 957 (D. Md. 2020) ("Where the agency has been stripped of such permanent positions (perhaps because the President has called for their resignations and then chosen not to submit nominations), Congress logically would want to instill continuity in the functioning of the agency. Relaxation of the timing provisions is certainly one way to do so."). At the very least, such a result is not nearly so absurd as to warrant departing from the statutory text, which makes clear that the 210-day limit applies only to officers serving under the means described in § 3345. *See United States v. Long*, 997 F.3d 342, 356 (D.C. Cir. 2021) ("[C]ourts may not use the absurdity canon to set aside plain text unless 'the absurdity and injustice of applying the provision to the case[] would be so monstrous that all mankind would, without hesitation, unite in rejecting the application.'" (quoting *Pirie v. Chicago Title & Trust Co.*, 182 U.S. 438, 452 (1901)).

Plaintiffs also attempt to discount the legislative history relied upon by Defendants, which shows that Congress was aware that "[m]ost" office-specific vacancy statutes "do not place time

restrictions on the length of an acting officer." S. Rep. No. 105-250, at 17 (1998). Plaintiffs first argue that the Court should reject the Senate Report as applicable to an earlier version of the Federal Vacancies Reform Act, as the D.C. Circuit did in *SW General, Inc. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015), aff'd, 137 S. Ct. 929 (2017). Pls.' Opp'n & Reply at 29. But the reason the D.C. Circuit reached that conclusion in *SW General* was because the particular provision at issue had been materially revised between the version discussed in the conference report and the final version. 796 F.3d at 77–78. Plaintiffs identify no specific material difference here that would render the quoted portion of the conference report inapplicable. Plaintiffs also contend that the conference report relates only to the Federal Vacancies Reform Act and not the Homeland Security Act. Pls.' Opp'n & Reply at 29–30. But the question at hand is precisely whether the Federal Vacancies Reform Act imposes the 210-day requirement on officials designated under means other than those set forth in § 3345. The conference report is highly relevant to that inquiry. *See Casa de Maryland*, 486 F. Supp. 3d at 956 (relying on the conference report in this context).

Plaintiffs also argue that, in the absence of a 210-day limit, § 113(g) may be read as permitting acting service with no temporal limitations at all. Plaintiffs argue that this clashes both with § 3347, which contemplates that any alternative means of designating acting officers would provide for only "temporary" service, and the Appointments Clause, which forbids permanent service in an acting capacity. Pls.' Opp'n & Reply at 25–27. But any conflict between § 3347 and § 113(g)(2) must be resolved in favor of the latter, which governs "[n]otwithstanding chapter 33 of title 5." 6 U.S.C. § 113(g)(2). As for the Appointments Clause, it does not compel application of the 210-day limitation here because, as discussed more in Part IV below, (1) § 3346 unambiguously limits the 210-day provision to officers serving under § 3345, (2) the legislative history shows that Congress did not intend to displace agency specific succession statutes even if

they did not have a time limitation, and (3) there is no constitutional concern because Congress has purposefully ceded the Senate's confirmation power to ensure continuity of operations at the helm of the Department of Homeland Security. *See Casa de Maryland*, 486 F. Supp. 3d at 956.

Finally, Plaintiffs argue that the rules are invalid because they were electronically signed by Chad Mizelle, who was allegedly serving in contravention of the Federal Vacancies Reform Act's 210-day limitation. Pls.' Opp'n & Reply at 30–31. Plaintiffs, however, make no effort to explain why Mizelle's electronic signature falls under the definition of a "function or duty" subject to the enforcement provision, particularly since this was a purely ministerial duty. *See* 5 U.S.C. § 3348(d)(1). Further, the authority to electronically sign the rules and publish them in the *Federal Register* was specifically delegated by Wolf to Mizelle *by name*, not to the Office of the General Counsel. *See* 85 Fed. Reg. at 37,545 ("delegating the authority to electronically sign this document to Chad R. Mizelle"); 85 Fed. Reg. at 38,626 (same). Thus, Mizelle properly possessed the authority to ministerially sign the rules on behalf of the Secretary, whether he was acting in his capacity as General Counsel or in his regular capacity.

## V.     Wolf's Service did not violate the Appointments Clause.

Plaintiffs contend that, at the time he approved the challenged rules, Wolf was serving in the role of Acting Secretary in violation of the Appointments Clause because he had occupied that office longer than the 210 days set forth in the Federal Vacancies Reform Act. Pls.' Opp'n & Reply at 31–38. As Defendants have explained, however, the Appointments Clause imposes no express time limit on acting service. Defs.' Br. at 27. And there is no basis to enshrine the 210-limit in the Federal Vacancies Reform Act's enforcement provision as a constitutional requirement. Indeed, the lack of any constitutional significance in the 210-day limit is demonstrated by the fact that Congress has repeatedly changed it over time and that the Federal Vacancies Reform Act itself permits acting service longer than 210 days in certain circumstances, which can allow the time

limit to more than double if a nomination is submitted. *Id.* Moreover, as shown above, in promulgating the 210-day enforcement provision, Congress was aware of agency-specific succession statutes with no temporal limitations on acting service and nevertheless allowed those statutes to govern instead of the Federal Vacancies Reform Act.

Defendants, supported by controlling Supreme Court precedent, showed that that there is no Appointments Clause violation. Defs.' Br. at 26–28. Although the Secretary of Homeland Security is a principal officer and must be Senate-confirmed, that does not mean that an individual who temporarily performs the functions of a principal office in an acting capacity must also be appointed as a principal officer. The Supreme Court and lower courts have repeatedly held that a person performing the duties of a vacant principal office is not a principal officer. *See United States v. Eaton*, 169 U.S. 331, 343 (1898). Indeed, courts have acknowledged that "the Supreme Court has repeatedly embraced the government's view that it is the temporary nature of acting duties that permits an individual to perform them without becoming a principal officer under the Appointments Clause." *Guedes v. ATF*, 356 F. Supp. 3d 109, 146 (D.D.C. 2019); see also id. ("[T]he Supreme Court has held and subsequently reaffirmed that an official designated to perform the duties of a principal office temporarily, on an acting basis, need not undergo Senate confirmation."); *United States v. Smith*, 962 F.3d 755, 764 (4th Cir. 2020) ("Someone who temporarily performs the duties of a principal officer . . . may occupy that post without having been confirmed with the advice and consent of the Senate."). And Wolf's prior confirmation as Under Secretary satisfies any confirmation requirement because the duties of the Secretary are germane to his position as Under Secretary. The Supreme Court has held that officers confirmed by the Senate for one office may serve in a second office that requires Senate confirmation— without a second confirmation—so long as the role of the second office is "germane" to the first

office. *Weiss v. United States*, 510 U.S. 163, 176 (1994). Here, the duties of the Secretary are "germane" to Wolf's position as Under Secretary. Further, Wolf's Senate confirmation came at a time when it was well understood that he would imminently become Acting Secretary. Defs.' Br. at 27–28.[5] Plaintiffs make a cursory attempt to distinguish *Weiss* simply by noting that it involved military officers whose additional duties were linked to their preexisting roles, but Plaintiffs do not even attempt to show that Wolf's role as Under Secretary was not similarly germane to the role of Secretary. Pls.' Opp'n & Reply at 36.[6]

For their part, Plaintiffs cite two out-of-circuit district court cases, but neither of them gives weight to Plaintiffs' unconvincing Appointments Clause argument. First, Plaintiffs present *United States v. Valencia*, No. 17-0882, 2018 WL 6182755 (W.D. Tex. Nov. 27, 2018), as purportedly holding that there is a constitutional violation where the president does not submit a nomination within 210 days. Pls.' Opp'n & Reply at 32. *Valencia* held no such thing. It held only that there was *no* constitutional violation where an acting official had been serving in a vacant office for only

---

[5]     Plaintiffs also dispute Defendants' observation that the Senate knew that Wolf would be Acting Secretary when it confirmed him as Under Secretary by insisting that this assertion is unsupported by "record evidence." Pls.' Opp'n & Reply at 35–36. But Defendants' statement is rooted in well-known public information. McAleenan's resignation was announced on October 11, 2019. https://nyti.ms/3jvDrn2. Before his departure, on November 8, 20219, he amended the order of succession, placing the Under Secretary of Strategy, Policy, and Plans fourth in line behind himself and two other vacant offices. Dkt. 25-4 at 142. The Senate then confirmed Wolf on November 13, 2019, Dkt. 25-4 at 223, fully aware that, upon McAleenan's resignation, Wolf would become Acting Secretary under the revised order of succession. McAleenan then resigned the same day as Wolf's confirmation. Dkt. 25-4 at 145. Thus, there can be no question that the Senate knew that it was confirming not only the next Under Secretary of Strategy, Policy, and Plans, but also the next Acting Secretary of Homeland Security.

[6]     Plaintiffs now attempt to demonstrate "Executive overreach" in the form of statements by the President about vacant offices generally, politically divisive policy decisions by the Department of Homeland Security, the Department's efforts (in an abundance of caution) to ratify Wolf's actions, and the Department's stated disagreement with court decisions holding Wolf's service as Acting Secretary to be unlawful. Pls.' Opp'n & Reply at 33–35. But none of this is a violation of the Appointments Clause, and it is not relevant to the question of whether Wolf's specific service violated the Constitution.

20 days. 2018 WL 6182755, at *7. The court noted that its opinion "does not foreclose a later challenge" should the President "fail to nominate a permanent replacement within the time frame designated by statute," but the Court also specifically stated that, until that time, it would not "define the parameters" of the ability of a nonconfirmed officer to act in the role of an office subject to Senate confirmation. *Id.*

Second, Plaintiffs cite *Bullock v. United States*, 489 F. Supp. 3d 1112, 1119 (D. Mont. 2020). The court in that case vaguely held that an acting official's "service . . . violated the Appointments Clause and the FVRA" but engaged in virtually no analysis as to how the alleged violation of the Federal Vacancies Reform Act also constituted a violation of the Appointments Clause. 489 F. Supp. 3d at 1128. Instead, in sweeping language, the Court simply stated without exposition or citation to authority that a "delegation that does not follow [the procedures of the Federal Vacancies Reform Act] would violate both the FVRA and the Appointments Clause of the U.S. Constitution." *Id.* at 1129. This nonbinding case does not supply persuasive reasons for adopting its approach.

## **CONCLUSION**

For the foregoing reasons and the reasons set forth in Defendants' opening brief, the Court should grant Defendants' motion for partial summary judgment and deny Plaintiffs' motion for partial summary judgment.

Dated: September 3, 2021
       Washington, D.C.

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
Acting United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendants*