UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASYLUMWORKS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO N. MAYORKAS, in his official capacity as the Secretary of Homeland Security, *et al.*, <br><br> Defendants. | No. 2020-cv-03815-BAH |

## NOTICE OF SUPPLEMENTAL AUTHORITY TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiffs hereby notify the Court of a recent decision by Judge Jeffrey S. White in the Northern District of California granting summary judgment to the plaintiffs, and vacating a final rule, on the basis that purported former Acting Secretary of the Department of Homeland Security Chad Wolf lacked authority to issue the rule because he "was not lawfully appointed as Acting Secretary at the time the Final Rule was approved." *See Chamber of Commerce v. DHS*, No. 20-CV-07331-JSW, 2021 WL 4198518, *4–5 (N.D. Cal. Sept. 15, 2021). A copy of the decision is attached. This decision cited and followed the six federal court decisions and GAO decision ruling that Mr. Wolf's appointment was not lawful, all of which were cited in Plaintiffs' briefing.[1] *Id*.

---

[1] *See* Dkt. 31 at 4 n.3 (citing Dkt. 25-4 at 82-93; *Behring Reg'l Ctr. LLC v. Wolf*, No. 20-cv-09263, 2021 WL 2554051 (N.D. Cal. Jun. 22, 2021); *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 971-73 (N.D. Cal. 2021); *La Clinica De La Raza v. Trump*, No. 19-cv-4980, 2020 WL 7053313, at *7-*9 (N.D. Cal. Nov. 25, 2020); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 123 (E.D.N.Y. 2020); *Immigrant Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520, 529-36 (N.D. Cal. 2020); *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 954-60 (D. Md. 2020), appeal dismissed, No. 20-2217, Dkt. 23 (4th Cir. Mar. 23, 2021)).

1

The *Chamber of Commerce* decision supplements Plaintiffs' argument that the EAD Bar Rule and Timeline Repeal Rule are invalid because Mr. Wolf did not serve as Acting Secretary of DHS at the time both Rules were approved, and that the proper remedy is vacatur.  Dkt. 25-1 at 23-26, 43-45; Dkt. 31 at 4-19.

Dated: October 5, 2021                                    Respectfully submitted,

                                                     By:  /s/ Keren Zwick

Deepa Acharya (D.C. Bar No. 996412)  
Carl Spilly (D.C. Bar No. 230830)  
Brian McGrail (D.C. Bar No. 1672349)  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
1300 I St. NW, Suite 900  
Washington, DC 20005  
202-538-8000  
deepaacharya@quinnemanuel.com  
carlspilly@quinnemanuel.com  
brianmcgrail@quinnemanuel.com  

Nicholas A. S. Hoy  
QUINN EMANUEL URQUHART & SULLIVAN, LLP  
51 Madison Ave., 22nd Floor  
New York, NY 10010  
212-849-7000  
nicholashoy@quinnemanuel.com  

Richard Caldarone***  
TAHIRIH JUSTICE CENTER  
6400 Arlington Blvd., Suite 400  
Falls Church, VA 22042  
571-282-6161  
richardc@tahirih.org  
juliec@tahirih.org  


* *Certification to practice pursuant to LCvR 83.2(g) to be submitted*

** *Counsel for Individual Plaintiffs only*

*** *Counsel for Tahirih Justice Center only*

Keren Zwick (D.D.C. Bar. No. IL0055)  
Mark Fleming*  
Gianna Borroto*  
Drew Heckman  
NATIONAL IMMIGRANT JUSTICE CENTER  
224 S. Michigan Ave., Suite 600  
Chicago, IL 60604  
312-660-1370  
kzwick@heartlandalliance.org  
mfleming@heartlandalliance.org  
gborroto@heartlandalliance.org  
dheckman@heartlandalliance.org  

Jamie Crook (D.C. Bar No. 1002504)  
Annie Daher  
CENTER FOR GENDER & REFUGEE STUDIES  
200 McAllister St.  
San Francisco, CA 94102  
415-565-4877  
crookjamie@uchastings.edu  
daherannie@uchastings.edu  

Scott Shuchart (D.C. Bar No. 1531377)**  
KIDS IN NEED OF DEFENSE  
1201 L St., NW, Floor 2  
Washington, DC 20005  
202-318-0595  
sshuchart@supportkind.org  

Wendy Wylegala**  
KIDS IN NEED OF DEFENSE  
252 West 37th Street, Floor 15  
New York, NY 10018  
646-970-2913  
wwylegala@supportkind.org  

*Counsel for Plaintiffs*

1

2021 WL 4198518
Only the Westlaw citation
is currently available.
United States District
Court, N.D. California.

CHAMBER OF COMMERCE
OF THE UNITED STATE OF
AMERICA, et al., Plaintiffs,
v.
UNITED STATES DEPARTMENT
OF HOMELAND SECURITY,
et al., Defendants.

Case No. 20-cv-07331-JSW
|
09/15/2021

JEFFREY S. WHITE, United States District Judge

**ORDER GRANTING PLAINTIFFS'
MOTION FOR SUMMARY JUDGMENT
AND DENYING DEFENDANTS'
CROSS-MOTION FOR SUMMARY
JUDGMENT** Re: Dkt. Nos. 140, 144

*\*1* Now before the Court for consideration are the cross-motions for summary judgment filed by Plaintiffs[1] and Defendants, United States Department of Homeland Security ("DHS") and Alejandro Mayorkas, in his official capacity as Secretary of Homeland Security ("Secretary Mayorkas") (collectively "DHS").[2]

The Court has considered the parties' papers, relevant legal authority, the record in this case, including the amicus brief filed by U.S. Tech Workers in support of DHS's motion, and the parties' arguments at the hearing held on September 10, 2021. The Court HEREBY GRANTS Plaintiffs' motion and DENIES DHS's cross-motion.

## BACKGROUND

**A. Procedural History.**
On October 19, 2020, Plaintiffs filed their original complaint and asked the Court to set aside two interim final rules promulgated by DHS and by the Department of Labor: *Strengthening Wage Protections for the Temporary and Permanent Employment of Certain Aliens in the United States*, 85 Fed. Reg. 63,872 (Oct. 8, 2020) ("DOL IFR"); *Strengthening the H-1B Nonimmigrant Visa Classification Program*, 85 Fed. Reg. 63,918 (Oct. 8, 2020) ("DHS IFR").

The Plaintiffs moved for a preliminary injunction and for partial summary judgment on their claims that Defendants violated the Administrative Procedure Act's ("APA") notice and comment procedures. The parties subsequently stipulated to advance the trial on the merits of those claims, pursuant to Federal Rule of Civil Procedure 65(a)(2), and stipulated to stay the Defendants' obligation to respond to the remaining claims. (Dkt. No. 51.) The notice and comment claims required the Court to consider whether "good cause" existed to excuse the APA's normal notice and comment period. DHS and DOL each relied on the COVID-19 pandemic to support the position that good cause existed. The parties also agreed the Court could rely solely on the

interim final rules and materials cited therein as the administrative record.

On December 1, 2020, the Court granted Plaintiffs' motion and denied Defendants' cross-motion, set aside the interim final rules, and entered partial judgment on the notice and comment claims, pursuant to Federal Rule of Civil Procedure 54(b). *See Chamber of Commerce v. U.S. Dep't of Homeland Sec.*, 504 F. Supp. 3d 1077 (N.D. Cal. 2020). Defendants did not appeal that decision.

On March 19, 2021, Plaintiffs filed an amended complaint ("FAC") and a notice of filing, which included a request for leave to amend or to supplement under Rule 15. Plaintiffs dropped their claim against the DHS IFR and asserted claims challenging the DOL's final rule, *Strengthening Wage Protections for the Temporary and Permanent Employment of Certain Aliens in the United States*, 86 Fed. Reg. 3,608 (Jan. 14, 2021) (the "DOL Final Rule"), and a new and different rule promulgated by DHS, which affects the manner in which H-1B visa applications will be processed: *Modification of Registration Requirement for Petitioners Seeking to File Cap-Subject H-1B Petitions*, 86 Fed. Reg. 1676 (Jan. 8, 2021) (the "Final Rule").[3]

**\*2** On April 15, 2021, over DHS's objection, the Court granted Plaintiffs leave to file the FAC. (Dkt. Nos. 79-80, 91.) The parties now move for summary judgment on the claims relating to the Final Rule.

**B. Factual Background.**

On April 7, 2019, former DHS Secretary Kirstjen M. Nielsen announced her resignation and left office on April 10, 2019. President Trump did not nominate a replacement until September 10, 2020, when he nominated Chad H. Wolf ("Mr. Wolf") for the position. The facts surrounding Mr. Wolf's accession to the role of Acting Secretary of DHS are set forth in the Court's order granting a preliminary injunction in *Immigrant Legal Rights Center v. Wolf*, and the Court shall not repeat then in detail here. 491 F. Supp. 3d 520, 531-33 (N.D. Cal. 2020) ("*ILRC*").

In brief, before Secretary Neilsen resigned, she issued an order that purported to amend the order of succession for Acting Secretary pursuant to authority granted to her by the Homeland Security Act, 6 U.S.C. section 113(g)(2) (the "April 9 Order"). The purported amendment had the effect of promoting Kevin McAleenan to the role of Acting Secretary. Mr. McAleenan putatively served as Acting Secretary from April 10, 2019, until November 13, 2019, when he resigned. On or about November 8, 2019, Mr. McAleenan issued an order that purported to further amend the order of succession, which promoted Mr. Wolf to the position of Acting Secretary. *Id.* at 529-33. In that capacity, Mr. Wolf "reviewed and approved" the Final Rule and "delegate[ed] the authority to electronically sign [the Final Rule] to Ian J. Brekke, … the Senior Official Performing the Duties of the General Counsel for DHS, for purposes of publication in the Federal Register." 86 Fed. Reg. at 1732; *see also id.* at 1735.

The H-1B visa category enables employers in the United States to hire qualified foreign

professionals in specialty occupations. *See* 8 U.S.C. §§ 1184(i)(1), 1101(a)(15)(H)(i)(b); *see also* 8 C.F.R. § 214.2(h)(4)(ii). An employer must certify that it will pay an H-1B employee "wages that are at least – … the actual wage level paid by the employer to all other individuals with similar experience and qualifications for the specific employment in question; or … the prevailing wage level for the occupational classification in the area of employment." 8 U.S.C. § 1182(n)(1)(A)(i)(I)-(II); *see also* 20 C.F.R. § 655.731(a).

As of April 2019, in order to petition for an H-1B visa, an employer must first register with DHS. *See* 8 C.F.R. § 214.2(h)(8)(iii)(A)(1). If the registration is selected, the employer submits a petition in "such form and containing such information" as prescribed by the Secretary of DHS, who approves or denies the petition "after consultation with the appropriate agencies of the Government." 8 U.S.C. § 1184(c)(1). [4] Subject to some exceptions, the number of H-1B visas approved each year is capped at 65,000, with an additional 20,000 visas approved for foreign graduates of U.S. master's or higher degree graduate programs. *Id.* §§ 1184(g)(1)(A)(vii), 1184(g)(5)(C). Individuals employed by, or who have received an offer of employment from, an institution of higher education, a nonprofit entity related to or affiliated with an institution of higher education, and nonprofit research organizations and government research organizations are exempted from the cap. *Id.* § 1184(g)(5)(A)-(B).

**\*3** Individuals "who are subject to the [visa cap] shall be issued visas (or otherwise provided nonimmigrant status) in the order in which petitions are filed for such visas or status." *Id.*, § 1184(g)(3). However, the number of petitions filed each year regularly exceeds the visa cap. *See* 86 Fed. Reg. at 1,717-18 table 3, and 1,717 n.164. Petitions also arrive simultaneously. Therefore, over the years, DHS has adopted various rules to address those issues. Pertinent to this case is the process that has become known as the "H-1B Visa Lottery." Under that process, DHS would randomly select from petitions it received during the first five business days after it began to accept petitions. Those petitions would be deemed filed, and DHS would reject the rest and return them to the petitioners. *See, e.g., Registration Requirement for Petitioners Seeking to File H-1B Petitions on Behalf of Cap-Subject Aliens*, 84 Fed. Reg. 888, 894 (Jan. 31, 2019). [5]

Under the procedures adopted in April 2019, DHS initiated the registration process. When DHS receives more registrations than necessary during the initial registration period it "will randomly select from among the registrations properly submitted during the initial registration period the number of registrations deemed necessary to meet the H-1B regular cap" by computer generated selection. 8 C.F.R. § 214.2(h)(8)(iii)(A)(5)(ii). Under this procedure, the H-1B Visa Lottery remained based on a random selection of the registrations filed.

However, under the Final Rule, when the number of registrations exceeds the number necessary to fill the H-1B visa caps,

DHS "will rank and select the registrations received generally on the basis of the highest [Occupational Employment Statistics (OES)] wage level that the proffered wage equals or exceeds for the relevant [Standard Occupational Classification] code in the area of intended employment, beginning with OES wage level IV and proceeding in descending order with OES wage levels III, II, and I. The proffered wage is the wage that the employer intends to pay the beneficiary." 86 Fed. Reg. at 1677; see also 8 C.F.R. § 214.2(h)(8)(iii)(A)(5) effective Dec. 31, 2021.[6] Simply put, instead of randomly selecting registrations for filing, DHS will now prioritize registrations for filing and the issuance of H-1B visas for the most highly-paid positions within their SOC.

In their second claim for relief, Plaintiffs allege the Final Rule conflicts with the Immigration and Nationality Act and is arbitrary and capricious. In their third claim for relief, Plaintiffs allege the Final Rule must be set aside because Mr. Wolf was not lawfully serving as Acting Secretary of DHS at the time the rule was promulgated.

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

In the context of the APA, the Court does not follow the traditional summary judgment analysis set forth in Federal Rule of Civil Procedure 56. That is because "there are no disputed facts that the district court must resolve." *Occidental Eng'g Co. v. INS*, 753 F.2d 766, 769 (9th Cir. 1985). Instead, the Court "determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id*. The APA permits a court to, inter alia, "hold unlawful and set aside agency action, findings and conclusions found to be - arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

### A. Standing and Zone of Interests.

*4 In addition to Article III standing, a plaintiff bringing claims under the APA must show they fall within the "zone of interests to be protected or regulated by the statute" they claim was violated. *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 224 (2012) (quoting *Ass'n of Data Processing Serv. Orgs., Inc. v. Camp*, 397 U.S. 150, 153 (1970)). That test "is not meant to be especially demanding" and will foreclose a suit "only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit.' " *Id.*, 567 U.S. at 225 (quoting *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 399 (1987)).

Although neither party addressed the issue of Article III standing or Plaintiffs' ability to satisfy the zone of interests test, the H-1B visa cap does not apply to individuals employed by or who receive offers of employment from institutions of higher learning. Accordingly, the Court raised the ability of the university Plaintiffs' zone of interests issue at the hearing. Plaintiffs referred the Court to the declaration

of Miriam Feldblum, submitted in connection with their motion challenging the DHS IFR. (Dkt. No. 31-8.) Ms. Feldblum stated that the opportunity to participate in the H-1B visa program is a factor that international students take into consideration when deciding where to study. (Feldblum Decl., ¶ 8.) She attested that the changes to the H-1B visa program addressed in the DHS IFR would deter international students from enrolling in universities and other institutions of higher learning, which would negatively impact those institutions financially and socially. (*Id.*) Plaintiffs argue that by prioritizing wage levels it is less likely that recent graduates would be able to obtain an H-1B visa. The Court concludes that Plaintiffs have demonstrated they have Article III standing and have demonstrated they satisfy the zone of interests test.

**B. The Court Concludes Mr. Wolf Was Not Lawfully Serving as Acting Secretary.**
Plaintiffs argue the Final Rule must be set aside because Mr. Wolf was not lawfully appointed as Acting Secretary at the time DHS promulgated the rule.[7] In *ILRC,* the Court concluded the plaintiffs were likely to succeed on the merits of their claim that Mr. Wolf's appointment was not lawful. 491 F. Supp. 3d at 533-36. At that time, two other district courts had considered and rejected DHS's arguments, as had the Government Accountability Office ("GAO"). *See Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020); *La Clinica de la Raza v. Trump*, 477 F. Supp. 3d 951, 970-72 (N.D. Cal. 2020) ("*La Clinica de la Raza I*"); Dkt. No. 140-1, Declaration of Paul Hughes ("Hughes Decl."), ¶ 2; Dkt. No. 140-3, Hughes Decl., Ex. 2 (U.S. Gov't Accountability Office, *Department of Homeland Security – Legality of Service of Acting Secretary of Homeland Security and Service of Senior Official Performing the Duties of Deputy Secretary of Homeland Security* 6-11 (Aug. 14, 2020) ("GAO Decision")).

Since then, a number of other courts also have determined that Mr. McAleenan and Mr. Wolf not acting with lawful authority. *See Behring Reg'l Ctr. LLC v. Wolf*, No. 20-cv-9263-JSW, 2021 WL 2554051, at *4-*5 (N.D. Cal. June 22, 2021); *E. Bay Sanctuary Covenant v. Barr*, 19-cv-4073-JST, -- F. Supp. 3d --, 2021 WL 607869, at *4 (N.D. Cal. Feb. 16, 2021); *Panagea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 243 F. Supp. 3d 1156, 973 (N.D. Cal. 2021); *Battalla Vidal v. Wolf,* 501 F. Supp. 3d 117, 131-32 (E.D.N.Y. 2020); *La Clinica de la Raza v. Trump*, No. 19-cv-4980-PJH, -- F. Supp. 3d --, 2020 WL 6940934, at *13-14 (N.D. Cal. 2020) ("*La Clinica de la Raza II*"); *Nw. Immigrant Rights Project v. U.S. Citizenship and Immigr. Servs.*, 496 F. Supp. 3d 31, 55-70 (D.D.C. 2020) ("*NIRP*").[8]

**\*5** With one exception, DHS "recycle[d] exactly the same legal and factual claims made in the prior cases, as if they had not been soundly rejected in well-reasoned opinions[.]" *Panagea,* 512 F. Supp. 3d at 973.[9] It also did not offer any new facts or legal argument at the hearing. Accordingly, for the reasons set forth in *ILRC,* the Court concludes that when Secretary Nielsen issued the April 9 Order, she did not amend the order of succession in the event of her resignation. Therefore, the order of succession set forth in Executive Order

13753 still governed, and Mr. McAleenan was not lawfully elevated to the position of Acting Secretary. *ILRC,* 491 F. Supp. 3d at 533-36. Because he was not lawfully appointed, Mr. McAleenan's subsequent attempts to amend the order of succession and to elevate Mr. Wolf to Acting Secretary also were not valid. *Id.* This Court's ruling is further supported by the persuasive reasoning set forth in *Panagea,* 512 F. Supp. 3d at 974, *Battalla Vidal,* 501 F. Supp. 3d at 131-32, and *La Clinica de la Raza II,* 2020 WL 6940934, at *13-14.

DHS confirmed at the hearing that Secretary Mayorkas has not ratified the Final Rule. Because Mr. Wolf was not lawfully appointed as Acting Secretary at the time the Final Rule was approved, the Court concludes the rule must be set aside. In light of this ruling, the Court does not reach Plaintiffs' alternative arguments. Accordingly, the Court vacates the Final Rule and remands this matter to DHS. The Court shall enter a separate judgment, and the Clerk shall close the file.

**IT IS SO ORDERED**.

Dated: September 15, 2021

JEFFREY S. WHITE

United States District Judge

**All Citations**

Slip Copy, 2021 WL 4198518

## Footnotes

1    Plaintiffs are: Chamber of Commerce of the United States of America, Bay Area Council, National Retail Federation, American Association of International Healthcare Recruitment, Presidents' Alliance on Higher Education and Immigration, California Institute of Technology, Cornell University, The Board of Trustees of Leland Stanford Junior University, University of Southern California, University of Rochester, University of Utah, and ARUP Laboratories.

2    Secretary Mayorkas was automatically substituted as the defendant in lieu of putative Acting Secretary Chad H. Wolf pursuant to Federal Rule of Civil Procedure 25.

3    The parties subsequently stipulated to a voluntary remand with vacatur of the DOL Final Rule. (Dkt. No. 139.)

4    Although the INA refers to the Attorney General, that reference is deemed to refer to the Secretary of DHS pursuant to the transfer of immigration authority to DHS. *See* 6 U.S.C. §§ 557, 202.

5    *See also Walker Macy LLC v. U.S. Citizenship and Immigr. Servs.,* 243 F. Supp. 3d 1156, 1163-64 (D. Ore. 2017).

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works.    6

| | |
|---|---|
| 6 | Since 2004, those levels have been set as follows: Level I – 17th percentile; Level II – 34th percentile; Level III – 50th percentile; and Level IV – 67th percentile. The DOL Final Rule would have increased the percentiles associated with these wage levels. *See Chamber of Commerce*, 504 F. Supp. 3d at 1085. |
| 7 | During the notice and comment procedure, DHS received comments that challenged Mr. Wolf's authority. *See* 86 Fed. Reg. at 1693. DHS stated it "disagree[d]" with the comments and relied on many of the same arguments raised here. *Id.* at 1693-94. |
| 8 | The court in *NIRP* reached the same outcome for different reasons. |
| 9 | DHS no longer relies the argument that a memorandum issued by FEMA Administrator Peter Gaynor cured any deficiencies in Mr. Wolf's appointment. (*See* DHS Cross-Mot. at 11 n.10.) Because DHS has abandoned that argument, the Court concludes the court's analysis in *NIRP* of Mr. Gaynor's actions and Mr. Wolf's subsequent ratification of actions taken prior to September 10, 2020 do not impact its analysis. *See NIRP*, 496 F. Supp. 3d at 57-58. |

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.