## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ASYLUMWORKS, *et al.*,

Plaintiffs,

v.

ALEJANDRO N. MAYORKAS, *Secretary, United States Department of Homeland Security*, *et al.*,

Defendants.

Civil Action No. 20-cv-3815 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Seeking vacatur of two rules issued by the Department of Homeland Security ("DHS") that, as of August 2020, curtail asylum seekers' access to employment authorization documents, plaintiffs—three nonprofit organizations and eighteen individual noncitizen asylum seekers— now move for summary judgment asserting that the challenged rules are void *ab initio* because, at the time of their promulgation, Chad Wolf was not lawfully serving as Acting Secretary of Homeland Security. *See* Pls.' Mot. for Partial Summ. J., ECF No. 25; Pls.' Mem. Supp. Mot. for Partial Summ. J. ("Pls.' Mem."), at 2, 19, ECF No. 25-1. Specifically, plaintiffs maintain that Wolf's service as Acting Secretary from 2019 to 2021 contravened the Appointments Clause, Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*, Federal Vacancies Reform Act ("FVRA"), 5 U.S.C. § 3345 *et seq.*, Homeland Security Act ("HSA"), 6 U.S.C. § 101 *et seq.*, and internal DHS orders governing the agency's line of succession. Pls.' Mem. at 1-3. Defendants have cross-moved for summary judgment, insisting on the legality of Wolf's appointment and otherwise asserting that any appointment defects as to one of the challenged rules were cured by current DHS Secretary Alejandro Mayorkas's ratification of that rule in May 2021. *See* Defs.'

1

Cross-Mot. for Partial Summ. J., ECF No. 28; Defs.' Mem. Supp. Cross-Mot. for Summ. J.

("Defs.' Mem."), at 1, 28, ECF No. 29.

Five other district courts across the country and another Judge on this Court have already

concluded that Wolf's appointment as Acting Secretary was invalid.  *See Pangea Legal Servs. v.*

*U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966 (N.D. Cal. 2021); *Batalla Vidal v. Wolf*, 501

F. Supp. 3d 117 (E.D.N.Y. 2020); *Nw. Imm. Rights. Proj.  v. USCIS*, 496 F. Supp. 3d 31 (D.D.C.

2020); *Imm. Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520 (N.D. Cal. 2020); *Casa de Md., Inc. v.*

*Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020); *La Clinica De La Raza v. Trump*, No. 19-cv-4980,

2020 WL 7053313 (N.D. Cal. Nov. 25, 2020). [1]  In so doing, one of these courts, on September

20, 2020, preliminarily enjoined enforcement of aspects of the DHS employment authorization

rules at issue here, but only as to members of the two organizational plaintiffs in that case.  *See*

*Casa de Md., Inc.*, 486 F. Supp. 3d at 973-74.

Finding no reason to depart from the reasoned holding of these other decisions, this Court

likewise concludes that Wolf's ascension to the office of Acting Secretary was unlawful.  As an

issue of first impression, the Court further finds that Secretary Mayorkas's ratification of the so-

called "Timeline Repeal Rule" in May 2021 did not cure the defects as to that rule caused by

Wolf's unlawful tenure as Acting Secretary.  Accordingly, for reasons set forth in detail below,

plaintiffs' motion for summary judgment is granted and defendants' cross-motion for summary

judgment is denied.

---

[1]      The Government Accountability Office ("GAO") has also opined that Wolf became Acting Secretary "by reference to an invalid order of succession," which decision was issued in accordance with GAO's duties, under 5 U.S.C. § 3349, to notify Congress about FVRA violations in the Executive Branch.  Pls.' Mem., Ex. 5 (GAO Aug. 14, 2020 Decision), at 1.

## I.     BACKGROUND

The statutory and regulatory scheme underlying the parties' dispute is described below, followed by the relevant factual and procedural history.  A fuller account of the DHS rules challenged by plaintiffs is set out in *Asylumworks v. Mayorkas*, 20-cv-3815 (BAH), 2021 WL 2227335, at *1-3 (D.D.C. June 1, 2021) (denying defendants' motion to stay proceedings), but need not be repeated here in resolving the instant dispute regarding the legality of Wolf's appointment.

### A.     Statutory and Regulatory Background

Determining whether Wolf lawfully assumed the office of Acting Secretary of Homeland Security, and thus had the authority to issue the challenged rules, lies at the labyrinthine interplay of various statutes and regulations governing the agency's line of succession to the Office of Secretary, including the FVRA, HSA, and a series of internal DHS directives, which are memorialized in several revisions to a document known as Delegation No. 00106.  These statutes and regulations are summarized below.

#### 1.     *Federal Vacancies Reform Act*

Enacted in 1998 as a response to perceived "threat[s] to the Senate's advice and consent power," *NLRB v. SW Gen., Inc.*, 137 S. Ct. 929, 936 (2017), the FVRA provides the default framework "for temporarily authorizing an acting official to perform the functions and duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate."  5 U.S.C. § 3347(a).  As relevant here, the terms of the FVRA command who may assume an office in an acting capacity *unless* a separate statutory provision "(A) authorizes the . . . head of an Executive department[] to designate an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity; or (B) designates an officer or employee to perform the

3

functions and duties of a specified office temporarily in an acting capacity." *Id.* § 3347(a)(1)(A)-(B); *see also In re Grand Jury Investigation*, 315 F. Supp. 3d 602, 664 (D.D.C. 2018) (noting that, if another statute designates an officer to assume a role in an "acting capacity," the FVRA is "not the exclusive means for temporarily authorizing" such an officer to fill that vacancy) (citations omitted).

Upon the resignation of an agency official "whose appointment to the office is required to be made by the President, by and with the advice and consent of the Senate," such as the Secretary of Homeland Security ("Secretary"), the FVRA dictates that "the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity subject to the time limitations of section 3346." 5 U.S.C. § 3345(a).  Section 3346 provides, in turn, that "the person serving as an acting officer . . . under section 3345 may serve in the office . . . for no longer than 210 days beginning on the date the vacancy occurs." *Id.* § 3346(a).  "If an action is taken by a person who purports to act with the authority of an office to which the FVRA applies but who is not serving in accordance with the FVRA, that action 'shall have no force or effect' and 'may not be ratified.'" *Batalla Vidal*, 501 F. Supp. 3d at 128 (citing 5 U.S.C. § 3348(d)); *see also SW Gen. Inc. v. NLRB*, 796 F.3d 67, 78 (D.C. Cir. 2015) ("The FVRA renders any action taken in violation of the statute void *ab initio* (citing 5 U.S.C. § 3348(d)(1)-(2)).

### 2.    *Homeland Security Act*

Operating as an adjunct to the FVRA's default framework, the HSA designates the Deputy Secretary of Homeland Security as "the Secretary's first assistant for purposes" of the FVRA and the Under Secretary for Management as "first assistant to the Deputy Secretary," also for FVRA purposes.  6 U.S.C. § 113(a)(1)(A), (F).  Critically, the HSA also provides that

"[n]otwithstanding [the FVRA], the Secretary may designate such other officers of the Department in *further* order of succession to serve as Acting Secretary." *Id.* § 113(g)(2) (emphasis added).  Taken together, the FVRA and HSA thus create a succession order for DHS that flows from Secretary to Deputy Secretary to Under Secretary for Management, and from there to any "such other officers" designated by the Secretary pursuant to her authority under 6 U.S.C. § 113(g)(2).

### 3.   *DHS Delegation No. 106*

Consistent with the FVRA and HSA, on December 15, 2016, then-DHS Secretary Jeh Johnson issued a revision to Delegation No. 00106 ("Delegation 106"), titled "DHS Orders of Succession and Delegations of Authorities for Named Positions."  Pls.' Mem., Ex. 2 (Delegation 106).  At DHS, delegations "specify who is authorized to act on behalf of the Secretary" and are key components of the agency's "Directive Systems," which "is an official means of communicating to DHS employees the delegations of authority, policies, and procedures necessary for DHS to comply with public law, statutes, Executive Orders, regulations, and policies."  Pls.' Reply Supp. Mot. for Partial Summ. J. and Opp'n Defs.' Cross-Mot. for Partial Summ. J. ("Pls.' Opp'n"), Ex. 1 (Directive Number 112-01, Directives System), ECF No. 31.  Such delegations form part of what scholars describe as "internal administrative law," or "measures generated by agencies to control their own actions and operations and aimed primarily at agency personnel."  Gillian E. Metzger & Kevin M. Stack, *Internal Administrative Law*, 115 Mᴵᴄʜ. L. Rᴇᴠ. 1239, 1254 (2017).

As relevant here, Delegation 106 "created a bifurcated structure" to govern which DHS officials may assume the role of Acting Secretary when the Secretary dies, resigns, or becomes unavailable during a disaster or other emergency.  *Nw. Imm. Rights. Proj.*, 496 F. Supp. 3d at 54.

*First*, Section II.A of Delegation 106 established that, in "case of the Secretary's death, resignation, or inability to perform the functions of the Office, the orderly succession of officials is governed by Executive Order 13753, as amended on December 9, 2016."  Delegation 106 at 1. Through Executive Order 13753 ("E.O. 13753"), then-President Obama delineated a further order of succession for DHS Secretary beyond that already established in the FVRA and HSA to include the Administrator of the Federal Emergency Management Agency ("FEMA") and the Director of the Cybersecurity and Infrastructure Agency ("CISA") as the officials third and fourth in line, respectively, to become Acting Secretary following the Deputy Secretary and Under Secretary for Management.  *See* E.O. 13753, 81 Fed. Reg. 90,667, 90,667 (Dec. 9, 2016).[2]

*Second*, should the Secretary become "unavailable to act during a disaster or catastrophic emergency," Section II.B of Delegation 106 assigned the Secretary's "authority to exercise the powers and perform the functions and duties of [the] office" to the officials identified on a list attached as "Annex A."  Delegation 106 at 1.  The first four officials identified in Annex A— Deputy Secretary, Under Secretary for Management, FEMA Administrator, and CISA Director—were also the same officials listed in E.O. 13753 as the first four successors to the Secretary.  *See* Delegation 106 at 5.  Thus, under the plain terms of Delegation 106, as amended by then-Secretary Johnson in December 2016, the same order of succession controlled who could become Acting Secretary whether the Secretary died, resigned, or became unavailable during a disaster or other emergency.  This version of Delegation 106 "governed the order of succession to the Office of the DHS Secretary from December 15, 2016 until April 10, 2019."  Pls.' SMF ¶ 188, ECF No. 25-3; *see also* Defs.' Resp. SMF ¶ 188, ECF No. 29-3.

---

[2]        In E.O. 13753, the officer fourth in the line of succession is identified as the Under Secretary for National Protection and Programs.  In 2018, however, that role was redesignated as Director of CISA.  *See Casa de Md., Inc.*, 486 F. Supp. 3d at 958 n.15*; see also* 6 U.S.C. § 652(a)(1)-(2).

B.     **Factual Background**

1.     *Secretary Nielsen's Resignation and the April 2019 Delegation*

DHS Secretary Kirstjen Nielsen, as the only Senate-confirmed DHS Secretary to hold office during the tenure of former President Trump, presented her resignation on April 7, 2019, effective that same day.  Pls.' SMF ¶ 193; Pls.' Mem., Ex. 6 (Nielsen Resignation Letter).  Later that day, at 6:02 P.M., President Trump tweeted that the Commissioner of U.S. Customs and Border Protection ("CBP"), Kevin McAleenan—who at the time was *seventh* in the then-controlling order of succession established in E.O. 13753 and incorporated by Delegation 106—would become Acting Secretary following Nielsen's departure.  Pls.' SMF ¶ 194; Pls.' Mem., Ex. 7 (@realDonaldTrump April 7, 2019 Tweet).  At 10:36 P.M. that same evening, Secretary Nielsen announced, also via Twitter, that she would remain in her role through April 10, 2019 "to assist with an orderly transition."  Pls.' Mem., Ex. 8 (@SecNielsen April 7, 2019 Tweet); Pls.' SMF ¶ 195.

The day before her departure from DHS, on April 9, 2019, Secretary Nielsen signed a memorandum to her from the DHS General Counsel designating an "Order of Succession for the Secretary" pursuant to her authority under the HSA.  Pls.' Mem., Ex. 9 (April 9, 2019 Memorandum from Mitnick to Nielsen), at 1; *see also* 6 U.S.C. § 113(g)(2) (granting DHS Secretary the authority to "designate such other officers of the Department in further order of succession to serve as Acting Secretary").  The memorandum stated that Nielsen had expressed her "desire to designate certain officers of the Department of Homeland Security . . . in order of succession to serve as Acting Secretary" and that her approval of a document attached to the memorandum ("April 2019 Delegation") would "accomplish such designation."  Pls.' Mem., Ex. 9 at 1.

7

The April 2019 Delegation amended Annex A to Delegation 106 and designated a new order of succession that bumped-up the CBP Commissioner from seventh to third in the order of succession to become Acting Secretary.  *See id.* at 2.  As noted, however, under the plain terms of Delegation 106, Annex A *only* provided the succession order in the event of a natural disaster or other emergency.  Delegation 106 at 1.  The April 2019 Delegation "did not change when Annex A, rather than E.O. 13753, governed," and E.O. 13753 still dictated the order of succession upon the Secretary's resignation.  *Batalla Vidal*, 501 F. Supp. 3d at 125; *see also* Pls.' Mem., Ex. 10 (April 10, 2019 Revision to Delegation 106), at 1.  Given that the roles of Deputy Secretary, Under Secretary for Management, and FEMA Administrator were all vacant at the time of Nielsen's resignation, *see* Pls.' SMF ¶¶ 205-207, E.O. 13753—as implemented via Delegation 106—required Christopher Krebs, then the Senate-confirmed CISA Director, *id.* ¶ 208, to become Acting Secretary.  This is not what occurred.  On April 11, 2019, and as announced via Twitter by President Trump days earlier and even prior to Nielsen's approval of the April 2019 Delegation, Kevin McAleenan, who had been serving as CBP Commissioner, assumed the office of Acting Secretary at DHS.  *Id.* ¶ 209.

## 2.    *The November 2019 Delegation and McAleenan's Resignation*

Doing what Secretary Nielsen had failed to do before her resignation, on November 8, 2019, McAleenan issued another amendment to Delegation 106 ("November 2019 Delegation") to make Annex A—and not E.O. 13753—the directive that controlled the line of succession for the office of Secretary in *all* scenarios, by supplementing when the Secretary was temporarily unavailable in an emergency to also include "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office."  Pls.' Mem., Ex. 12 (Nov. 8, 2019 Amendment to the Order of Succession for the Secretary of Homeland Security) (amending Section II.A of

Delegation 106); *id.*, Ex. 17 (Nov. 14, 2019 Revision to Delegation 106); *see also Batalla Vidal*, 501 F. Supp. at 125 (noting that under the November 2019 Delegation "Annex A replaced E.O. 13753 as the operative document when the Secretary died, resigned, or became unable to perform the functions of the office, in addition to its application when the Secretary was temporarily unavailable in an emergency"). McAleenan's November 2019 Delegation also altered the list in Annex A by moving up the Under Secretary for Strategy, Policy, and Plans to be fourth in the line of succession after the CBP Commissioner. *See* Pls.' Mem., Exs. 12, 17.

Five days later, on November 13, 2019, McAleenan resigned as Acting DHS Secretary. Pls.' SMF ¶ 212. At that time, the first three positions in the line of succession—Deputy Secretary, Under Secretary for Management, and CBP Commissioner—were again all vacant. *Id.* ¶ 213. Chad Wolf, who had just been confirmed by the Senate as Under Secretary for Strategy, Policy, and Plans and was fourth in the November 2019 Delegation's revised line of succession, thereafter assumed the role of Acting Secretary that same day. *Id.* ¶ 214; *see also* Pls.' Mem., Ex. 15 (Nov. 13, 2019 Press Release "Chad Wolf Confirmed as Under Secretary").

### 3. *The Challenged 2020 DHS Rules and Secretary Mayorkas's May 2021 Ratification of Timeline Repeal Rule*

The two DHS rules challenged in this lawsuit were issued during Wolf's tenure as Acting Secretary and both impact the access of asylum seekers to employment authorization documents ("EADs"). The first rule, *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants* ("Timeline Repeal Rule"), 85 Fed. Reg. 37,502, *et seq.*, (June 22, 2020), "eliminated an earlier regulation that imposed a thirty-day time limit for the United States Citizenship and Immigration Services . . . to process initial EAD applications and became effective August 21, 2020." *Asylumworks*, 2021 WL 2227335, at *1. The second rule, *Asylum Application, Interview, and Employment Authorization*

*for Applicants* ("EAD Bar Rule"), 85 Fed. Reg. 38,532, *et seq.*, (June 26, 2020), "modified regulations governing asylum applicants' eligibility for employment authorization and became effective on August 25, 2020." *Id.*[3]  In his capacity as Acting Secretary, Wolf "reviewed and approved" both rules.  Pls.' SMF ¶¶ 3, 8. [4]

On August 25, 2020, President Trump announced via Twitter that Wolf would be "nominated to be the Secretary of Homeland Security."  Pls.' Mem., Ex. 25 (@realDonaldTrump Aug. 25, 2020 Tweet).  Wolf, however, was never confirmed by the Senate as DHS Secretary during the remainder of President Trump's term in office.  Pls.' SMF ¶ 234.  Following President Biden's election, Alejandro Mayorkas became, on February 2, 2021, the first Senate-confirmed DHS Secretary since Nielsen's resignation in April 2019. *Id.* ¶ 252.  On May 4, 2021, Secretary Mayorkas purportedly ratified the Timeline Repeal Rule, *id.* ¶ 253; *see also* Defs.' Reply Supp. Mot. to Stay ("Defs.' Reply Mot. Stay"), Ex. 1 (May 4, 2021 Ratification Order), ECF No. 19, but he has not ratified the EAD Bar Rule, Pls.' SMF ¶ 254.

### C.    Procedural Background

Plaintiffs commenced this action on December 23, 2020, *see* Compl., ECF No. 1, and filed an amended complaint on March 23, 2021, *see* Am. Compl., ECF No. 12.  Plaintiffs contend that the Timeline Repeal Rule and EAD Bar Rule must be vacated because they are arbitrary and capricious and contrary to the Immigration and Nationality Act ("INA"), in

---

[3]    *Asylumworks* details the multiple aspects of the EAD Bar Rule contested by plaintiffs, *see* 2021 WL 2227335, at *2 n.3, but, as noted, such details are immaterial to resolving the instant cross-motions.

[4]    Both rules are also challenged in litigation pending in the District of Maryland, where the court, on September 11, 2020, preliminarily enjoined enforcement of the Timeline Repeal Rule in its entirety and of various components of the EAD Bar Rule, but this injunction applies only to asylum seekers who are members of the two organizational plaintiffs in that case, Casa de Maryland, Inc. and Asylum Seekers Advocacy Project.  *See Casa de Md., Inc.*, 486 F. Supp. 3d at 973-74.  That court is still "considering whether to expand and uniformly apply the injunction in response to a pending summary judgment motion seeking to have both rules declared invalid in their entirety because Chad Wolf did not lawfully serve as acting DHS Secretary when those rules were promulgated." *Asylumworks*, 2021 WL 2227335, at *3; *see also Casa de Md.*, No. 20-cv-2118-PX, ECF Nos. 107, 127, 159.

violation of the APA, and because Wolf "was not validly serving as Acting DHS Secretary under the Homeland Security Act ("HSA"), Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause when he signed the rules."  Am. Compl. ¶ 8.

After seeking three extensions of their deadline to answer, *see* Min. Orders (March 11, 2021; Apr. 6, 2021; Apr. 16, 2021), and before filing any responsive pleading, on April 22, 2021, defendants moved to stay this case "for the time being" citing "developing administrative actions" following the change in political leadership at DHS and the "parallel judicial proceedings" in the District of Maryland "that may moot or reshape Plaintiffs' claims."  Defs.' Mot. to Stay ¶¶ 1, 3, ECF No. 16.  Following a round of briefing, the Court denied this stay request on June 1, 2021, finding that defendants had "failed to carry their burden of establishing a need for an indefinite stay while the challenged rules remain largely in effect."  *Asylumworks*, 2021 WL 2227335, at *4.[5]  On June 8, 2021, the parties requested a bifurcated briefing schedule, and the Court subsequently entered, a scheduling order to govern only the briefing of cross-motions for partial summary judgment regarding the validity of Wolf's appointment.  *See* Joint Status Report, ECF No. 23; Min. Order (June 10, 2021).  Following the grant of two extensions of time requested by defendants, *see* Min. Orders (July 13, 2021; July 20, 2021), the pending cross-motions for summary judgment are now ripe for resolution.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56 directs that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[5]     As they have done since the early stages of this litigation, defendants again represent that both the Timeline Repeal Rule and EAD Bar Rule may soon be subject to "proposed rulemaking that would rescind or substantively revise" both rules as part of DHS's "regulatory agenda" under the leadership of Secretary Mayorkas.  Defs.' Mem. at 9; *see also Asylumworks*, 2021 WL 2227335, at *2 (noting that DHS "anticipates further rulemaking related to these two rules, with a notice of proposed rulemaking to be issued by December 2021 and a final rule by June 2022").  To date, DHS has issued no notice of proposed rulemaking as to the challenged rules.

entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see Celotex Corp.* v. *Catrett*, 477 U.S. 317, 322-23 (1986) (explaining that "the plain language of Rule 56(c) mandates the entry of summary judgment" to a moving party "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."). "These standards are fully applicable" to motions for summary judgment under the APA. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 884 (1990). In APA cases such as this one, involving cross-motions for summary judgment, "the district judge sits as an appellate tribunal," *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009) (quoting *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (alterations in original)), since the "entire case on review is a question of law,' and the 'complaint, properly read, actually presents no factual allegations, but rather only arguments about the legal conclusion to be drawn about the agency action,'" *id*. (quoting *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993)).

## III.    DISCUSSION

Plaintiffs argue that the Timeline Repeal Rule and EAD Bar Rule should be vacated "in their entirety," Pls.' Mem. at 5, because Wolf  "took office pursuant to an unlawful modification to the order of succession issued by his predecessor, Kevin McAleenan, who was himself unlawfully in office and had no power to modify the order of succession" and the length of Wolf's time as Acting Secretary violated both the "FVRA's 210-day limit on the service of acting officials" and the "Appointments Clause's prohibition on indefinite acting appointments," *id.* at 2. Defendants counter that Secretary Nielsen's April 2019 amendment to Delegation 106 properly allowed McAleenan, and subsequently Wolf, to become Acting Secretary and that, regardless of any appointments-defect, the Timeline Repeal Rule remains valid after ratification

by Secretary Mayorkas.  Defs.' Mem. at 1, 28.  Plaintiffs have the better arguments tied to the plain text of the FVRA and relevant DHS succession orders.

In elevating McAleenan as Acting Secretary in April 2019, plaintiffs are correct that DHS failed to follow the lawful order of succession set out in Delegation 106 issued pursuant to the Secretary's authority under the HSA.  This necessarily voids McAleenan's later, November 2019 revision to Delegation 106 allowing Wolf to become Acting Secretary.  The Court also agrees with plaintiffs that Secretary Mayorkas's ratification of the Timeline Repeal Rule in May 2021 was ineffective under the explicit bar on ratification for actions taken in violation of the FVRA, *see* 5 U.S.C. § 3348(d)(2), thus making both the Timeline Repeal Rule and the EAD Bar Rule—for the latter of which no effort at ratification has even been made—void *ab initio*, *see SW Gen. Inc.*, 796 F.3d at 78.  Accordingly, plaintiffs' motion for summary judgment must be granted and defendants' cross-motion denied.[6]

## A.    Wolf Had No Authority To Serve as Acting Secretary of Homeland Security

The legality of Wolf's service hinges on whether McAleenan could become Acting Secretary in the first instance pursuant to the internal DHS directives governing the order of succession at the time of Secretary Nielsen's resignation.  Based on the plain language of the then-controlling version of Delegation 106, the answer is no.

As noted, the DHS Secretary is authorized to "designate such other officers of the Department in further order of succession to serve as Acting Secretary" beyond the "first assistant" roles identified in the FVRA and HSA.  6 U.S.C. § 113(g)(2).  In light of this broad delegation from Congress, the parties thus do not dispute that Secretary Nielsen had authority

---

[6]    Since Wolf could not lawfully serve as Acting Secretary based on the plain language of Delegation 106, which controlled the line of succession pursuant to the Secretary's exercise of her authority under the HSA, the Court need not address plaintiffs' alternative arguments that the length of Wolf's tenure as Acting Secretary violated the limits on acting service imposed under both the FVRA and Appointments Clause.

under Section 113(g)(2) of the HSA to amend the succession order in the event of either a

resignation or emergency.  *See* Pls.' Mem. at 23; Defs.' Mem. at 12.  Indeed, this is precisely the

authority that Secretary Nielsen exercised when she issued the April 2019 Delegation revising

Delegation 106 and designating an "Order of Succession for the Secretary."  Pls.' Mem., Ex. 9.

Nevertheless, Secretary Nielsen's April 2019 Delegation, which bumped-up the CBP

Commissioner to third in the line of succession in Annex A to Delegation 106, altered the

succession order controlling who could become Acting Secretary *only* if the Secretary became

unavailable "during a disaster or catastrophic emergency."  *See* Pls.' Mem., Ex. 10 at 1.  The

April 2019 Delegation left unchanged the order of succession in case of the Secretary's

resignation, which remained subject to the terms of E.O. 13753 (designating the Deputy

Secretary, Under Secretary for Management, FEMA Administrator, and CISA Director as the

first four successors).  *See id.*; *see also Pangea Legal Servs.*, 512 F. Supp. 3d at 974 (April 2019

Delegation "changed only Annex A, which was the order of succession to be used to determine

who would perform the duties of Secretary in the event of a disaster or emergency," and not

"what should happen in the event of resignations or other vacancies.").  Thus, based on the

unambiguous terms of the April 2019 Delegation, McAleenan—who was then the CBP

Commissioner and the next available Senate-confirmed official listed on Annex A—could have

properly become Acting Secretary as the result of Nielsen's unavailability only "during a disaster

or catastrophic emergency."  Pls.' Mem., Ex. 10 at 1.  McAleenan, however, possessed no

authority to be Acting Secretary upon Nielsen's *resignation*, at which point CISA Director

Christopher Krebs should have assumed the role of Acting Secretary, in accordance with E.O.

13753.  *Id.*  Since McAleenan "had no authority, the November [2019] Delegation [he issued]—

which had the effect of implanting Mr. Wolf as Acting Secretary of Homeland Security—was

14

not an authorized agency action." *Batalla Vidal*, 501 F. Supp. 3d at 132; *see also Pangea Legal Servs.*, 512 F. Supp. 3d at 974 ("Because the passing of the torch from Nielsen to McAleenan was ineffective, the attempt by McAleenan to pass it in turn to Wolf has no legal effect whatsoever.").

Defendants remarkably insist that "the plain terms of the [April 2019 Delegation] make clear that it not only revised Annex A, but also used Annex A to designate the order of succession" in the event of resignation.  Defs.' Mem. 20; *id.* at 16 (arguing the April 2019 Delegation "ensured that the order of succession in the event of vacancy and the order of delegation in cases of emergency would be the same").  For instance, defendants assert that when Section II.A "of Delegation 00106 stated that the order of succession 'is governed by' Executive Order 13,753, it was not establishing an order of succession; it was merely identifying the document that did so," and for that reason there was "no need for Secretary Nielsen to amend the text of" Section II.A to properly elevate the CBP Commissioner as Acting Secretary upon her resignation.  *Id.* at 18.  Defendants also point to Nielsen's "manifest intent," *id.* at 17, and "[c]ontemporaneous official actions by the Department of Homeland Security confirm[ing] that understanding" of the April 2019 Delegation, *id.* at 20.  The Court rejects this invitation to engage in such interpretative acrobatics.  As aptly put by the *Batalla Vidal* court, defendants' "reading of the documents is tortured" and "urges the court to ignore official agency policy documents and invalidate the plain text of the April [2019] Delegation."  501 F. Supp. 3d at 132.  This Court thus "credits the text of the law over *ex post* explanations that the text means something other than what it says."  *Id.*  Indeed, if defendants' construction of Nielsen's April 2019 Delegation were correct, McAleenan would have had little reason for his own effort in the

November 2019 Delegation to expand the scenarios in which Annex A controlled the line of succession for the Office of Secretary.

The undisputed facts and administrative record make clear that neither McAleenan nor Wolf possessed lawful authority to serve as Acting Secretaries of Homeland Security.[7] Accordingly, the Timeline Repeal Rule and EAD Bar Rule promulgated during Wolf's tenure as Acting Secretary have "no force or effect" under the FVRA, 5 U.S.C. § 3348(d)(1), and were issued "in excess of . . . authority" under the APA, 5 U.S.C. § 706(2)(C).

**B.    Ratification of the Timeline Repeal Rule Is Statutorily Barred**

In light of the determination that Wolf could not lawfully wield authority as Acting Secretary, plaintiffs next urge vacatur of both the Timeline Repeal Rule and the EAD Bar Rule as void *ab initio*.  *See* Pls.' Mem. 43-45.  No effort has been made to ratify the EAD Bar Rule, Pls.' SMF ¶ 254, but Secretary Mayorkas took the step of ratifying the Timeline Repeal Rule in May 2021, *id.* ¶ 253; *see also* Defs.' Reply Mot. Stay, Ex. 1 (May 4, 2021 Ratification Order).

---

[7]    In *Northwest Immigrant Rights Project*, another Judge on this Court agreed with an argument presented in that case by the government—contrary to this Court's holding, *supra* in Part III.A—that the plaintiffs were "not likely to succeed on the merits of their claim that Nielsen's flawed appointment of McAleenan" rendered invalid a DHS rule subsequently enacted during Wolf's tenure as Acting Secretary.  496 F. Supp. 3d at 61.  Central to that conclusion was a series of measures taken by then-FEMA Administrator Peter Gaynor, who, purportedly "in response to both the ongoing litigation and the GAO opinion" finding Wolf's appointment invalid, assumed the office of Acting Secretary in the fall of 2020, further amended the line of succession, and issued delegation orders authorizing Wolf to ratify his prior actions as Acting Secretary, including his approval of the rule at issue in that litigation.  *See id.* at 57; *id.* at 61 ("[T]he Court concludes that Wolf's ratification was likely effective, at least to the extent that he was serving lawfully after Gaynor purported to amend the order of succession.").

In this case, defendants have abandoned any such theory that earlier ratifications, or other purported actions, by either Gaynor or Wolf may salvage the validity of the Timeline Repeal Rule and EAD Bar Rule.  *See* Defs.' Mem. at 14 n.3 (noting that, "[w]hile the Department of Homeland Security . . . undertook a series of measures to have Wolf ratify his and Acting Secretary McAleenan's prior actions," defendants "do[] not present any argument regarding those ratifications in this brief"); *see also Pangea Legal Servs.*, 512 F. Supp. 3d at 975 ("Gaynor could not have designated Wolf to be Acting Secretary, and . . . Wolf's effort to ratify his . . . actions as Acting Secretary is of no moment legally."); *Batalla Vidal*, 501 F. Supp. 3d at 132-33 (same).  Accordingly, defendants argue here that *only* Secretary Mayorkas's May 2021 ratification of the Timeline Bar Rule had legal consequence.  *See* Defs.' Mem. at 28-33; Defs.' Opp'n at 2-9.  In any event, *Northwest Immigrant Rights Project* ultimately held that Wolf's designation as Acting Secretary was ineffective, and the rule at issue there "adopted without lawful authority," on the alternative basis—not briefed by the parties in this case—that Wolf was designated Acting Secretary by another Acting Secretary and, under § 113(g)(2) of the HSA, an "Acting Secretary *may not* amend the Department's order of succession."  496 F. Supp. 3d at 70 (emphasis added).

In plaintiffs' view, Secretary Mayorkas's May 2021 ratification of the Timeline Repeal Rule is ineffective because, *inter alia*, "the FVRA's anti-ratification penalty still prohibited anyone else from ratifying the rule."  Pls.' Mem. at 42.  Defendants counter that even if Wolf's appointment was improper, FVRA's § 3348(d) nevertheless "does not prohibit ratification of the Timeline Repeal Rule," Defs.' Mem. at 29, and thus Secretary Mayorkas's May 2021 ratification "cures any alleged defects in the rule arising" from Wolf's service as Acting Secretary, *id.* at 28.  Specifically, defendants contend that the § 3348(d) anti-ratification provision "does not encompass functions or duties that may be delegated to other officials," such as the Secretary's rulemaking authority.  *Id.* at 30.  Defendants' reading of the statute, however, is inconsistent with both the plain terms and purpose of the FVRA.  The Court thus agrees with plaintiffs that Secretary Mayorkas's May 2021 ratification of the Timeline Repeal Rule did not cure that rule's approval and issuance by Wolf, who was never lawfully designated Acting Secretary.

The FVRA's anti-ratification provision has two subsections.  The first subsection provides broadly that an "action taken by any person who is not acting under section 3345, 3346, or 3347 . . . in the performance of any function or duty of a vacant office" to which the FVRA applies "shall have no force or effect."  5 U.S.C. § 3348(d)(1).  The second subsection specifies that an "action that has no force or effect under" § 3348(d)(1) "may *not* be ratified."  *Id*. § 3348(d)(2) (emphasis added).  Here, the parties do not dispute that "the FVRA applies to the Office of the Secretary, and thus the [first subsection] giving 'no force or effect' to the actions of acting officials serving unlawfully applies to McAleenan and Wolf," even though both men assumed office pursuant to the Secretary's authority, under the HSA, to designate a further order of succession, as provided in 6 U.S.C. § 113(g)(2).  *Nw. Imm. Rights. Proj.*, 496 F. Supp. 3d at

59.[8]   Instead, the parties clash over the scope of what constitutes a "function or duty" for purposes of § 3348(d)(1), which phrase is defined, in relevant part in another FVRA section, as "any function or duty of the applicable office that . . . is established by statute[] and . . . is required by statute to be performed by the applicable officer (and only that officer)."  5 U.S.C. § 3348(a)(2)(A)(i)-(ii).

Defendants posit that the covered "functions or duties" include only those that are nondelegable, *see* Defs.' Mem. at 30, because, as defined in § 3348(a)(2)(A)(i)-(ii), the duty or function "must be statutorily 'required' to be 'performed' . . . by *only* that officer," Defs.' Opp'n at 3 (quoting 5 U.S.C. § 3348(a)(2)(A)(ii)) (emphasis added).  Based on that narrow construction of the statutory text, defendants assert that, since the DHS Secretary may delegate to others the responsibility of issuing rules like the Timeline Repeal Rule, *id.* at 2 (quoting 6 U.S.C. § 112(b)(1)), Wolf's promulgation of the rule was "not a function or duty as defined by § 3348(a)(2) and thus [is] not subject to the Federal Vacancies Reform Act's ratification bar," Defs.' Mem. at 33.  Plaintiffs respond that the "FVRA does not define 'function or duty' of a vacant office in terms of what can be delegated" and, in any event, the "FVRA's plain text dictates that the anti-ratification provision applies to all statutorily prescribed functions of a given office."  Pls.' Opp'n at 38.

---

[8]        The parties' agreement on this point is correct.  As noted *supra* in Part I.A.1, § 3347(a) of the FVRA contemplates that the FVRA remains the default framework for authorizing an official temporarily to assume a role requiring nomination by the President and confirmation by the Senate *unless* "a statutory provision expressly . . . authorizes the President, a court, or the head of an Executive department, to designate an officer or employee to perform the functions of a specified office temporarily in an acting capacity" or "designates an officer or employee to perform the functions and duties of a specified office temporarily in an acting capacity."  5 U.S.C. § 3347(a)(1)(A)-(B).  The HSA is such "a statutory provision expressly," *id.* § 3347(a)(1)(A), identifying additional DHS officers to serve as Acting Secretary and also authorizing the DHS Secretary to designate a further order of succession beyond that delineated by the FVRA and HSA.  *See* 6 U.S.C. § 113(a)(1), (g)(2).  While Secretary Nielsen's designation of McAleenan as Acting Secretary directly emanated from her HSA authority, the FVRA's anti-ratification provision "does not by its terms apply only to acting officials designated to serve pursuant to the FVRA, but, rather, applies to a 'vacant office to which' the FVRA applies."  *Nw. Imm. Rights Proj.*, 496 F. Supp. 3d at 58 (quoting 5 U.S.C. § 3348(d)).

Defendants are correct up to a point: the DHS Secretary indeed retains wide discretion to "delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department."  6 U.S.C. § 112(b)(1).  The Immigration and Nationality Act also indisputably grants the DHS Secretary general rulemaking authority to issue regulations affecting asylum seekers' access to EADs like those plaintiffs challenge here, *see* 8 U.S.C. § 1103(a), and plaintiffs point to no statutory provision limiting the Secretary's ability to delegate this rulemaking function, *see* Pls.' Opp'n at 39-40.  Nevertheless, the Court is unpersuaded that the delegable nature of the Secretary's rulemaking power makes the FVRA's anti-ratification provision wholly inapplicable to rules promulgated by an officer without lawful authority.

To start, the FVRA does not limit the functions and duties subject to 5 U.S.C. § 3348(d) to only those denominated as "nondelegable," a word that "appears nowhere in the statute." *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 33 (D.D.C. 2020); *see also Behring Regional Ctr. LLC v. Wolf*, No. 20-cv-09263-JSC, 2021 WL 2554051, at *8 (finding that an argument identical to defendants' "is foreclosed by the FVRA's plain and unambiguous language"), *appeal dismissed*, No. 21-16421 (9th Cir., Jan. 7, 2022).  Defendants' import of a stringent "nondelegable" function or duty limitation into § 3348(d) is also contrary to both the Supreme Court's and the D.C. Circuit's broader, plain meaning construction of § 3348(d).  In *NLRB v. SW General, Inc.*, the Supreme Court noted that the "FVRA ensures compliance by providing that, in general, '*any* function or duty of a vacant office' performed by a person not properly serving under the statute 'shall have no force or effect.'"  137 S. Ct. at 937 (quoting 5 U.S.C. § 3348(d)(1)) (emphasis supplied).  During earlier proceedings in the same case, the D.C. Circuit likewise noted that the "FVRA renders *any* action taken in violation of the statute void *ab initio*."  *SW General, Inc.*, 796 F.3d at 78, *aff'd*, 137 S. Ct. 929 (2017) (emphasis added).  Other Circuits across the country

have adopted similarly broad understandings of § 3348(d).  *See, e.g.*, *NLRB v. Newark Elec. Corp.*, 14 F.4th 152, 161 (2nd Cir. 2021) ("In other words, under section 3348, if an official who is exercising the duties of a vacant office in an acting capacity does not meet the requirements of sections 3345, 3346, or 3347, then that official's actions have no force or effect and cannot be ratified.").

Moreover, in crafting § 3348, Congress expressly exempted from its reach several offices, including the General Counsel of both the National Labor Relations Board and Federal Labor Relations Authority, as well as any Senate-confirmed Inspector General and Chief Financial Officer.  5 U.S.C. § 3348(e).  Under defendants' construction of the statute, the DHS Secretary would be functionally added to that list of exempted officials since most, if not all, of his functions and duties are delegable and thus none would be covered by the FVRA's non-ratification provision.  *See Behring*, 2021 WL 2554051, at *6.  Put another way, defendants' proposed construction of § 3348(d) would largely insulate the Office of DHS Secretary from the key enforcement mechanism Congress expressly provided in the FVRA.  The Court thus agrees with plaintiffs that accepting defendants' interpretation of the statutory language "would eviscerate the FVRA's remedial scheme."  Pls.' Opp'n at 41.

Restricting the coverage of § 3348(d) to solely nondelegable functions and duties would also contravene Congress's stated purpose in enacting the FVRA.  The FVRA "was framed as a reclamation of the Congress's Appointments Clause power," *SW Gen. Inc.*, 796 F.3d at 70, and legislated in reaction to *Doolin Security Savings Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998).  In *Doolin*, the D.C. Circuit deployed the ratification doctrine expansively to uphold an enforcement action initiated by an acting officer without first deciding whether the acting officer lawfully occupied his position.  *See* 139 F.3d at 214; *see also* 144

20

Cong. Rec. S6414 (noting "[i]t is extremely important to . . . impose a sanction for noncompliance" in the FVRA and that "[o]verruling several portions of [*Doolin*] have [sic.] become a priority); *id.* ("Actions taken by any acting official in violation of [the FVRA] would be of no effect, and no one would be permitted to ratify the actions of the acting official that were taken in violation of the vacant office provisions."). As such, the "FVRA's prohibition on ratification was designed to prevent the practice of a properly appointed official reissuing a decision taken in violation of FVRA provisions." *Pub. Emp. for Envtl. Responsibility v. Nat'l Park Serv.*, No. 19-cv-3629 (RC), 2021 WL 1198047, at *15 (D.D.C. March 30, 2021); *see also L.M.-M.*, 442 F. Supp. 3d at 34 (noting that the construction of § 3348(d) defendants propose here "is at odds with the statutory purpose of the FVRA"). That is precisely the factual backdrop to this litigation.

Notwithstanding the FVRA's plain terms and stated purpose, defendants rely on a recent D.C. Circuit case, *Guedes v. ATF*, to argue more broadly that "a properly appointed official's ratification of an allegedly improper official's prior actions . . . resolves the claim on the merits." Defs.' Mem. at 28 (quoting 920 F.3d 1, 13 (D.C. Cir. 2019)). This decision, however, is of no avail to defendants. In *Guedes*, which involved an APA challenge to a rule issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the plaintiff conceded the validity of the Attorney General's ratification of the challenged rule for purposes of both his statutory and Appointments Clause claims and, consequently, the effectiveness of the ratification was neither litigated nor at issue. 920 F.3d at 12. *Guedes* therefore provides no precedential force in resolving the parties' competing interpretations of the FVRA's anti-ratification provision. *See Nw. Imm. Rights Proj.*, 496 F. Supp. 3d at 61 (agreeing that *Guedes* "does not establish a binding rule" regarding the effect of ratifying agency rules issued by unauthorized officers).

In sum, the Court concludes that the § 3348(d)(2) ratification bar applies to all unauthorized actions taken "in the performance of any function or duty of a vacant office," regardless of whether such functions or duties may be delegated.  As a result of the statutory anti-ratification bar, the Timeline Repeal Rule, which was approved and issued by Wolf while unlawfully serving as Acting Secretary, has "no force or effect," *see* 5 U.S.C. § 3348(d)(1), and as an action without "force or effect under" the FVRA, it could not be ratified, *see id.* § 3348(d)(2).  Despite Secretary Mayorkas's purported May 2021 ratification, the Timeline Repeal Rule thus remains void.

***

The parties in this case give little attention to the scope of the remedy following a determination that the Timeline Repeal Rule and EAD Bar Rule are void *ab initio*.  Plaintiffs simply argue that both rules should be vacated "in their entirety," *see* Pls.' Mem. 43-45, while defendants are silent on the remedy should the Court determine, as it has, that Wolf lacked authority to promulgate the challenged regulations.

Upon reaching the conclusion that agency regulations are unlawful and void, vacatur is the "normal remedy," *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1110 (D.C. Cir. 2014), and the "ordinary result" is that the rules are set aside in full— "not that their application to the individual petitioners is proscribed," *National Min. Ass'n v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998) (quoting *Harmon v. Thornburgh*, 878 F.2d 484, 495 n.21 (D.C. Cir. 1989)).  In keeping with this general, longstanding principle, other courts holding that Wolf did not lawfully serve as Acting Secretary have vacated the challenged agency actions at issue in those cases that had been promulgated under his unlawful tenure.  *See, e.g.*, *Batalla Vidal v. Wolf*, 17-cv-5228 (NGG), 2020 WL 7121849, at *1 (E.D.N.Y. Dec. 4, 2020) ("[B]ecause Mr.

Wolf was without lawful authority to serve as Acting Secretary of DHS, the Wolf Memorandum is VACATED.").  Here, because the Timeline Repeal Rule and EAD Bar Rule "have no force or effect," 5 U.S.C. § 3348(d)(1), they must also be vacated and "set aside" as actions taken "in excess of statutory . . . authority," 5 U.S.C. § 706(2)(C).

The Court is mindful of its discretion "in limited circumstances" to "remand without vacating the agency's action," guided by consideration, first, of "the seriousness of the action's deficiencies and, second, [by] the likely disruptive consequences of vacatur." *American Great Lakes Ports Ass. v. Schultz*, 962 F.3d 510, 519 (D.C. Cir. 2020) (internal quotations omitted). Such an approach is not without critics.  *See Comcast Corp. v. FCC*, 579 F.3d 1, 10 (D.C. Cir. 2009) (Randolph, J., concurring) (positing, based on the plain text of 5 U.S.C. § 706(2), "that whenever a reviewing court finds an administrative rule or order unlawful, the Administrative Procedure Act requires the court to vacate the agency's action"); *Milk Train, Inc. v. Veneman*, 310 F.3d 747, 757 (D.C. Cir. 2002) (Sentelle, J., dissenting) (same); *Checkosky v. SEC*, 23 F.3d 452, 491 (D.C. Cir. 1994) (Randolph, J., concurring) (same).  Nevertheless, the D.C. Circuit has recently cautioned that "remand without vacatur remains an exceptional remedy," *American Great Lakes Ports Ass.*, 962 F.3d at 519, and is usually appropriate only when, unlike the circumstances in this case, an agency action's defect "lay in the lack of reasoned decisionmaking" or "the order was otherwise arbitrary and capricious," *Int'l Union, UMW v. FMSHA*, 920 F.2d 960, 966 (D.C. Cir. 1990); *see also United Steel v. Mine Safety & Health Administration*, 925 F.3d 1279, 1287 (D.C. Cir. 2019) ("In rare cases . . . we do not vacate the action but instead remand for the agency to correct its errors.").  When "the deficiencies that the court has identified are substantively fatal"—such as the issuance of the challenged rules here without lawful authority and in violation of the FVRA—"it is clear beyond cavil that the

common practice is to vacate the agency's [action]." *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 51 (D.D.C. 2020) (Brown Jackson, J.).

The plain terms of the FVRA remove remedial discretion by directing that unlawful actions under that statute are void *ab initio*, thereby rendering the rules without "force or effect" and requiring vacatur. *See* 5 U.S.C. § 3348(d)(1); *cf. FCC v. NextWave Personal Comms. Inc.*, 537 U.S. 293, 300 (2003) ("In all cases agency action must be set aside if the action . . . failed to meet statutory, procedural, or constitutional requirements."). Perhaps cognizant that no remedy other than vacatur is appropriate should plaintiffs prevail on their FVRA claim, defendants offer no argument for remand without vacatur or attempt to show vacatur's "likely disruptive consequences" as to either regulation. *American Great Lakes Ports Ass*., 962 F.3d at 519. Defendants' silence speaks volumes as to the required remedy. In any event, remand without vacatur would be entirely ineffective here: the appointments defect identified in the challenged rules cannot be cured through improved agency decisionmaking because the rules are instead void *ab initio* since they were rendered in violation of the FVRA during the tenure of an Acting Secretary who could not lawfully exercise authority as head of DHS. *SW Gen., Inc.*, 137 S. Ct. at 938 n.2.

Following the normal course upon determining that a regulation was issued in excess of statutory authority, 5 U.S.C. § 706(2)(c), and in accordance with the remedy that Congress specifically prescribed in the FVRA, 5 U.S.C. § 3348(d), both the Timeline Repeal Rule and EAD Bar Rule are therefore vacated. Given that plaintiffs' remaining claims challenging these same two rules are now moot, this case is resolved and will be closed.

IV.     **CONCLUSION**

For the foregoing reasons, plaintiffs are entitled to summary judgment, and the Timeline

Repeal Rule and EAD Bar Rule must be vacated under both the FVRA, 5 U.S.C. § 3348(d)(1),

and the APA, 5 U.S.C. § 706(2)(C).  Accordingly, plaintiffs' motion for summary judgment,

ECF No. 25, is GRANTED, and defendants' cross-motion, ECF No. 28, is DENIED.  An order

consistent with this Memorandum Opinion will be filed contemporaneously.

Date:  February 7, 2022

_____
BERYL A. HOWELL
Chief Judge