# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASYLUMWORKS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> ALEJANDRO N. MAYORKAS, in his official capacity as the Secretary of Homeland Security, *et al.*, <br><br> Defendants. | No. 2020-cv-03815-BAH |

## PLAINTIFFS' MOTION TO ENFORCE JUDGMENT
## OR FOR ADDITIONAL INJUNCTIVE RELIEF

In February 2022, this Court entered judgment in favor of Plaintiffs and ordered that two unlawful U.S. Department of Homeland Security ("DHS") rules be vacated and set aside. Dkts. 41-42. The vacated rules are: *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants*, 85 Fed. Reg. 37,502, *et seq.* (June 22, 2020) ("Timeline Repeal Rule") and *Asylum Application, Interview, and Employment Authorization for Applicants*, 85 Fed. Reg. 38,532, *et seq.* (June 26, 2020) ("EAD Bar Rule") (collectively, "the Rules"). Finding the promulgation of both rules to be an unlawful exercise of authority enacted by an illegitimate Acting Secretary, this Court determined that the Rules were void *ab initio*. Dkt. 42.

Defendants have failed to comply with this Court's order vacating and voiding *ab initio* the Rules. Indeed, though they have conceded that this Court's order compels them to take certain actions, those actions are incomplete. Specifically, in light of the vacatur, Defendants acknowledge that they ultimately intend to (i) update the online Code of Federal Regulations

website known as the eCFR; (ii) amend the Form I-765 Application for Employment Authorization ("Form") and the accompanying Instructions For Application of Employment Authorization ("Form Instructions") that appear on the United States Citizenship and Immigration Services ("USCIS") website; and (iii) process Employment Authorization Document ("EAD") applications according to the previously existing regulations, which required, among other things, adjudication within thirty days. *See* Declaration of Deepa Acharya ("Acharya Decl.") Ex. N (acknowledging the need to make certain changes and describing the process as "ongoing"); Declaration of Zachary Manfredi ("Manfredi Decl.") Exs. A–B (describing concessions made by DHS in *Casa de Maryland v. Wolf*, Case No. 8:20-cv-02118-PX (D. Md.) and attaching two letters documenting the government's position as stated in that case).[1] But more than five months have passed since this Court issued its order, and Defendants remain delinquent in making these changes. And although Defendants state that they hope to make some changes by October, even that timeline is "tentative." *See* Acharya Decl. Ex. O (explaining that the October target for amending the eCFR is "tentative" and "not set in stone"); Manfredi Decl. Ex. C (*Casa de Maryland* court telling the government that "if you are really in the business of following *Asylum works* [sic], then [updating the Form and Form Instructions] has to be a higher priority").

Plaintiffs have attempted to engage with Defendants on these issues for months, but the parties have not been able to resolve the issues. *See* Acharya Decl. Exs. K–O (documenting attempts to communicate). Plaintiffs now seek enforcement of the Court's order, or in the alternative, an order providing for additional injunctive relief to prevent ongoing reliance on the now-vacated Rules. Specifically, Plaintiffs request that this Court issue an order (a) declaring that

---

[1] Unless otherwise noted, internal citations, quotation marks, and alterations are omitted from citations in this memorandum of law.

Defendants have failed to comply with the Court's decision (Dkts. 41-42); (b) requiring immediate amendment of the eCFR to reflect the regulations now in effect so that platforms such as Westlaw and LexisNexis may be updated accordingly; (c) compelling Defendants to immediately revise the I-765 Form, accompanying Form Instructions, and relevant agency guidance; and (d) directing Defendants to process applications in accordance with the effective rules, including by instructing that all applications be adjudicated within thirty days of their filing date or within fifteen days of this Court's order for any application that has been pending for longer than thirty days. These actions are necessary to comply with this Court's decision.

## BACKGROUND

### I.    Legal Challenge and this Court's Order

In December 2020, Plaintiffs challenged two rules relating to EAD applications for asylum seekers issued by DHS earlier that year. Dkt. 3; *see also* Dkt. 12 (Amended Complaint). Plaintiffs alleged, *inter alia*, that the rules were invalid because they had been promulgated under the authority of Chad Wolf, who was, at the time, unlawfully serving as Acting Secretary of DHS in violation of the Homeland Security Act ("HSA"), the Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause of the Constitution. *Id.* Plaintiffs alleged that any action taken or rules promulgated during Wolf's unlawful tenure must be deemed invalid and void *ab initio*. This Court agreed. *See* Dkts. 41-42.

A series of illegitimate actions led to Wolf's elevation to Acting Secretary of Homeland Security in late 2019. The critical question in this case was whether Wolf properly attained the role of Acting Secretary despite having been elevated via an improper order promulgated by his predecessor, Kevin McAleenan, who himself had similarly been improperly elevated to the position. As the Court aptly put it, "the answer is no." Dkt. 42 at 13. This Court found McAleenan's initial assumption of Acting Secretary duties unlawful because the "unambiguous

terms of [a preceding] April 2019 Delegation" meant that McAleenan could properly serve as Acting Secretary "only 'during a disaster or catastrophic emergency.'" *Id.* at 14. Because McAleenan himself "possessed no authority to be Acting Secretary," this Court found that he was not permitted to issue the November Delegation that ultimately placed Wolf in the Acting Secretary role. *Id.* at 14–15. This Court held that "Wolf's ascension to the office of Acting Secretary was unlawful." *Id.* at 2.

This Court concluded that because "neither McAleenan nor Wolf possessed lawful authority to serve as Acting Secretaries of Homeland Security," any action they had taken during their respective tenures had "no force or effect" under the FVRA. Dkt. 42 at 16; *see* 5 U.S.C. § 3348(d)(1). Even though the FVRA specifies that an action having "no force or effect" under § 3348(d)(1) "may not be ratified," 5 U.S.C. § 3348(d)(2), current DHS Secretary Alejandro Mayorkas attempted to ratify the Timeline Repeal Rule in May 2021. DHS claimed that this ratification cured that Rule's initial defect, but this Court disagreed. It determined that "Defendants' reading of the statute [was] . . . inconsistent with both the plain terms and purpose of the FVRA," and held that Secretary Mayorkas' ratification "did not cure that rule's approval and issuance by Wolf, who was never lawfully designated Acting Secretary." Dkt. 42 at 17.

Accordingly, this Court determined that (i) both the Timeline Repeal Rule and the EAD Bar Rule are void *ab initio*, and (ii) Secretary Mayorkas' ratification of the Timeline Repeal Rule had no effect. Dkt. 42 at 22. Finding that a remedy of simple remand would be "entirely ineffective" because "the appointments defect identified in the challenged Rules cannot be cured through improved agency decisionmaking," the Court granted Plaintiffs' request for vacatur. *Id.* at 24. The result of this vacatur was to restore the previously existing regulations to force and

effect.  *See AFL-CIO v. Chao*, 496 F. Supp. 2d 76, 85 (D.D.C. 2007) (stating that vacatur "reinstate[s] the prior regulatory regime").

## II.    <u>Ongoing Reliance on the Vacated Rules</u>

This Court's decision became final on April 8, 2022, when Defendants elected not to appeal.  *See* 28 U.S.C. § 2107(b) (setting 60-day appeal window when one of the parties is a United States agency); Dkt. 42 (Memorandum Opinion filed February 7, 2022).  In at least four ways, DHS continues to violate this Court's decision.

First, Defendants have failed to update the eCFR to make it clear that the rules that existed before the now-vacated Rules are currently in effect.  *See* 8 C.F.R. §§ 208, 274a (2022).  As a result, the eCFR as well as websites that post federal regulations and services like Westlaw and LexisNexis continue to point lawyers to the vacated Rules.  Amending the eCFR should not be complicated.  *See* Manfredi Decl. Ex. C, at 9:20 (*Casa de Maryland* court observing that updating the eCFR website "doesn't seem to be that hard.").  In other circumstances when presented with a vacated rule, DHS has taken action to document and implement the vacatur of a challenged rule within days.  *See, e.g.*, *Inadmissibility on Public Charge Grounds; Implementation of Vacatur*, 86 Fed. Reg. 14,221 (Mar. 2021) (publishing notice to the Federal Register one week after a district court's vacatur of the Public Charge Rule took effect).  Here, by contrast, Defendants refuse to take expeditious action to update the eCFR and instead indicate that the earliest they *may* post a notice updating about the vacatur on the Federal Register would be October of 2022.  *See* Manfredi Decl. Ex. B; Acharya Decl. Ex. O.

Second, Defendants have not updated the application form required for those seeking an EAD.  As of the date of this filing, the current version of the I-765 Form—the May 31, 2022 edition, which can be renewed in its current form upon its expiration on August 31, 2022—instructs asylum applicants to answer numerous questions that have no bearing on EAD eligibility

*except* under the now-vacated Rules. *See* Acharya Decl. Exs. B–C; Declaration of Richard Caldarone ("Caldarone Decl.") ¶¶ 7–10. In a Federal Register notice published April 5, 2022, Defendants invited public comment on the August 25, 2020 edition of the Form that had been issued as a means of implementing the Rules. *See* Acharya Decl. Ex. G. When it sought comment on that edition, DHS posted it without change. *Id.* The period of public comment lapsed on June 6, 2022, and revised editions of the Form and Instructions have not been promulgated. *Id.* After the close of that comment period, on July 8, 2022, USCIS posted yet another draft version of the Form, without acknowledging the comments it had received in the just-closed period, and that version of the Form *still* asks questions that are relevant only under the now-vacated EAD Bar Rule. *See* Acharya Decl. Ex. A.

Moreover, the Form Instructions continue to leave applicants with the false impression that the Rules remain in place. The instructions make no mention of this Court's decision and instead continue to instruct asylum applicants that their eligibility for an EAD is subject to the now-vacated Rules. *See* Caldarone Decl. ¶ 8; Declaration of Joan Hodges-Wu ("Hodges-Wu Decl.") ¶ 6; Acharya Decl. Ex. C. at 2 (stating, *e.g.*, that applicants under category (c)(8), which applies to asylum seekers, must "[w]ait 365 calendar days from the date you properly file and USCIS or the Immigration Court accepts your asylum application before you file your application for employment authorization"). Although USCIS acknowledges on its "Asylum Works webpage" that category (c)(8) EAD applicants are not required to respond to certain questions that derive from the vacated Rules, applicants will not find that information in the current edition of the Form and Form Instructions. *See* Acharya Decl. Ex. H; Caldarone Decl. ¶¶ 7–11; Hodges-Wu Decl. ¶¶ 6–8. In fact, the currently-accessible version of the Form Instructions instructs applicants to fill

out questions pertaining to manner of entry, a detail relevant *only* under the now-vacated Rules. *See* Caldarone Decl. ¶ 7; Acharya Decl. Ex. C at 23–24.

Third, Plaintiffs and their clients and *pro bono* attorneys have experienced confusion regarding the EAD application processing procedures for those who became members of the organizations who were plaintiffs in the *Casa de Maryland* case.  The government has stated its position that "USCIS is no longer making any distinction in processing as between CASA/ASAP members and all other initial c8 EAD applicants."  *See* Acharya Decl. Ex. N.  Yet the USCIS website still contains information regarding such membership, *see id.* Ex. J; and many attorneys feel compelled to take the additional step of signing their clients up as members.  *See* Hodges-Wu Decl. ¶ 11; Caldarone Decl. ¶ 17.  The information on the USCIS website continues to generate confusion, and plaintiffs in this case have had to expend significant time and resources to educate clients, staff, and volunteer *pro bono* attorneys about how to proceed in filing EAD applications. *See id.*

Finally, Defendants continue to delay in adjudicating EAD applications.  Since the February order, Plaintiffs have learned of numerous instances where EAD applications were pending for longer than thirty days.  Caldarone Decl. ¶ 18; Hodges-Wu Decl. ¶ 13.  The government concedes that this Court's decision requires reversion to the Agency's prior rule of processing EAD applications within thirty days, but it has not implemented a system to do so.  *See* Acharya Decl. Ex. N ("USCIS is presently working to resolve the significant backlog of initial c8 EAD cases that became subject to the *Rosario* [*v. USCIS*, Case No. 2:15-cv-00813-JLR (W.D. Wash.)] injunction following the vacatur."); Declaration of Emma Winger ("Winger Decl.") Ex. A (compliance data indicating that in June 2022, 6.1% of applications were processed within thirty days).

Plaintiffs have repeatedly asked Defendants what steps they would take to comply with the Court's order and when they would do so, to no avail.  On April 19, 2022, Plaintiffs' counsel Keren Zwick initially communicated with Defendants regarding the aforementioned deficiencies.  *See* Acharya Decl. Ex. K.  Plaintiffs again raised these issues via additional correspondence on June 9 and June 30, 2022.  *See* Acharya Decl. Exs. L–M.  Defendants responded on July 13 and again on July 20 and July 21, but those responses do not reflect an intention to promptly correct these issues on an appropriate timeline.  *See* Acharya Decl. Exs. N–O.

As the outdated I-765 Form and Form Instructions, the continued reference to the vacated Rules in the eCFR, and the ongoing delays in adjudication demonstrate, Defendants have failed to comply with the Court's order.  Indeed, as the *Casa de Maryland* court has observed, if the government were "really in the business of following *Asylum works* [sic]," then it would make these changes "a higher priority."  Manfredi Decl. Ex. C, at 26:23–24.  Defendants failed to prioritize complying with the Court's order.  Because time remains of the essence for asylum seekers in need of employment authorization, Defendants' failures have forced Plaintiffs to file this Motion seeking to enforce the Court's February decision.

## LEGAL STANDARD

This Court has broad authority to protect and enforce its judgments.  *See, e.g.*, *United States v. Baroid Corp.*, 346 F. Supp. 2d 138 (D.D.C. 2004) (citing *Central of Georgia R. Co. v. U.S.*, 410 F. Supp. 354, 357 (D.D.C. 1976)).  This authority is grounded in "the interest of the judicial branch in seeing that an unambiguous mandate is not blatantly disregarded."  *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984).  And a court can exercise such authority without indicating that it intends to "retain" the jurisdiction necessary to ensure compliance.  *Central of Georgia R. Co.*, 410 F. Supp. at 358.

Exercising this authority is especially appropriate "when a case returns to a court on a motion to enforce the terms of its mandate to an administrative agency." *Flaherty v. Pritzker*, 17 F. Supp. 3d 52, 55 (D.D.C. 2014); *see also Yanofsky v. Dep't of Commerce*, 2019 WL 5110502 (D.D.C. Apr. 25, 2019). When necessary, courts may set deadlines to compel performance. *Nat. Res. Def. Council, Inc. v. Train*, 510 F.2d 692, 705 (D.C. Cir. 1974); *accord New York Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 225 (2d Cir. 2021).

A motion to enforce is the proper method to compel compliance with a rendered judgment. *See Select Specialty Hosp.-Denver, Inc. v. Becerra*, 2021 WL 4262652, at *7 (D.D.C. Sept. 20, 2021) (Howell, C.J.) (citing *Burns v. Anderson*, 2021 WL 1840368, at *2 (D.D.C. May 7, 2021), *appeal dismissed*, 2021 WL 8649717 (D.C. Cir. Dec. 21, 2021), *and aff'd*, 2022 WL 1232206 (D.C. Cir. Apr. 26, 2022)). Such a motion should be granted when a "prevailing plaintiff demonstrates that a defendant has not complied with a judgment entered against it." *Sierra Club v. McCarthy*, 61 F. Supp. 3d 35, 39 (D.D.C. 2014) (quoting *Heartland Hosp. v. Thompson*, 328 F. Supp. 2d 8, 11 (D.D.C. 2004)); *see also Burns*, 2021 WL 1840368, at *2. Further, courts can interpret not only the text of their original orders but also opinions handed down in the case. *See City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977). This power corresponds to the ability to "construe and interpret the language of the judgment" to give effect to the relief originally granted. *See Yanofsky*, 2019 WL 5110502 at *2.

Accordingly, this Court is permitted to enforce its judgment against Defendants in this case. To do so, it may hold violators in contempt of court, *Shillitani v. United States*, 384 U.S. 364, 370 (1966), impose remedial tools such as "monetary penalties or attorney discipline," *State Farm Fire & Cas. Co. v. U.S.*, 137 S. Ct. 436, 444 (2016), and order other declaratory relief as it

deems appropriate, 28 U.S.C. §§ 2201, 2202.  Further, this Court retains the power to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).

## ARGUMENT

I.  **Defendants Should be Compelled to Update the eCFR within Seven Days of this Court's Order.**

The eCFR is "a continuously updated online version of the CFR and provides enhanced features that are not part of the published CFR" and "provides a way of exploring the Code of Federal Regulations as it exists today."  *See* Acharya Decl. Ex. P; Caldarone Decl. ¶¶ 4–5.  As the government-controlled, regularly-updated online version of the CFR, the eCFR carries massive weight in a digital world.  Its inaccuracy is a major harm and makes legal research potentially confusing, and in some cases impossible, for the general public, especially for those who do not have lawyers.  This inaccuracy may have a chilling effect on asylum-based EAD applications, causing otherwise-eligible people not to even apply on the basis of inaccurate information.

Other resources like GovInfo's 2021 CFR content remain inaccurate, compounding the issue.  *See, e.g.*, Acharya Decl. Ex. Q.  This confusion will especially impact *pro se* applicants and those with private lawyers who may not exclusively focus on asylum issues, resulting in tangible harm to these asylum-seekers.[2]  This concern is particularly well founded for *pro se* applicants and

---

[2]  A measure of just how much confusion the government's inaction will engender is shown by another set of asylum regulations that the government continues to display as effective in the eCFR even though the application of those regulations has been enjoined since January 2021.  *See Pangea Legal Servs. v. DHS*, Case No. 3:20-cv-9258 (N.D. Cal.), Dkt. 55 (Jan. 8, 2021).  Since then, more than 30 federal court decisions have expressly cited those enjoined regulations as good law. *See, e.g.*, *Tomas-Ramos v. Garland*, 24 F.4th 973, 978 n.2, 984 (4th Cir. 2022) (repeatedly relying on the enjoined version of 8 C.F.R. § 208.30(e)(1)-(3)); *Gutierrez v. Garland*, 12 F.4th 496, 502 (5th Cir. 2021) (extensively quoting, and relying on, the enjoined version of 8 C.F.R. § 1208.18(a)(7)); *Quintanilla-Mejia v. Garland*, 3 F.4th 569, 594 (2d Cir. 2021) (same) *Farah v. U.S. Att'y Gen.*, 12 F.4th 1312, 1330 (11th Cir. 2021) (relying on 8 C.F.R. § 1208.16(b)(3)(iii), which was added by the enjoined rule); *Padilla-Franco v. Garland*, 999 F.3d 604, 608 (8th Cir. 2021) (same).

attorneys who do not pay for a subscription to Westlaw or a related service.  That option is not available for attorneys, many amongst the immigration bar, who cannot afford to pay for such a subscription.  *See* Caldarone Decl. ¶ 12.

As of the date of this Motion, the eCFR still included the vacated Rules as if they remained the law of the land, and thus the rules are not identified as vacated on Westlaw or other platforms. *See* Acharya Decl. Exs. Q–W; *see also id.* Ex. K.  The Government has stated its intent to change the eCFR in light of the Court's order, but as of more than five months later, the best it can do is offer a "tentative" amendment schedule for October 2022, ten months after this Court's decision. *See* Acharya Decl. Ex. O.  But the government is capable of rapidly updating the eCFR.  As the *Casa de Maryland* court recently observed, "[i]t doesn't seem to be that hard," and the government should be able to "bump that up to the top of the list and get it done."  Manfredi Decl. Ex. C, at 9:20, 10:8-9.  The government is in fact capable of bumping eCFR updates to the top of the list to comply with other court orders, as when it published a Federal Register notice to effectuate updates to the eCFR website to reflect vacatur of the Public Charge rule only one week after the court order vacating that decision took effect.  *See* 86 Fed. Reg. 14,221.  Defendants cannot seriously contend that they require ten months (from February to October 2022) to complete a simple task they have previously completed in a matter of days.  As such, Plaintiffs request that this Court compel Defendants to update the eCFR within seven days of this Court's order on this Motion by replacing the vacated Rules with the rules in effect the day before the vacated Rules were originally effectuated.

## II.    Defendants Must Make Necessary Changes to Form I-765, the Form Instructions, and the USCIS Website within Fifteen Days of this Court's Order.

USCIS currently requires applicants to use either the May 31, 2022 edition or the August 25, 2020 edition of the Form, which are substantially identical.  *See* Acharya Decl. Exs. B, D;

Caldarone Decl. at ¶ 6.  Moreover, applicants must comply with the posted May 31, 2022 edition of the Form Instructions, which, again, currently appear to be nearly (if not completely) identical to the August 25, 2020 edition.  *See* Acharya Decl. Exs. B, D.  Both currently accepted editions of the Form ask for information that is improper in light of the Court's order, and the Form Instructions contain affirmatively misleading information that must be removed.  *See id.* Exs. B, D (editions of Form I-765); *id*. Exs. C, E (editions of the Form Instructions); *id*. Ex. F, at 3 (listing dates of applicable forms); *see also Oceana, Inc. v. Ross*, 2020 WL 5239197, at *4–5 (C.D. Cal. Jan. 8, 2020) (granting motion to enforce after the government "misrepresent[ed] the Court's Order" to party with whom statute required government to consult).

The vacatur of the EAD Bar Rule rendered baseless several questions included on Form I-765.  Specifically, questions 30b, c, d, e, and g elicit information that was relevant only to the vacated Rules and not to adjudication under existing eligibility standards.  *See* Caldarone Decl. ¶ 7.  Those questions elicit information about whether an individual entered the United States after being inspected at a port of entry.  That issue was relevant to EAD eligibility only under the vacated EAD Bar Rule and no longer plays a part in EAD adjudication.

Additionally, the Form Instructions continue to reflect multiple restrictions derived from the vacated EAD Bar Rule: a one-year waiting period between applying for asylum and applying for employment authorization (*see* Acharya Decl. Ex. C, at 2, 4); conditioning EAD eligibility on an adjudicator's determination that any failure to have applied for asylum within a year of arrival is excused pursuant to a statutory exception (*id*. at 3); expanded bases for denial of an EAD on grounds related to criminal history,[3] including conduct that resulted in no conviction or a

---

[3]  Prior to 2020, an asylum-based EAD could be denied based on convictions that would also negate asylum eligibility, but the vacated Rules expanded consideration of other law enforcement encounters that would not bar asylum eligibility.  The present Form Instructions still call for

conviction outside the United States (*id.*); and certain expansions to evidentiary requirements predicated on the vacated Rules (*id.* at 4–5). These conditions on EAD eligibility no longer apply. *See* Caldarone Decl. ¶¶ 6–8; Hodges-Wu Decl. ¶ 6. Moreover, the Form Instructions expressly direct payment of a non-waivable $85 biometrics fee, which is another artifact of the vacated Rules. *See* Acharya Decl. Ex. C, at 26. The USCIS website contains an "Alert" (which an individual must expand to view in its entirety) noting that the biometrics fee is no longer required, *see id.* Ex. J, but the Form Instructions expressly contradict the "Alert."

Rather than promptly amending Form I-765 and the Form Instructions to conform to the Court's ruling, USCIS took nearly two months to publish a Federal Register notice entitled *Agency Information Collection Activities; Extension, Without Change, of a Currently Approved Collection: Application for Employment Authorization*, 87 Fed. Reg. 19,696 (Apr. 5, 2022), which called for public comment on the August 25, 2020 edition of the Form and Instructions without offering any necessary revisions by the agency. *See* Acharya Decl. Ex. G. USCIS later made a May 31, 2022 edition of the documents accessible on the rulemaking docket and on the "Forms" page of its website, which currently states that USCIS accepts either the August 2020 or May 2022 editions of the form. *See id.* at 6. And surprisingly, earlier this month, on July 8, 2022, USCIS issued another draft version of the I-765 Form, that *still* includes information that is no longer relevant. *See* Acharya Decl. Ex. A.

Neither existing edition of the Form complies with the Court's order, and even the most recent modifications reflect that USCIS is content to continue asking irrelevant, impermissible, and potentially harmful questions. The ongoing reliance on the vacated Rules throughout the Form

---

broader evidence than required by the rules that were restored by the Court's order. *See* Acharya Decl. Ex. C, at 3–4.

and Form Instructions deceives the public—including particularly vulnerable *pro se* asylum applicants—about the eligibility requirements for an asylum-based EAD.  Applicants may be delayed in or dissuaded from applying for an EAD by the additional evidentiary burdens derived from the vacated rules, or by the erroneous fee requirement.  As the *Casa de Maryland* court recently observed, the government's failure to update the form is fostering "utter confusion" among vulnerable asylum applicants in "really dire situations."  Manfredi Decl. Ex. C at 26:9–13. Further, applicants may unnecessarily share information that could harm them in later proceedings, such as reference to their manner of entry or to criminal charges that are ultimately downgraded or dismissed.  Failing to update the Form and Form Instructions also increases the potential for procedural errors, such as inadvertently attaching a biometrics fee, which could result in rejection of the application and additional delayed access to work authorization while the applicant refiles. *See* Acharya Decl. Ex. J ("We no longer require the biometric services fee and submitting it may cause us to reject your application for overpayment.").

The Government acknowledged the need to change the Form and Instructions "in light of the *Asylumworks* vacatur" in the *Casa de Maryland* case.  *See* Manfredi Decl. Ex. A, at 3.  DHS maintains that changing the Form and Form Instructions "is a complicated and time-consuming process," *id.*, but such complexities cannot come at the expense of asylum seekers who are mistakenly dissuaded from pursuing work authorization because of incorrect and outdated information on multiple official government documents and websites.

Given these ongoing issues with the Form and accompanying Form Instructions, this Court should compel USCIS to publish legally compliant versions of the Form and Form Instructions within fifteen days of this Court's order or show cause as to their failure to do so.  This correction

has already been delayed far too long, to the detriment and confusion of asylum applicants and their advocates.

These changes to the Form, Form Instructions, and USCIS website are within this Court's purview. Indeed, courts have even vacated agency guidance documents that do not comply with legal requirements when an agency "leads private parties … to believe" that the guidance is binding, as USCIS has done here. *See Appalachian Power v. Environmental Protection Agency*, 208 F.3d 1015, 1022 (D.C. Cir. 2000) (vacating guidance documents that agency "insist[ed] [that regulated actors] comply with"); *Kiakombua v. Wolf*, 498 F. Supp. 3d 1, 25, 33, 49–57 (D.D.C. 2020) (vacating USCIS "binding guidance" document).

It is evident in Defendants' responses, both to counsel in this litigation and in *Casa de Maryland*, that the government will claim its hands are tied and that this process "takes time." *See* Manfredi Decl. Exs. A, B; Acharya Decl. Exs. N, O. Specifically, the government has stated, "[w]hen amending forms, USCIS must comply with the Paperwork Reduction Act ('PRA'), *see* 44 U.S.C. §§ 3501-3520, 8 C.F.R. §§ 1320.1-18, and the procedures set forth by the Office of Information and Regulatory Affairs ('OIRA') within Office of Management and Budget ('OMB'), which do not permit the agency to simply revert to prior versions of the form." Manfredi Decl. Ex. B; *see also* Acharya Decl. Ex. N. Defendants lament that "the process necessary to update the I-765 to reflect the changes required by the vacatur is ongoing, but submission to and clearance of form revisions by OIRA is a methodical process. It can take many months to revise a form and have it cleared by OIRA." *See* Acharya Decl. Ex. N. This Court should decline the government's invocation of "bureaucracy" as the basis for denying asylum seekers prompt access to work authorization, which is necessary for their survival in this country and which Congress has authorized after an application for asylum has been pending for six months. *See, e.g., Armstrong*

*v. Exec. Off. of President*, 823 F. Supp. 4, 5 (D.D.C. 1993) (refusing to stay contempt order for failure to comply with court orders requiring preservation of electronic records because government "dillydallied, d[id] little and delayed for the past five months rather than make serious efforts to comply with this Court's prior orders"). "Poor and disadvantaged people cannot afford the luxury of bureaucratic delay and indifference to human needs." *Johnson v. Sec'y, Dep't of Health & Hum. Servs.*, 587 F. Supp. 1117, 1122 (D.D.C. 1984); *see also* Manfredi Decl. Ex. C at 26:7–22 (observing the "utter confusion" among vulnerable people the government's actions have caused).

Accordingly, the Court should not "tolerate disobedience of its Orders through admitted bureaucratic delay." *Johnson*, 587 F. Supp. at 1122; *see* Acharya Decl. Ex. O (government admitting that it only submitted a revised Form to OIRA on July 20, 2022, five months after this Court's decision). As the *Casa de Maryland* court observed, if the government is "really in the business of following *Asylum works* [sic], then [updating the Form I-765 and Form Instructions] has to be a higher priority." Manfredi Decl. Ex. C at 26:23–24. The balance of interests at stake falls heavily in favor of corrective action on a prompt timeline.

## III. Defendants Must Address The Backlog Of Employment Authorization Applications to Comply with the Operative Rules.

Finally, this Court should order Defendants to address the backlog of un-adjudicated EAD applications filed by asylum seekers and to comply uniformly with the regulatory requirement to adjudicate applications within thirty days. Months after this Court's February 2022 order, a number of applications have remained pending for far longer than thirty days. This backlog is a direct result of the invalid Timeline Repeal Rule. The government is well aware of this problem. It has indicated:

Following the *Asylumworks* vacatur, USCIS became legally obligated to afford all pending initial (c)(8) EAD applicants a 30-day processing timeframe. This includes any non-

CASA/ASAP applicants, whose cases remained pending prior to the *Asylumworks* order. At present and as a direct result of the *Asylumworks* order, USCIS now faces an enlarged population of new applicants entitled to the 30-day processing timeframe and a backlog of pending applications. To address the backlog and become compliant with the 30-day processing timeframe for all applicants, USCIS has been and will continue to make operational adjustments and implement technological initiatives focused on reducing the backlog and achieving compliance with the vacatur in a sustainable manner. Such efforts and adjustments include, but are not limited to, streamlining case processing through increased automation, temporarily lengthening the auto-extension period for (c)(8) renewals through rulemaking, adding staff, and allowing for overtime dedicated to reducing the adjudicative backlog based on a recent increase in funding.

Manfredi Decl. Ex. A, at 4–5.

Despite acknowledging the backlog, Defendants continue to delay in processing cases. For example, plaintiff organizations Tahirih and AsylumWorks have stated that they are aware of multiple instances of EADs that have been pending for longer than thirty days, and some that have been pending far longer than that. *See* Caldarone Decl. ¶ 18; Hodges-Wu Decl. ¶ 13. And as the data provided in *Rosario* makes clear, in June 2022, USCIS adjudicated only about 6% of cases within thirty days, and has held nearly steady in the overall number of cases it has adjudicated month after month. *See* Winger Decl. Ex. A. This approach is a recipe for maintaining the status quo in ongoing violation of this Court's order.

When an agency is delinquent in addressing a backlog of cases caused by its own unlawful conduct, it may be ordered to do so. *See, e.g.*, *Am. Hosp. Ass'n v. Price*, 867 F.3d 160, 165–70 (D.C. Cir. 2017) (affirming district court's authority to grant mandamus to require agency to clear backlog and remanding so that the district court could "craft workable relief"); 5 U.S.C. § 706(1) (allowing courts to "compel agency action unlawfully withheld or unreasonably delayed"). To fix these self-inflicted issues, Plaintiffs request that this Court compel USCIS to implement changes to its processing procedures to fulfill its case-processing obligations, including by adhering to the *Rosario* Partial Implementation Plan. *See Rosario v. USCIS*, Case No. 2:15-cv-00813-JLR (W.D.

Wash.), Dkt. 137 (Oct. 3, 2018 order adopting parties' partial implementation plan); *id*. Dkt. 193 (Apr. 29, 2022 order reallocating fifty Immigration Services Officers to work full-time on (c)(8) applications).

To address the ongoing backlog issues created by continued reliance on the now-vacated Timeline Repeal Rule, Plaintiffs ask this Court to order Defendants to process applications in accordance with the effective rules, including by instructing that all applications be adjudicated within thirty days of their filing date or within fifteen days of this Court's order for any application that has been pending for longer than thirty days.

## IV. <u>This Court Can Order The Relief Requested</u>

For the reasons discussed above, Plaintiffs request that the Court issue the attached Proposed Order granting this Motion to Enforce and declaring that Defendants' actions are in violation of this Court's vacatur of the Rules. Plaintiffs also ask that this Court issue a decision ordering Defendants to correct the eCFR within seven days of this Court's Order; to make necessary changes to Form I-765, the Form Instructions, and the USCIS website within fifteen days of this Court's order; and to clear the backlog of cases created by reliance on the Timeline Repeal Rule by instructing that all applications be adjudicated within thirty days of their filing date or within fifteen days of this Court's order for any application that has been pending for longer than thirty days. These remedies are an appropriate means of giving effect to this Court's vacatur, but in the alternative this Court should grant these remedies in the form of further injunctive relief.

When a court orders vacatur and a party fails to comply with that order, the court may take corrective action to mandate compliance. The Court's vacatur requires the government to "take[] the unlawful agency action off the books," *Kiakombua*, 498 F. Supp. 3d at 50, "reinstate the prior regulatory regime," *AFL-CIO*, 496 F. Supp. 2d at 85, and stop "persist[ing] in the unlawful conduct" that was vacated, *Kiakombua*, 498 F. Supp. 3d at 53. Plaintiffs seek precisely that relief.

*See Select Specialty Hosp.-Denver*, 2021 WL 4262652, at *7 (upon a successful motion to enforce, the court can award "the relief to which the plaintiff is entitled under its original action and the judgment entered therein").

Plaintiffs are accordingly entitled to enforce the removal of the vacated Rules from the eCFR, I-765 Form, and accompanying Form Instructions.  Vacatur requires the government to "take[] the [Rules] off the books," *Kiakombua*, 498 F. Supp. 3d at 50, so Plaintiffs are entitled to an order requiring the government to do precisely that by taking down the vacated Rules from the eCFR and revising the Form I-765 and accompanying Form Instructions to reflect that the Rules are no longer on the books.  The government cannot misrepresent the consequences of the Court's vacatur to regulated actors by keeping the now-vacated Rules on the books.  *See, e.g.*, *Oceana*, 2020 WL 5239197, at *4–5.

Plaintiffs are also entitled to enforce the mandatory thirty-day processing deadline from the prior regulatory regime.  Because vacatur reinstates that regime, this Court's order requires the government to stop persisting in unlawfully applying longer processing times of its choosing as the now-vacated Timeline Repeal Rule purported to authorize.  *See AFL-CIO*, 496 F. Supp. 2d at 85; *Kiakombua*, 498 F. Supp. 3d at 53.

 This Court has authority to set deadlines to enforce compliance with its vacatur order.  As the D.C. Circuit has affirmed, "[t]he authority to set enforceable deadlines . . . is an appropriate procedure for exercise of the court's equity powers to vindicate the public interest."  *Nat. Res. Def. Council*, 510 F.2d at 705; *accord New York Legal Assistance Grp.*, 987 F.3d at 225 (affirming courts' authority to "establish realistic timelines for compliance" with their orders).  Such enforceable deadlines are necessary here because Defendants continue to prop up the Rules that

this Court vacated more than five months ago and seem content to continue doing so. *See* Manfredi Decl. Ex. C, at 26:23–24.

Because Plaintiffs seek relief to which the Court's vacatur order entitles them, they can obtain that relief on a motion to enforce rather than by injunction. A plaintiff need only proceed by injunction where the plaintiff seeks to prohibit "some agency action beyond that which was vacated itself." *Friends of the Earth v. Haaland*, 2022 WL 254526, at *29 (D.D.C. Jan. 27, 2022). That is not the case here because vacatur "naturally implie[s] an end to" the activities from which Plaintiffs seek relief: Defendants' maintenance of the now-vacated Rules in the eCFR, the Form, and the Form Instructions, and their failure to reinstate the prior regulatory regime's thirty-day processing timeline. *Standing Rock Sioux Tribe v. United States Army Corps of Engineers*, 985 F.3d 1032, 1054 (D.C. Cir. 2021), *cert. denied sub nom. Dakota Access, LLC v. Standing Rock Sioux Tribe*, 142 S. Ct. 1187 (2022); *see AFL-CIO*, 496 F. Supp. 2d at 85; *Kiakombua*, 498 F. Supp. 3d at 53. These are the "very activities the court assumed would end" when the Rule was vacated, *Standing Rock*, 985 F.3d at 1054, just as vacatur of a construction permit "naturally implie[s] an end to construction," *id*., and vacatur of a decision to hold a sale necessarily ends that sale, *Friends of the Earth*, 2022 WL 254526, at *29.

Nonetheless, and in the alternative, if this Court determines that Plaintiffs can only obtain the relief they seek by injunction, this Court should enter the Proposed Order as an injunction. In that scenario, injunctive relief would be appropriate and necessary because vacatur "would provide only partial relief." *Kiakombua*, 498 F. Supp. 3d at 57–58 (granting injunction requiring new credible fear determinations for persons removed or subject to removal orders while vacated rule was in effect).

Plaintiffs meet all four permanent injunction factors. *See eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (listing irreparable injury, inadequate remedy at law, balance of hardships, and public interest factors). Plaintiffs have established irreparable harm because, as the Amended Complaint and Plaintiffs' sworn declarations establish, and as the Court in *Casa de Maryland* acknowledged, the Rules make it harder for asylum seekers to obtain EADs and force them into dependence on others. Dkt. 12 at 3–15; Dkt. 25-3 at 3–19; *Casa de Maryland, Inc. v. Wolf*, 486 F. Supp. 3d 928, 968 (D. Md. 2020), *appeal dismissed sub nom. Casa De Maryland, Inc. v. Mayorkas*, 2021 WL 1923045 (4th Cir. Mar. 23, 2021). The government's propping up of the now-vacated Rules perpetuates that irreparable harm. Plaintiffs and other asylum seekers lack an adequate remedy at law for that irreparable harm because, absent an injunction, the government will continue to misinform asylum seekers about the Rules' status and will continue to fail to meet the thirty-day deadlines. *Kiakombua*, 498 F. Supp. 3d at 57 (no adequate remedy at law because parties would "remain subject to unlawful" agency action absent injunction).

Further, the balance of equities and the public interest support injunctive relief. As the Court recognized in denying the Defendants' motion to stay, "the balance of hardships plainly weighs in plaintiffs' favor" because of the irreparable harms the Rules cause. Dkt. 22 at 12. In contrast to Plaintiffs, the government "cannot suffer harm from an injunction that merely ends an unlawful practice," especially one that it should have ceased five months ago. *Kiakombua*, 498 F. Supp. 3d at 57–58. Nor is the government irreparably harmed by being required to continue to meet a thirty-day processing deadline that it "has functioned with … since 1995" until that deadline was unlawfully removed in 2020. *Casa de Maryland*, 486 F. Supp. 3d at 970. The public interest also favors Plaintiffs because of the strong "public interest … in the proper enforcement of the orders of the Court," *Petties v. D.C.*, 238 F. Supp. 2d 88, 99 (D.D.C. 2002), and because "the

public interest is harmed by the defendants' perpetuating a policy that has been found … [to be a] violation of law," *Vo Van Chau v. U.S. Dep't of State*, 891 F. Supp. 650, 657 (D.D.C. 1995).  As in *Casa de Maryland*, the government "cannot . . . claim irreparable harm because it is held to account for [] violations" of the rule of law.  *Casa de Maryland*, 486 F. Supp. 3d at 970.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant their motion to enforce and/or for additional injunctive relief and enter the attached Proposed Order.

Dated: July 22, 2022                         Respectfully submitted,

                                      By:   */s/ Deepa Acharya*
                                            _____

Keren Zwick (D.D.C. Bar. No. IL0055)     Deepa Acharya (D.C. Bar No. 996412)
Mark Fleming*                            Carl Spilly (D.C. Bar No. 230830)
NATIONAL IMMIGRANT JUSTICE CENTER        QUINN EMANUEL URQUHART & SULLIVAN,
224 S. Michigan Ave., Suite 600          LLP
Chicago, IL 60604                        1300 I St. NW, Suite 900
312-660-1370                             Washington, DC 20005
kzwick@heartlandalliance.org             202-538-8000
mfleming@heartlandalliance.org           deepaacharya@quinnemanuel.com
                                         carlspilly@quinnemanuel.com
Nicholas A. S. Hoy
Misha Boutilier                          Melissa Crow
QUINN EMANUEL URQUHART &                 CENTER FOR GENDER & REFUGEE STUDIES
SULLIVAN, LLP                            1121 14th St. NW, Suite 200
51 Madison Ave., 22nd Floor              Washington, DC 20005
New York, NY 10010                       415-565-4877
212-849-7000                             crowmelissa@uchastings.edu
nicholashoy@quinnemanuel.com
mishaboutilier@quinnemanuel.com          Wendy Wylegala**
                                         KIDS IN NEED OF DEFENSE
                                         252 West 37th Street, Floor 15
*Certification to practice pursuant to*  New York, NY 10018
*LCvR 83.2(g) to be submitted*           646-970-2913
                                         wwylegala@supportkind.org
**Counsel for Individual Plaintiffs only**

                                         *Counsel for Plaintiffs*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASYLUMWORKS, *et al.*,<br><br>          Plaintiffs,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS, in his<br>official capacity as the Secretary of<br>Homeland Security, *et al.*,<br><br>          Defendants. | No. 2020-cv-03815-BAH |

**[PROPOSED] ORDER**

Upon consideration of Plaintiffs' motion to enforce this Court's judgment of February 7, 2022, it is hereby ORDERED that the motion is GRANTED.  This Court declares Defendants have thus far failed to comply with the Court's order.  Defendants are hereby ordered to:

I.    Amend the eCFR within seven days of this order to accurately reflect vacatur of the Rules at issue: *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants*, 85 Fed. Reg. 37,502 (June 22, 2020) and *Asylum Application, Interview, and Employment Authorization for Applicants*, 85 Fed. Reg. 38,532 (June 26, 2020);

II.   Publish a revised Form I-765, Application for Employment Authorization, accompanying Form Instructions, and any additional agency guidance on the USCIS website to reflect vacatur of the aforementioned Rules within fifteen days of this Court's order;

III.  Adopt EAD processing procedures to ensure compliance with the mandatory processing times that were restored by the vacatur of the aforementioned Rules,

24

including by clarifying that EAD processing does not depend on ASAP or CASA membership and by clearing the backlog of pending I-765 applications by processing all cases within thirty days and by adjudicating the backlog of cases that have been pending for more than thirty days no more than fifteen days after this Court's order.

Dated: _____

_____

Beryl A. Howell
Chief United States District Judge