UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ASYLUMWORKS, *et al.*,<br><br>        Plaintiffs,<br><br>v.<br><br>ALEJANDRO N. MAYORKAS, in his official capacity as the Secretary of Homeland Security, *et al.*,<br><br>        Defendants. | No. 2020-cv-03815-BAH |

**MOTION FOR AWARD OF ATTORNEYS' FEES AND EXPENSES
PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT**

Plaintiffs filed a Motion for Partial Summary Judgment (Dkt. 25), which sought to vacate the U.S. Department of Homeland Security's Final Rules: Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants, 85 Fed. Reg. 37,502 (June 22, 2020) (the "Timeline Repeal Rule"), and Asylum Application, Interview, and Employment Authorization for Applicants, 85 Fed. Reg. 38,532 (June 26, 2020) (the "EAD Bar Rule"). Collectively these are "two rules issued by the Department of Homeland Security ("DHS") that, as of August 2020, curtail[ed] asylum seekers' access to employment authorization documents." Dkt. 42 at 1.

Plaintiffs argued that these rules were void, because at the time of their promulgation, Chad Wolf was not lawfully serving as Acting Secretary of Homeland Security and thus, his service violated statutory and constitutional requirements. Dkt. 25-1 at 1-10. On February 7, 2022, the Court granted Plaintiffs' motion. Dkts. 41, 42. Defendants elected not to appeal. Accordingly, under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, Plaintiffs now move for an

award of attorneys' fees and costs incurred in successfully seeking to vacate these rules.[1]  For the reasons set forth below, the Court's order granting Plaintiffs' motion for partial summary judgment (Dkt. 41) rendered Plaintiffs a prevailing party, which entitles them to an award of attorneys' fees and costs under the EAJA.  Plaintiffs request that the Court award fees and costs in the amount of $762,583.60.  Counsel for Plaintiffs have solicited the Government's position on this Motion. The Government states, "[it] oppose[s] the motion."

## BACKGROUND

In June 2020, while purporting to serve as Acting Secretary of the Department of Homeland Security ("DHS"), Chad F. Wolf issued two related rules (the "Rules")—the EAD Bar Rule and the Timeline Repeal Rule—concerning Employment Authorization Documents ("EADs") for asylum seekers.[2]  The Rules eviscerated the system that allows asylum applicants access to both lawful work and government-issued identification by complicating, delaying, and in some cases eliminating access to the EADs that asylum seekers need to survive while their asylum applications are being adjudicated.  The Organizational Plaintiffs are three nonprofit organizations dedicated to providing legal and social services to asylum seekers. The Individual Plaintiffs are asylum seekers from nine countries who have faced homophobic and transphobic violence, gender-based and domestic violence, cartel and gang violence, and political persecution in their home countries.  Like other asylum applicants harmed by these Rules, without access to an EAD, Individual Plaintiffs have been vulnerable to homelessness, hunger, inadequate healthcare, and exploitation.  Without an EAD, some asylum seekers may have no choice but to abandon their asylum claims and return to danger in their home countries, even if they would ultimately be found eligible for

---

[1]  At the request of the Parties, the Court extended Plaintiffs' time to file this motion until August 1, 2022.

[2]  Defined terms have the same meaning as in Plaintiffs' Amended Complaint, Dkt. 12.

asylum. Indeed, in the context of denying the Defendants' motion to stay proceedings, this Court recognized the irreparable harm caused by the Rules. Dkt. 22 at 12.

Given this harm, Plaintiffs initiated an action seeking to vacate the Rules. They argued, *inter alia*, that Mr. Wolf's purported service violated statutory and constitutional requirements. He thus had no authority to issue the Rules, rendering them void *ab initio*. Dkt. 12. Plaintiffs also argued, *inter alia*, that Mr. Wolf's service and issuance of the Rules were unlawful because the government failed to comply with the plain text of the government's own orders of succession and the statutory and constitutional requirements set out in the Homeland Security Act ("HSA"), the Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause (the "Appointments Clause Claims" or "Succession Claims"). *Id.*

Plaintiffs filed a motion for partial summary judgment as to the Succession Claims. Dkt. 25. The Court granted Plaintiffs' motion, denied Defendants' cross-motion for summary judgment, and vacated the challenged rules. Dkt. 41. Defendants elected not to appeal.

## ARGUMENT

Under the EAJA, a "prevailing party" against the United States government is eligible for fees and costs incurred in litigation. 28 U.S.C. § 2412(a)(1), (b). For purposes of EAJA a "party" can refer both to "an individual whose net worth did not exceed $2,000,000" and to nonprofit organizations, who "may be a party regardless of the net worth of such organization." *Id.* § 2412(d)(2)(B). Once the requesting party meets those predicates, the court "shall" award fees unless "the position of the United States was substantially justified or [] special circumstances make an award unjust," *Id.* § 2412(d)(1)(A)—and "[t]he Government has the burden of proving that its position . . . was 'substantially justified' within the meaning of the Act." *LePage's 2000, Inc. v. Postal Regul. Comm'n*, 674 F.3d 862, 866 (D.C. Cir. 2012) (citing *Halverson v. Slater*, 206 F.3d 1205, 1208 (D.C. Cir. 2000)).

I. **The Court's Order on Plaintiffs' Motion for Partial Summary Judgment Renders Plaintiffs the Prevailing Party.**

Plaintiffs are the "prevailing party" because their Complaint sought vacatur of the Timeline Repeal Rule and the EAD Bar Rule, and the Court issued a final judgment vacating these Rules as Plaintiffs requested. *See* Dkt. 41. To recover fees under federal fee-shifting statutes, "a 'prevailing party' must demonstrate: (1) that it is 'a party in whose favor a judgment is rendered, regardless of the amount of damages awarded'; (2) the existence of 'a court-ordered change in the legal relationship between the plaintiff and the defendant'; and (3) that it has done more than 'having acquired a judicial pronouncement unaccompanied by judicial relief.'" *Cobell v. Norton*, 407 F. Supp. 2d 140, 149 (D.D.C. 2005) (citing *Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 946–47 (D.C. Cir. 2005)); *Select Milk Producers*, 400 F.3d at 945 ("[I]t is now clear that *Buckhannon's* construction of 'prevailing party' also applies to fee claims arising under EAJA").

Defendants cannot dispute that Plaintiffs are the prevailing party. Plaintiffs satisfy the first requirement, as Plaintiffs' motion for summary judgment was granted. Plaintiffs satisfy the second requirement, because the Court vacated the rules Plaintiffs challenged, which resulted in a court-ordered change in the legal relationship between Plaintiffs and Defendants. *See Ctr. for Food Safety v. Burwell*, 126 F. Supp. 3d 114, 120 (D.D.C. 2015) (court-ordered change in the legal relationship between the plaintiff and the defendant "can result from 'judgments on the merits.'") (citing *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001)). Plaintiffs also satisfy the third requirement: the Court's vacatur of those rules allows the Plaintiffs to pursue work authorization that, but for the Court's ruling, would have been prohibited or subject to additional limitations. Accordingly, Plaintiffs are a "prevailing party" for fee claims arising under EAJA.

3

## II.  Plaintiffs Meet the EAJA's Net Worth Limitation.

Once Plaintiffs demonstrate that they are a "prevailing party," they need show only that they are either "individual[s] whose net worth did not exceed $2,000,000 at the time the civil action was filed," or qualifying nonprofit organizations to meet their burden for an award of fees. 28 U.S.C. § 2412(d)(2)(B). Plaintiffs' counsel have concurrently submitted declarations confirming that the Individual Plaintiffs' net worth are each below the statutory threshold and that the Organizational Plaintiffs are nonprofit organizations. *See* Declaration of Keren Zwick ¶¶ 1, 3, 23, 26; Declaration of Annie Daher ¶¶ 12-14; Declaration of Wendy Wylegala ¶¶ 1, 4-6. In addition, Plaintiffs have agreed that all fees and costs recovered in this Motion are to be awarded to their counsel. *See* Zwick Decl. ¶ 24; Wylegala Decl. ¶ 7.

## III.  Defendants' Position Was Not Substantially Justified.

Defendants' position regarding the legality of the challenged rules was not "substantially justified" prior to this litigation, during its pendency, or after the Court's decision granting summary judgment.

First, "[t]he undisputed facts and administrative record make clear that neither McAleenan nor Wolf possessed lawful authority to serve as Acting Secretaries of Homeland Security," so any action that they took under that purported authority was not substantially justified. Dkt. 42 at 16. *See, e.g., Halverson*, 206 F.3d at 1206 (discussing the government's position "at the agency level" as part of its substantial justification analysis); *Nat'l Venture Capital Ass'n v. Nielson*, 318 F. Supp. 3d 145, 149 (D.D.C. 2018) ("The agency must show 'both' that (1) the 'underlying agency action' and (2) 'the arguments defending that action in court satisfy" the substantial justification standard." (quoting *Halverson*, 206 F.3d at 1205)); *True the Vote, Inc. v. Internal Revenue Serv.*, No. CV 13-734 (RBW), 2019 WL 2304659 at *7 (D.D.C. May 30, 2019) ("Because the defendants have not

satisfied their burden of demonstrating that the underlying agency action was justified, the Court concludes that the defendants' position was not substantially justified within the meaning of the EAJA.").

Additionally, Defendants' actions throughout the course of this litigation has not been substantially justified. First, Defendants sought to stay these proceedings despite ongoing harm to Plaintiffs. Dkt. 16.  Then Defendants denied Plaintiffs' allegations as to the Succession Claims despite a mounting number of district courts rejecting their view.  Dkt. 24.  Defendants next opposed Plaintiffs' motion for summary judgment (and filed their own cross-motion) despite their clear violations of the plain language of the HSA, FVRA, and Appointments Clause. Dkts. 28, 29, 33.  And even after this Court's decision in February 2022, Defendants have failed to fully implement the vacatur of the Rule, which has forced Plaintiffs to file a motion to enforce. Dkt. 47. Throughout those steps, Defendants "acted in a manner flatly at odds with controlling authority that could not be 'justified to a degree that could satisfy a reasonable person.'"  *Cobell*, 407 F. Supp. 2d at 152 (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Indeed, this Court said as much both in its grant of Plaintiffs' motion for summary judgment and in its denial of the Government's motion to stay proceedings.  In rejecting the Government's stay motion, this Court noted the multiple extensions that the government sought and received and rejected its arguments in favor of a stay as being, among other things, based on "speculative administrative changes and judicial decisions that may fall far short of providing any relief sought by plaintiffs."  Dkt. 22 at 9.  The Court likewise rejected the Government's reliance on the pending litigation in *Casa de Maryland* as the basis for delay—reasoning that resolution of that case "may not even provide any, let alone full, relief to plaintiffs in this case." *Id.* at 10.

In granting Plaintiffs' motion for summary judgment, this Court characterized the Government's position as "remarkabl[e]" and rejected its "invitation to engage in [] interpretative acrobatics." Dkt. 42 at 15. This Court went on to state, "[a]s aptly put by the *Batalla Vidal* court, defendants' 'reading of the documents is tortured' and 'urges the court to ignore official agency policy documents and invalidate the plain text of the April [2019] Delegation.' This Court thus 'credits the text of the law over *ex post* explanations that the text means something other than what it says." *Id.* (citing *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 132 (E.D.N.Y. 2020)).

In the end, this Court rejected Defendants' request to depart from the decisions of "five other district courts across the country and another Judge on this Court [that] already concluded that Wolf's appointment as Acting Secretary was invalid." Dkt. 42 at 2 (citing *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966 (N.D. Cal. 2021); *Batalla Vidal*, 501 F. Supp. 3d 117; *Nw. Imm. Rights. Proj. v. USCIS*, 496 F. Supp. 3d 31 (D.D.C. 2020); *Imm. Legal Res. Ctr. v. Wolf*, 491 F. Supp. 3d 520 (N.D. Cal. 2020); *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928 (D. Md. 2020); *La Clinica De La Raza v. Trump*, No. 19-cv-4980, 2020 WL 7053313 (N.D. Cal. Nov. 25, 2020)).

In short, Defendants acted unreasonably before this litigation when they acted without authority to promulgate the Rules in question, and they took positions that were at odds with the rulings of myriad other courts in this country and were plainly unreasonable under those circumstances. Many of the decisions that this Court cited were published before Plaintiffs ever sought summary judgment, and in some cases before they ever filed suit, including one case—*Casa de Maryland*—that presented the same issue as to the *same Rules*. Accordingly, Defendants cannot show that their position prior to and during this litigation was substantially justified.

In addition to Defendants' unreasonable conduct before and during this litigation, their behavior after this Court rendered its judgment required Plaintiffs to go above and beyond to ensure Defendants' compliance. This Court ordered vacatur of the illegally promulgated Rules on February 7, 2022, Dkt. 42, yet Defendants have dragged their feet on implementing the required vacatur and taking necessary actions to ensure the vacated rules no longer affect asylum seekers. In April 2022, after over two months had passed since this Courts' judgment—and nearly two weeks had passed since Defendants decided not to appeal—Plaintiffs' counsel Keren Zwick reached out to Defendants raising four specific issues with their compliance with the Court's judgment. Dkt. 47-1, Ex. K. Over the next three months, Defendants failed to take necessary further steps towards implementation, despite additional communication on the subject. *Id.*, Exs. L-O. In light of the continuing harms to asylum seekers caused by Defendants' abject failure to implement the changes necessary to effectuate the judgment, Plaintiffs were forced to submit a Motion to Enforce to compel Defendants' compliance. *See* Dkt. 47. This post-decision conduct only reinforces the fact that Defendants' conduct in this matter has not been substantially justified.

## IV. No Special Circumstances Make The Award Unjust

Nor do any "special circumstances" exist that would make an attorneys' fees award unjust. *See* 28 U.S.C. § 2412(d)(1)(A). The "special circumstances" exception is designed to operate as a "safety valve" that (i) "helps to insure that the Government is not deterred from advancing in good faith the novel but credible extensions and interpretations of the law that often underlie vigorous enforcement efforts;" and (ii) "gives the court discretion to deny awards where equitable considerations dictate an award should not be made." *Air Transp. Ass'n of Canada v. F.A.A.*, 156 F.3d 1329, 1333 (D.C. Cir. 1998). "The 'special circumstances' language in the EAJA has been interpreted to direct courts 'to apply traditional equitable principles' in determining whether a

7

prevailing party should receive a fee award under EAJA." *Ass'n of Am. Physicians & Surgeons, Inc. v. U.S. Food & Drug Admin.*, 391 F. Supp. 2d 171, 176 n.3 (D.D.C. 2005) (citation omitted). Analysis of these equitable considerations "has historically involved a determination of whether the equitable doctrine of 'unclean hands' would render an award of fees unjust." *Id.* This case does not implicate either concern, as (i) the "extensions and interpretations" of the HSA, FVRA, and Appointments Clause on that Defendants relied prior to and during this litigation were not "credible" because they conflict with six other district court decisions and the plain language of the statutory text; and (ii) Defendants have not alleged that Plaintiffs have "unclean hands." Therefore, there are no "special circumstances" rendering such an award unjust.

## V.     The Amount of Attorneys' Fees And Costs Sought Is Reasonable.

Because Plaintiffs meet all the statutory requirements, and the Government cannot meet its burden to show substantial justification or that special circumstances exist to make the award sought unjust, Plaintiffs are entitled to recover "reasonable attorney fees" and costs pursuant to the EAJA.  28 U.S.C. §§ 2412(a)(1), (b).  In addition to attorney time spent on the litigation itself, Plaintiffs can recover for time spent preparing the fee petition and for the work of paralegals.  *See Powell v. Comm'r of Internal Revenue*, 891 F.2d 1167, 1172 (5th Cir. 1990) (fee petition time recoverable); *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 573, 575 (2008) (paralegal time recoverable at "prevailing market rates").  The EAJA further authorizes recovery of any "expenses of attorneys" (28 U.S.C. § 2412(a)(1)), in addition to those costs expressly provided in 28 U.S.C. § 1920.  Plaintiffs seek fees and costs in the amount of $762,583.60.

Plaintiffs are entitled to an enhanced fee award under EAJA Section 2412(b) for at least two reasons. First, Defendants acted in bad faith by issuing and enforcing the disputed Rules and opposing Plaintiffs' request for relief in this action despite Acting Secretary Wolf's clearly

8

unlawful appointment, as described in detail above. "Bad faith can support an award of attorneys' fees in circumstances where the bad faith (1) occurred in connection with the litigation, or (2) was an aspect of the conduct giving rise to the lawsuit." *Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991). "Bad faith in conduct giving rise to the lawsuit may be found where 'a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.'" *Id.* (citing *Fitzgerald v. Hampton,* 545 F. Supp. 53, 57 (D.D.C. 1982)).

Here, Defendants engaged in pre-litigation bad faith conduct *and* proceeded in bad faith in this case. Mr. Wolf's service was unlawful "[b]ased on the plain language of the then-controlling version of Delegation 106," "the unambiguous terms of the April 2019 Delegation," and "[t]he undisputed facts and administrative record." Dkt. 42, at 13-15. And despite clear textual requirements, Defendants (i) proceeded with illegally issuing the now-invalidated rules; (ii) litigated this action, inviting the Court to "engage in . . . interpretative acrobatics," *id.* at 15; (iii) attempted to ratify the challenged Rules by relying on a "reading of the statute . . . inconsistent with both the plain terms and purpose of the FVRA," *id.* at 17, and (iv) have failed to fully implement the Court's vacatur order more than five months after the fact, necessitating a motion to enforce from Plaintiffs, Dkt. 47.

As this Court and others have noted, Defendants have continued to defend their actions despite one court after the next rejecting their arguments in increasingly stark terms. Dkt. 42 at 2. In *Pangea Legal Services*, Judge Donato put his frustration with Defendants' "troubling legal

9

strategy" of continuing to pursue arguments that courts had continually rejected, while simultaneously *not* appealing their losses, in no uncertain terms. He wrote:

> This Court is now the fifth federal court to be asked to plow the same ground about Wolf's authority *vel non* to change the immigration regulations. If the government had proffered new facts or law with respect to that question, or a hitherto unconsidered argument, this might have been a worthwhile exercise. It did not. The government has recycled exactly the same legal and factual claims made in the prior cases, as if they had not been soundly rejected in well-reasoned opinions by several courts. The government initially appealed two of these decisions, both of which it later voluntarily dismissed, and appears to have only one appeal pending. In the main, the government contents itself simply with saying the prior courts were wrong, with scant explanation.

At oral argument, Judge Donato even went so far as to note Rule 11 concerns relating to this practice. *See Pangea Legal Services*, Dkt. 67 (N.D. Cal. 2021) at 8 ("I actually think it's quite questionable, both on a professional-conduct level and on a Rule 11 level, that the government keeps trotting out the same tired arguments that have been definitively rejected, factually and legally. I'm having a hard time seeing that there is a good foundation in law and fact under Rule 11 for these same arguments to be presented here as if nobody has ever looked at them before, which is absolutely not the case."). This is precisely the sort of bad faith conduct that justifies an enhanced fee under 28 U.S.C. § 2412(b).[3]

Second, a number of "special factors" justify enhanced fees under Section 2412(b). As a preliminary matter, many co-counsel at the National Immigrant Justice Center (NIJC) and the

---

[3] Defendants' continued failure to comply with the Court's judgment further evidences their bad faith. *See* Dkt. 47. *See Select Specialty Hosp.-Denver, Inc. v. Azar*, No. CV 10-1356 (BAH), 2020 WL 3469685 at *4 (D.D.C. June 25, 2020) (bad faith in conduct giving rise to the lawsuit may be found where 'a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights."); *Gray Panthers Project Fund v. Thompson*, 304 F. Supp. 2d 36, 39 (D.D.C. 2004), *dismissed*, No. 04-5154, 2004 WL 1656638 (D.D.C. July 23, 2004) (government acted in bad faith when it "engaged in conduct that required plaintiffs to undertake otherwise unnecessary litigation to vindicate plain legal rights").

10

Center for Gender and Refugee Studies (CGRS) are bilingual Spanish speakers, which was a necessary skill to identify and communicate with the 18 individual plaintiffs in this case, including by explaining the litigation process to them and interviewing them for purposes of drafting their declarations.  *See* Zwick Decl. ¶ 19, Declaration of Jamie Crook ¶ 15, Daher Decl. ¶ 6, Wylegala Decl. ¶ 5.  The ability to communicate with plaintiffs in their native language is a skill that can— in appropriate circumstances—justify enhanced fees.  *See, e.g.*, *Pierce v. Underwood*, 487 U.S. 552, 572 (1988) (describing "knowledge of foreign law or language" as a specialized skill); *Jean v. Nelson*, 863 F.2d 759, 774 (11th Cir. 1988), *aff'd on other grounds*, *Comm'r, INS v. Jean*, 496 U.S. 154 (1990) (noting that foreign language fluency, which the district court found "crucial" to witness preparation, was a potential special factor); *Flores v. Sessions*, 2017 WL 8943169 at *5 (C.D. Cal. Nov. 14, 2017) (awarding enhanced fees for attorneys fluent in Spanish where declarations from monolingual Spanish-language class member were essential to obtaining a favorable ruling).

Additionally and more critically, co-counsel from NIJC, CGRS and KIND possess ample background knowledge in a niche area of law, which is also a skill sufficient to justify enhanced fees.  *Pierce*, 487 U.S. at 572 (describing "identifiable practice specialty" as a basis for enhanced fees).  For example, three of the attorneys who handled this case for NIJC have a combined total of more than thirty years' of experience in the immigration field, substantial experience challenging agency regulations, prior un-billed understanding of these challenged Rules specifically, and prior knowledge of the succession issues at play here.  *See* Zwick Decl. ¶¶ 13-16, 28.  CGRS attorneys similarly brought to this case many years of immigration and asylum law experience, specific expertise in the Rules at issue in this matter and in challenging agency regulations in federal court (including on the basis of succession issues), and a network of

11

relationships with immigration practitioners around the country that gave them unique insight into the impact of the Rules as well as exposure to potential plaintiffs. *See* Crook Decl. ¶¶ 3-7, 10, 11. KIND attorneys' contributions to this case were informed by prior knowledge of the Rules at issue in this case, and by many years of experience in supporting legal services to unaccompanied children, including asylum seekers, and in litigation and advocacy seeking fair and equitable treatment of children in the immigration context. Wylegala Decl. ¶¶ 3-4. This sort of "distinctive knowledge and specialized skill in immigration law and, in particular, constitutional immigration law" has been, in part, the basis for enhanced fees in other courts. *See Nadarajah v. Holder*, 569 F.3d 906, 918 (9th Cir. 2009). Such an enhancement is particularly appropriate here given the intersection of legal knowledge and skill that was required in this case. As one Declarant has put it:

> The overlapping federal court and immigration-specific skills that NIJC and the other nonprofit organizations on this case have are exceedingly rare. In my experience, few federal court litigators have expansive knowledge of immigration law and its ever-changing regulatory scheme. That intersection becomes even more rarified when it involves questions under the FVRA, HSA, and Appointments Clause. In-depth knowledge in all three of these arenas would have been critical in this case.

Declaration of Jeff Dubner. ¶ 12. At least one Court has held that an enhancement of this nature may be warranted if the attorney "possess[es] distinctive knowledge and skills developed through a practice specialty," the skills are "needed in the litigation," and the skills are not "available elsewhere at the statutory rate." *Love v. Reilly*, 924 F.2d 1492, 1496 (9th Cir. 1991) (citing *Pirus v. Bowen*, 869 F.2d 536, 541-42 (9th Cir. 1989)).[4] That sort of necessary and distinctive skill set was necessary and fully utilized in the litigation of this case. Accordingly, pursuant to Section

---

[4] Although this case is not binding on this Court, at least one court in this district has considered *Love v. Reilly* as persuasive. *See Nat'l Ass'n of Mfrs. v. U.S. Dep't of Lab.*, 962 F. Supp. 191 (D.D.C. 1997).

12

2412(b) of the EAJA, Plaintiffs seek enhancement from the EAJA rate to fees at the market rate for services in the District of Columbia.[5] *See Cobell*, 319 F. Supp. 2d at 43 ("There is no statutory ceiling on the hourly rate used to calculate attorneys' fees under § 2412(b) and so 'an award of attorney's fees for bad faith can be calculated at market rates.'" (citing *Gray Panthers Project Fund v. Thompson,* 304 F.Supp.2d 36 (D.D.C. 2004)).

Plaintiffs' requested rates are calculated pursuant to the *Laffey* matrix, which "is regularly used in the federal courts of this jurisdiction to determine attorneys' fees where, as here, there is a statutory entitlement." *Lively v. Flexible Packaging Ass'n*, 930 A.2d 984, 988–89 (D.C. 2007), as amended (Aug. 30, 2007) (citing *Smith v. District of Columbia,* 466 F.Supp.2d 151, 156 (D.D.C. 2006) ("In the District of Columbia, it has been traditional to apply the so-called *Laffey* Matrix.")); *see also DL v. Dist. of Columbia*, 924 F. 3d 585 (DC Cir. 2019). These rates are reasonable in light of the complexity of the issues presented and expertise of Plaintiffs' counsel. *See* Dubner Decl. ¶ 7 ("[T]he requested hourly rates are consistent with market rates for this type of litigation in the D.C. Circuit"), Declaration of Thomas Ragland ¶ 14 ("These rates are appropriate given the complexity of the litigation; the attorneys' unique expertise in immigration law and administrative law; and the market rates in the District of Columbia…[T]hese rates are well within the range of reasonable market rates for attorneys with similar experience in Washington, DC.").

---

[5] Alternatively and at minimum, this Court should award fees after applying a standard cost-of-living increase to the statutory rate under EAJA of $125 per hour. *See* 28 U.S.C. § 2412(d)(2)(A); *see also, e.g.*, *Sprinkle v. Colvin*, 777 F.3d 421, 428 (7th Cir. 2015) (awarding fees based on an "inflation-adjusted rate"); *Porter v. Astrue*, 999 F. Supp. 2d 25, 39 (D.D.C. 2013) ("[M]ost of the courts in the circuit use the regional CPI…as it most accurately reflects the increase in the cost of living experienced by the attorneys in this particular region."). The Ninth Circuit publishes a chart calculating the inflation-related adjustment, and Plaintiffs ask this Court to use those figures if it awards fees under this alternative scheme. *See* Statutory Maximum Rates Under the Equal Access to Justice https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/ (providing a year-by-year calculation of adjusted rates).

Plaintiffs seek an award of attorneys' fees and paralegal fees at these rates and amounts:[6]

| Name | Rate | Hours | Total |
|---|---|---|---|
| **Attorneys and Paralegal from National Immigrant Justice Center** | | | |
| Keren Zwick (11-19 years of experience) | $759[7] | 185.6 | $140,870.40 |
| Mark Fleming (11-19 years of experience) | $759 | 19.2 | $14,572.80 |
| Gianna Borroto (8-10 years of experience) | $672 | 59.9 | $40,252.80 |
| Drew Heckman (1-3 years of experience) | $378 | 113.9 | $43,054.20 |
| Mary M. Donnelly (Paralegal Time) | $206 | 53.7 | $11,062.20 |
| **Attorneys and Law Clerks from Quinn Emanuel** | | | |
| Deepa Acharya (11-19 years of experience) | $759 | 7.9 | $5,996.10 |
| Carl Spilly (4-7 years of experience) | $465 | 158.3 | $73,609.50 |
| Brian McGrail (1-3 years of experience) | $378 | 77.2 | $29,181.60 |
| Isabelle Sun (1-3 years of experience) | $378 | 42.0 | $15,876.00 |
| Misha Boutilier (1-3 years of experience) | $378 | 229.7 | $86,826.60 |
| Liam Timmons (law clerk) | $206 | 34.3 | $7,065.80 |
| Kaylee Otterbacher | $206 | 36.3 | $7,477.80 |

---

[6] Plaintiffs acknowledge that this Court has not yet adjudicated their motion to enforce. Just as attorneys are permitted to seek reimbursement for time spent working on an EAJA motion itself, Plaintiffs maintain that time spent on a motion to enforce is subject to reimbursement under EAJA. *See United Church Bd. for World Ministries v. S.E.C.*, 649 F. Supp. 492, 499 (D.D.C. 1986) (fee award to prevailing plaintiffs under EAJA encompassed, *inter alia*, post-judgment matters including EAJA litigation); *Nong v. Reno*, 28 F. Supp. 2d 27, 32-33 (D.D.C. 1998) ("plaintiffs are entitled to compensation for the reasonable expenses incurred by filing an EAJA application") (citing *United Church Bd.*, 649 F. Supp. at 499). If this Court disagrees, a deduction of $74,277.40 dollars, representing time expended on Plaintiffs' motion to enforce, would be appropriate. *See* Acharya Decl., Ex. A1; Zwick Decl., Ex. B1; Daher Decl., Ex. D1; Wylegala Decl., Ex. E1. In the alternative, this Court could award fees based on what Plaintiffs have prevailed on thus far, and defer the question of further fees until Plaintiffs' Motion to Enforce is adjudicated.

[7] The work in this case occurred over three calendar years from September 2020 to the present. The Laffey Matrix contemplates a year over year increase based on the year in which the work was performed. For ease of calculation, Plaintiffs have opted to rely on the earliest in time (and thus lowest dollar amount) for the relevant time period.

| | | | |
|---|---|---|---|
| (law clerk) | | | |
| **Attorneys from the Center for Gender and Refugee Studies** | | | |
| Melissa Crow (20+ years of experience) | $914 | 13.4 | $12,247.60 |
| Jamie Crook (11-19 years of experience) | $759 | 59.3 | $45,008.70 |
| Annie Daher (4-7 years of experience) | $465 | 163.5 | $76,027.50 |
| Anne Dutton (4-7 years of experience) | $465 | 10.6 | $4,929.00 |
| **Attorney from Kids in Need of Defense** | | | |
| Wendy Wylegala (20+ years of experience) | $914 | 162.5 | $148,525.00 |

Plaintiffs' attorneys have attached declarations that detail the work they performed in this litigation through itemized time entries and further describe their qualifications and experience. *See* Declaration of Deepa Acharya ¶¶ 3-9, Ex. A-1; Zwick Decl. ¶ 28, Ex. B-1; Crook Decl. ¶¶ 18, 19; Daher Decl. ¶ 6, Ex. D-1; Wylegala Decl. ¶ 8, Ex. E-1. Plaintiffs' attorneys are entitled to compensation for all work performed in this litigation. *See Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983) ("Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation . . . The result is what matters.").

Nonetheless, Plaintiffs' counsel has reviewed their attorneys' time entries and made a number of reductions to their request for fees. First, counsel have omitted or significantly reduced work that specifically related to the crafting of the first two counts of the complaint and relevant background, which asserted Administrative Procedure Act violations for which Plaintiffs did not seek summary judgment. *See* Acharya Decl. ¶¶ 10-11; Zwick Decl. ¶ 29. Additionally, each organization has omitted entirely work performed by certain staff members from their calculations, and counsel from Organizational Plaintiff Tahirih is not seeking fees for any of its time on this case. *See* Acharya Decl. ¶¶ 10-11; Zwick Decl. ¶ 29; Daher Decl. ¶ 7; Wylegala Decl. ¶ 9. And

15

where appropriate, the lead attorney for each organization has made reductions to their organizations' overall time to avoid duplication of efforts or when, in that attorney's judgment, excess time was devoted to a particular task. *See* Zwick Decl. ¶¶ 26, 29; Daher Decl. ¶ 7.

### .**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court award fees and costs totaling $762,583.60.

Dated: August 1, 2022

Respectfully submitted,

By: /s/ Keren Zwick

| | |
|---|---|
| Deepa Acharya (D.C. Bar No. 996412)<br>Carl Spilly (D.C. Bar No. 230830)<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>1300 I St. NW, Suite 900<br>Washington, DC 20005<br>202-538-8000<br>deepaacharya@quinnemanuel.com<br>carlspilly@quinnemanuel.com | Keren Zwick (D.D.C. Bar. No. IL0055)<br>Mark Fleming*<br>NATIONAL IMMIGRANT JUSTICE CENTER<br>224 S. Michigan Ave., Suite 600<br>Chicago, IL 60604<br>312-660-1370<br>kzwick@heartlandalliance.org<br>mfleming@heartlandalliance.org |
| Nicholas A. S. Hoy<br>QUINN EMANUEL URQUHART &<br>SULLIVAN, LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010<br>212-849-7000<br>nicholashoy@quinnemanuel.com | Melissa Crow (D.C. Bar No. 453487)<br>CENTER FOR GENDER & REFUGEE STUDIES<br>1121 14th Street, NW<br>Suite 200<br>Washington, DC 20005<br>crowmelissa@uchastings.edu |
| Richard Caldarone***<br>TAHIRIH JUSTICE CENTER<br>6400 Arlington Blvd., Suite 400<br>Falls Church, VA 22042<br>571-282-6161<br>richardc@tahirih.org | Annie Daher<br>Annie Dutton<br>CENTER FOR GENDER & REFUGEE STUDIES<br>200 McAllister St.<br>San Francisco, CA 94102<br>415-565-4877<br>daherannie@uchastings.edu<br>duttonanne@uchastings.edu |
| *Certification to practice pursuant to LCvR 83.2(g) to be submitted*<br><br>*\*\* Counsel for Individual Plaintiffs only*<br><br>*\*\*\* Counsel for Tahirih Justice Center only* | Wendy Wylegala**<br>KIDS IN NEED OF DEFENSE<br>252 West 37th Street, Floor 15<br>New York, NY 10018<br>646-970-2913<br>wwylegala@supportkind.org<br><br>*Counsel for Plaintiffs* |

17