**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ASYLUMWORKS, *et al.*, | |
| Plaintiffs, | Civil Action No. 20-cv-3815 (BAH) |
| v. | Judge Beryl A. Howell |
| ALEJANDRO N. MAYORKAS, *et al.*, | |
| Defendants. | |

**<u>MEMORANDUM OPINION</u>**

On February 7, 2022, this Court held that two rules concerning employment authorization applications of asylum seekers promulgated by the U.S. Department of Homeland Security ("DHS") were void *ab initio* having been ratified by an improperly appointed Secretary of Homeland Security.  *See Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11 (D.D.C. 2022).  As a result, the two DHS rules were vacated and set aside, as requested in a motion for partial summary judgment filed by plaintiffs, including three nonprofit organizations and eighteen individual noncitizen asylum seekers.  More than five months later, plaintiffs asserted that defendants had yet to complete full vacatur of those rules because no updates had been made to the online version of the Code of Federal Regulations, known as the eCFR, nor to the relevant application form and accompanying instructions.  Plaintiffs also raised that vacatur of the rules and reversion to a prior DHS requirement to process applications within 30 days of their filing caused a significant backlog in application processing exceeding that deadline.  Plaintiffs thus requested that this Court intervene in some manner to enforce the February 2022 Order.  *See* Pls.' Mot. to Enforce J. or for Additional Injunctive Relief ("Pls.' Mot. to Enforce"), ECF No. 47.  Days later, plaintiffs filed a second motion seeking an award of $762,583.60 in attorneys'

fees and expenses paid for by defendants pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412.  *See* Pls.' Mot. for Award of Attorneys' Fees & Expenses Pursuant to the Equal Access to Justice Act ("Pls.' Mot. for Fees"), ECF No. 48.

In the months since plaintiffs submitted both motions, defendants progressed in largely completing plaintiffs' requested relief.  The agency revised the form application and instructions on September 6, 2022, *see* Defs.' Notice of Publication of Revised Form I-765 and Instructions ("Defs.' Sept. 7, 2022 Notice") at 1, ECF No. 56; it published a final rule implementing the rules' vacatur on September 22, 2022, *see* Defs.' Notice ("Defs.' Sept. 27, 2022 Notice") at 1, ECF No. 58 (citing *Asylum Application, and Employment Authorization for Applicants; Implementation of Vacatur*, 87 Fed. Reg. 57,795 (Sept. 22, 2022)); and it updated the eCFR accordingly on September 26, 2022, *see id.*  Defendants have yet to resolve the backlog of pending applications.

Separately, defendants agree with plaintiffs that the agency must pay the latter's attorneys' fees and costs, *see* Defs.' Resp. in Opp'n to Pls.' Mots. to Enforce J. or for Injunctive Relief & for Attorneys' Fees ("Defs.' Opp'n") at 1, 9, 16, ECF No. 54, but raise disputed issues over the hourly payment rate owed and the number of hours worked for which plaintiffs may recover, resulting in an approximate difference of $650,000 between plaintiffs' requested fees and defendants' counteroffer.

For the reasons explained below, plaintiffs' motion to enforce judgment or for additional injunctive relief is denied, and plaintiffs' motion for award of attorneys' fees and expenses under EAJA is granted in part and denied in part.

## I.    BACKGROUND

The factual and procedural background regarding the two vacated rules is set out in the prior opinion granting plaintiffs' motion for summary judgment, *see Asylumworks*, 590 F. Supp. 3d at 13–19, and need not be repeated here.  Described below is the factual background and procedural history relevant to the instant motions.

### A.    Relevant Prior Litigation

This dispute concerns two DHS rules promulgated in 2020 concerning asylum seekers' access to employment authorization documents.  The first, *Removal of 30-Day Processing Provision for Asylum Applicant-Related Form I-765 Employment Authorization Applicants* ("Timeline Repeal Rule"), 85 Fed. Reg. 37,502, *et seq.*, (June 22, 2020), "eliminated an earlier regulation that imposed a thirty-day time limit for the United States Citizenship and Immigration Services [("USCIS")] . . . to process initial EAD applications and became effective August 21, 2020," *Asylumworks*, 590 F. Supp. at 17.  The second, *Asylum Application, Interview, and Employment Authorization for Applicants* ("EAD Bar Rule"), 85 Fed. Reg. 38,532, *et seq.*, (June 26, 2020), "modified regulations governing asylum applicants' eligibility for employment authorization and became effective on August 25, 2020," *Asylumworks*, 590 F. Supp. at 17.

In their initial complaint filed on December 23, 2020, and in their amended complaint filed on March 23, 2021, plaintiffs alleged that those rules were arbitrary and capricious and contrary to the Immigration and Nationality Act ("INA") in violation of the Administrative Procedure Act ("APA") because then-Acting Secretary of Homeland Security Chad Wolf "was not validly serving as Acting DHS Secretary under the Homeland Security Act ("HSA"), Federal Vacancies Reform Act ("FVRA"), and the Appointments Clause when he signed the rules." *Id.* at 18.  The parties then cross-moved for summary judgment on this claim.  *Id*. at 18–19.

On February 7, 2022, plaintiffs' partial motion for summary judgment was granted and defendants' cross-motion was denied following a finding that the plain text of the FVRA and the lawful order of succession authorized under the HSA required certain procedures that defendants failed to follow in allowing Wolf to become Acting Secretary and thus voided *ab initio* his ratification of the Timeline Repeal Rule and the EAD Bar Rule. *Id.* at 19–20. The Memorandum Opinion's corresponding Order stated that "judgment is entered in favor of the plaintiffs" and that both the Timeline Repeal Rule and the EAD Bar Rule "are hereby VACATED and SET ASIDE." Order ("February 2022 Order"), *Asylumworks v. Mayorkas*, No. 20-cv-3815 (BAH), ECF No. 41 (emphasis in original).[1]

### B.     Procedural Background

Approximately five months after issuance of the Order, on July 22, 2022, plaintiffs filed the instant Motion to Enforce Judgment or for Additional Injunctive Relief, ECF No. 47, *see* Pls.' Mot. to Enforce, arguing that defendants had yet to comply with the February 2022 Order. Specifically, plaintiffs identified three actions, which they posit are necessary to effectuate full vacatur of the rules, that defendants had not taken to: (1) "update the online Code of Federal Regulations website known as eCFR;" (2) "amend the Form I-765 Application for Employment Authorization ('Form') and the accompanying Instructions For Application of Employment Authorization ('Form Instructions') that appear on the United States Citizenship and Immigration Services ('USCIS') website;" and (3) "process Employment Authorization Document ('EAD') applications according to the previously existing regulations, which required,

---

[1]     Plaintiffs moved for summary judgment on four of their six claims asserted in their amended complaint, *see* Pls.' Mot. for Partial Summ. J. at 1, ECF No. 25, and so those four claims were resolved by the February 2022 Order. The remaining two claims were asserted in the alternative and argued that the two DHS rules had other substantive problems under the asylum statute, 8 U.S.C. § 1158, and the APA. *See* Am. Compl. ¶¶ 335–38 (claim one regarding the asylum statute), 339–347 (claim two regarding the APA, specifically alleging that defendants failed to adequately justify the rules). Those claims are now moot given the rules' vacatur.

among other things, adjudication within thirty days." *Id.* at 1–2.  Plaintiffs thus sought an order

enforcing the February 2022 vacatur of the rules by directing defendants to perform the three

aforementioned actions by a specific date—updating the eCFR, Form, and Form Instructions

"immediately" and processing all pending applications "within thirty days of their filing date or

within fifteen days of this Court's order for any applications that have been pending for longer

than thirty days." *Id.* at 3.  In the alternative, plaintiffs argue that, if this Court deems them

incapable of obtaining relief through a motion to enforce, a permanent injunction is "appropriate

and necessary." *Id.* at 20.

Plaintiffs subsequently filed, on August 1, 2022, a Motion for Award of Attorneys' Fees

and Expenses Pursuant to EAJA, ECF No. 48, *see* Pls.' Mot. for Fees, arguing that, as the

prevailing party in the prior dispute, plaintiffs were owed an award of attorneys' fees and

expenses paid for by defendants, *id.* at 1–2.  Plaintiffs submitted over 80 pages of declarations

and exhibits of timesheets describing each hour billed to this matter to support their request for

$762,583.60 in fees. *Id.* at 2.[2]

As the parties briefed both motions and during the pendency of this case, defendants took

specific actions that plaintiffs requested.  First, on September 7, 2022, defendants notified the

Court that, the day prior, DHS published the revised Form and Form Instructions on its website.

*See* Defs.' Sept. 6, 2022 Notice.  Then, on September 27, 2022, defendants further notified the

Court that, on September 22, 2022, USCIS "published a final rule implementing this Court's

vacatur order," Defs.' Sept. 27, 2022 Notice at 1; *see Asylum Application, and Employment*

*Authorization for Applicants; Implementation of Vacatur*, 87 Fed. Reg. 57,795 (Sept. 22, 2022),

---

[2]     Although plaintiffs' motion requests both "fees and costs," *see* Pls.' Mot. for Fees at 1–2, they only cite
attorneys' fees as grounds for an award without any mention of other costs, so the award described in this opinion is
likewise limited.

and on September 26, 2022, the eCFR "was updated to reflect the final rule's publication," Defs.' Sept. 27, 2022 Notice at 1.  Finally, on September 28, 2022, defendants provided a third notice informing the Court that a district court in the Western District of Washington, in a case titled *Rosario v. USCIS*, No. 15-cv-813 (JLR), denied a motion to hold USCIS in civil contempt for failing to adjudicate asylum seekers' applications for employment authorization within 30 days of their filing.  *See* Defs.' Notice of Supplemental Authority ("Defs.' Sept. 28, 2022 Notice") at 1, ECF No. 59.  The plaintiffs in the *Rosario* case—who are different from the plaintiffs in the case before this Court—alleged that, since this Court's vacatur of the two DHS rules, USCIS had failed to comply with a permanent injunction issued by the *Rosario* court enjoining USCIS "from further failing to adhere" to the 30-day deadline to adjudicate asylum seekers' applications for employment authorization and thus should be held in civil contempt. Order, *Rosario v. USCIS* ("*Rosario* Sept. 2022 Order") at 2, No. 15-cv-813 (JLR) (W.D. Wash. Sept. 27, 2022), ECF No. 207.  The *Rosario* court denied plaintiffs' motion and, in ruling that civil contempt was inappropriate, reasoned that while "[t]here is no dispute that Defendants have been out of compliance with the permanent injunction since February 2022, . . . the court is satisfied that Defendants have taken 'all reasonable steps' within their power to increase the resources available to adjudicate initial EAD applications, to reduce the backlog of pending applications, and to return to substantial compliance with the court's injunction."  *Id.* at 2.  Since then, the *Rosario* court again denied plaintiffs' third motion to hold USCIS in civil contempt on the same grounds.  *See* Order, *Rosario v. USCIS*, No. 15-cv-813 (JLR) (W.D. Wash. Feb. 14, 2023), ECF No. 219.  Finally, on October 5, 2022, plaintiffs responded to defendants' notices, acknowledging that "[d]efendants have finally updated the electronic version of the Code of Federal Regulations" only after plaintiffs' filed their motion to enforce judgment.  Pls.' Resp. to

Defs.' Notices of Revision of eCFR and Supplemental Authority ("Pls.' Resp.") at 1, ECF No. 60.  Plaintiffs also noted that, in the *Rosario* September 2022 Order, the court mentioned USCIS estimate that it would clear the application backlog by November 15, 2022, *see Rosario* Sept. 2022 Order at 3, which conflicted with defendants' representations to this Court that the backlog would be mostly cleared by September 30, 2022, *see* Defs.' Opp'n at 6.

With the submission of defendants' opposition, *see* Defs.' Opp'n, and plaintiffs' reply, *see* Pls.' Reply in Supp. of Pls.' Mot. to Enforce J. or for Additional Injunctive Relief & Pls.' Mot. for Attorneys' Fees & Expenses Pursuant to the Equal Access to Justice Act ("Pls.' Reply"), ECF No. 57, both of plaintiffs' motions are now ripe for review.

## II.   LEGAL STANDARD

### A.   Motion to Enforce Judgment

A district court's exercise of its authority to enforce its judgments "is particularly appropriate in a case . . . where an administrative agency plainly neglects the terms of a mandate, and the case then returns to the court—under the same docket number and involving the same parties—on a motion to enforce the original mandate." *Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984).  Indeed, "[t]he court is generally the authoritative interpreter of its own remand" and may conduct such interpretations in light of its previous opinions, providing "no deference to [a party's] interpretation of its task."  *AT&T Wireless Servs., Inc. v. FCC*, 365 F.3d 1095, 1099 (D.C. Cir. 2004) (citing *City of Cleveland v. Fed. Power Comm'n*, 561 F.2d 344, 346–47 (D.C. Cir. 1977)).  Success on a motion to enforce a judgment, however, allows a plaintiff only "the relief to which the plaintiff is entitled under its original action and the judgment entered therein."  *Heartland Reg'l Med. Ctr. v. Leavitt*, 415 F.3d 24, 29 (D.C. Cir. 2005) (quoting *Watkins v. Washington*, 511 F.2d 404, 406 (D.C. Cir. 1975)).

**B.      Motion for Attorneys' Fees and Costs under EAJA**

Under the common law "American Rule," "parties are ordinarily required to bear their own attorney's fees," so federal courts "follow 'a general practice of not awarding fees to a prevailing party absent explicit statutory authority.'" *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602 (2001) (internal citation omitted) (quoting *Key Tronic Corp. v. United States*, 511 U.S. 809, 819 (1994)).  EAJA authorizes fee awards to parties prevailing against the United States "and thus amounts to a partial waiver of sovereign immunity." *Ardestani v. INS*, 502 U.S. 129, 137 (1991).  The party seeking fees must meet certain threshold requirements.  *See Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991); 28 U.S.C. § 2412(d)(1)(B) (describing the requirements a party seeking fees must meet).  The attorneys' fees awarded under EAJA are capped at $125 per hour, subject to adjustments for the cost of living, and with alternative grounds to increase that hourly rate.  *See id.* § 2412(d)(2)(A).

## III.     DISCUSSION

In seeking to enforce the February 2022 Order, plaintiffs argue that defendants have failed to provide for full vacatur of the Timeline Repeal Rule and the EAD Bar Rule and thus have failed to comply with that Order.  *See* Pls.' Mot. to Enforce at 1–2.  In seeking attorneys' fees and costs as prevailing parties, plaintiffs contend that the statutory hourly rate may be exceeded here because "[d]efendants acted in bad faith by issuing and enforcing the disputed Rules and opposing [p]laintiffs' request for relief in this action despite Acting Secretary Wolf's clearly unlawful appointment," Pls.' Mot. for Fees at 8–9, and because "[d]efendants' position regarding the legality of the challenged rules was not 'substantially justified' prior to this litigation, during its pendency, or after the Court's decision granting summary judgment," *id.* at 4.

Based on the parties' updates, defendants have completed full vacatur of the rules and any further request for additional relief exceeds the four corners of the February 22 Order and is not properly before this Court.  Plaintiffs' motion to enforce judgment is thus denied.  Plaintiffs are, however, entitled to attorneys' fees under 28 U.S.C. § 2412(d) at the statutory rate adjusted for inflation.

### A.    Defendants Have Fulfilled the February 2022 Order's Mandate

Plaintiffs' motion to enforce describes three actions defendants had not yet taken as of July 22, 2022, when plaintiffs filed their motion, that they argue are part and parcel of a full vacatur of the rules.  By September 27, 2022, defendants had satisfied two of plaintiffs' flagged actions: USCIS published a final rule implementing the February 2022 vacatur order and updated the eCFR, Form, and Form Instructions accordingly.  *See* Defs.' Sept. 7, 2022 Notice at 1; Defs.' Sept. 27, 2022 Notice at 1.  Nonetheless, plaintiffs claim that vacatur still has not occurred because the Form and Form Instructions do not remove language referring to requirements of the now-vacated rules, *see* Pls.' Reply at 3–4, and, they add, the backlog in processing applications exceeds the 30-day deadline now in place following vacatur, resulting in defendants' violation of an existing requirement, *id.* at 8–10; *see also* Pls.' Mot. to Enforce at 16–18.

Plaintiffs' motion to enforce is plainly partially mooted by defendants' final rule implementing vacatur and updates to the eCFR, Form, and Form Instructions.  *See Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 321 (D.C. Cir. 2009) ("A case is moot when 'the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated' in circumstances where 'it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." (quoting *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009))).  Regarding resolution of the application processing backlog, plaintiffs' motion fails for a different reason:  The specific relief conferred by the February 2022

Order did not include that specific relief plaintiffs now request.[3]  To be sure, plaintiffs' amended complaint requests, relevant to this motion, "[v]acatur of the Rules[,]" "[a]n injunction prohibiting [d]efendants, their officials, agents, employees, assigns, and all persons acting in concert or participating with them from implementing or enforcing the Rules[,]" and "[f]or any [i]ndividual [p]laintiffs who have been denied an EAD prior to the Court's Order, an order mandating that [d]efendants promptly adjudicate their applications under the previously-existing rules."  Pls.' Am. Compl., Prayer for Relief ¶¶ d–f, ECF No. 12.  Yet the only relief granted by the Court's original mandate in February 2022 was vacatur.  *See* February 2022 Order (holding that both the Timeline Repeal Rule and the EAD Bar Rule "are hereby VACATED and SET ASIDE").

Despite the various relief plaintiffs requested in their complaint, only vacatur was ordered by this Court and thus defendants were only obligated to vacate and set aside the rules, as they have done.  Plaintiffs may challenge the sufficiency of any further agency act or the reasonableness of the agency's delays in a separate action with the filing of a new complaint. *E.g.*, *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) ("[A] a claim under [5 U.S.C.] § 706(1) [of the APA] can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." (emphasis in original)); *Consol. Freightways v. NLRB*, 892 F.2d 1052, 1059 (D.C. Cir. 1989) (recognizing a claim of agency delay under the

---

[3]      Along with arguing mootness and that plaintiffs are not entitled to their requested relief, defendants also argue that plaintiffs lack standing to assert their motion to enforce because no plaintiff, or individuals in the plaintiff organizations' membership, claims to have been injured by the application processing.  *See* Defs.' Opp'n at 14. Plaintiffs certainly have standing to seek enforcement of the February 2022 Order, given that they had standing to seek the initial relief requested.  *See Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir. 2017) ("[A]n organization may establish Article III standing if it can show that the defendant's actions cause a 'concrete and demonstrable injury to the organization's activities' that is 'more than simply a setback to the organization's abstract social interests." (quoting *Am. Soc'y for Prevention of Cruelty to Animals v. Feld Ent., Inc.*, 659 F.3d 13, 25 (D.C. Cir. 2011))).  Whether plaintiffs have standing to claim relief not previously conferred in the February 2022 Order, however, is not a question this Court need address.

APA, 5 U.S.C. § 555(b), when an agency fails to act "within a reasonable time"); *In re Nat'l Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022) ("When an agency unlawfully withholds or unreasonably delays an action this court would have jurisdiction to review, the All Writs Act empowers us to issue a writ compelling the agency to complete the action so we can exercise our jurisdiction to review it."); *In re Pub. Emps. for Env't Resp.*, 957 F.3d 267, 273 (D.C. Cir. 2020) (granting mandamus relief to compel agency to issue final regulations after a 19-year delay). Plaintiffs have made no such claim.  This Court has conferred all relief deemed necessary and appropriate based on the allegations in plaintiffs' complaint and the parties' cross-motions for summary judgment.  Thus, plaintiffs' motion to enforce judgment is denied.[4]

### B.      Attorneys' Fees Owed

Outlined first is the legal landscape of attorneys' fee requests under EAJA followed by consideration of whether plaintiffs adequately alleged that defendants acted in bad faith throughout this litigation and then the determination of what hourly fee rate and number of hours worked apply to calculate plaintiffs' award.  As noted, plaintiffs are indisputably the prevailing party entitled to attorneys' fees, but the parties dispute the applicable hourly rate and the number of hours.

### 1.      *Hourly Rates under EAJA*

At issue here are two means by which a successful litigant may recover attorney's fees and expenses from the government under EAJA.[5]  First, 28 U.S.C. § 2412(b) provides that "[t]he

---

[4]      In a final effort, plaintiffs briefly argue in the alternative for permanent injunctive relief, *see* Pls.' Mot. to Enforce at 20–22; however, that argument also fails for the same reasons.  Since defendants have fully vacated the two DHS rules, any claim that the agency is contravening those rules or any other statutes requires the filing of a new complaint and request for relief, which may be a request for a permanent injunction, as the plaintiffs did in *Rosario*.

[5]      Plaintiffs' motion for fees blends the requirements of 28 U.S.C. 2412(b) and (d).  *See, e.g.*, Pls.' Reply at 15–16 (plaintiffs articulating that "two special factors warrant a higher rate: (i) Defendants' bad faith; and (ii) Plaintiffs' counsel's unique expertise").  Plaintiffs' bad faith argument is thus understood to be an argument for fees

United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award."  Implicit in this provision is "[a] narrow exception" to the American Rule "where the losing party has acted in 'bad faith'" during the litigation or as part of the conduct giving rise to the lawsuit.  *Am. Hosp. Ass'n v. Sullivan*, 938 F.2d 216, 219 (D.C. Cir. 1991); *see also, e.g.*, *F.D. Rich Co. v. United States*, 417 U.S. 116, 129 (1974) (noting an exception where the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons").  "Examples of" bad faith litigation conduct "include the filing of a frivolous complaint or meritless motion, or discovery-related misconduct."  *Am. Hosp. Ass'n*, 938 F.2d at 219–20 (internal citations omitted).  "Bad faith in conduct giving rise to the lawsuit may be found where 'a party, confronted with a clear statutory or judicially-imposed duty towards another, is so recalcitrant in performing that duty that the injured party is forced to undertake otherwise unnecessary litigation to vindicate plain legal rights.'"  *Id.* at 220 (quoting *Fitzgerald v. Hampton*, 545 F. Supp. 53, 57 (D.D.C. 1982)); *see also Am. Emps. Ins. Co. v. Am. Sec. Bank*, 747 F.2d 1493, 1502 (D.C. Cir. 1984) (stating that the common law "allows an award of attorneys' fees when the party has been the victim of unwarranted, oppressive, or vexatious conduct on the part of his opponent and has been forced to sue to enforce a plain legal right").  "[T]he substantive standard for a finding of bad faith is 'stringent' and 'attorneys' fees will be awarded only when extraordinary circumstances or dominating reasons of fairness so demand.'"  *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 187 F.3d 655, 660 (D.C. Cir. 1999) (per curiam) (quoting *Nepera Chem., Inc. v. Sea–Land Serv., Inc.*, 794 F.2d 688, 702 (D.C. Cir. 1986)).  Any "finding of bad faith must be supported by 'clear and convincing

under § 2412(b), but even if bad faith were considered to be an alleged special factor under § 2412(d), that claim would fail for the same reasons.

evidence,' which 'generally requires the trier of fact, in viewing each party's pile of evidence, to reach a firm conviction of the truth on the evidence about which he or she is certain.'" *Id.* (first quoting *Shepherd v. Am. Broad. Cos., Inc.*, 62 F.3d 1469, 1476–78 (D.C. Cir. 1995), and then quoting *United States v. Montague*, 40 F.3d 1251, 1255 (D.C. Cir. 1994)).  No statutory cap is applied to the hourly rate used to calculate attorney's fees under § 2412(b).  *See* 28 U.S.C. § 2412(b); *see also Am. Hosp. Ass'n*, 938 F.2d at 219 (contrasting § 2412(b) and (d)).

Second, § 2412(d) provides for a mandatory award to the prevailing party not "in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor . . . justifies a higher fee," 28 U.S.C. § 2412(d)(2)(A), and "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust," *id*. § 2412(d)(1)(A).[6]  Thus, to prevail on a claim for fees and costs under § 2412(d), a party must meet five requirements: (1) the party must be a "prevailing party," *see Astrue v. Ratliff*, 560 U.S. 586, 591 (2010) ("[T]he term 'prevailing party' in subsection (d)(1)(A) carries its usual and settled meaning — prevailing litigant."); (2) the government's position cannot be substantially justified; (3) no special circumstances exist that would make an award unjust; (4) the litigant must meet certain net worth and size requirements; and (5) the fees and costs sought must be reasonable.  *See* 28 U.S.C. § 2412(d)(1)(A) & (B).

### 2.     *Plaintiffs Have Not Shown Bad Faith by Defendants*

Starting first with § 2412(b), plaintiffs argue that defendants acted in bad faith before, during, and after the summary judgment litigation and ultimate judgment, entitling plaintiffs to a fee amount at the market rate.  Before the litigation, defendants lacked the proper authority in violation of the FVRA, HSA, and the Appointments Clause when the rules were ratified.  *See*

---

[6]     Additionally, EAJA defines a "party" eligible for attorneys' fees and costs by, *inter alia*, certain net worth and/or number of employees at the time the civil action was filed.  28 U.S.C. § 2412(d)(2)(B).

Pls.' Mot. for Fees at 4–5.  During the litigation, defendants sought a stay of proceedings, which was denied, *see* Memorandum Opinion & Order Denying Defs.' Mot. to Stay, ECF No. 22, and then proffered arguments to oppose summary judgment that plaintiffs successfully argued were contrary to the text of the FVRA, HSA, and the Appointments Clause and were rejected by five other district courts.  *See* Pls.' Mot. for Fees at 5–6.  Even after issuance of the February 2022 Order, according to plaintiffs, defendants "dragged their feet on implementing the required vacatur and taking necessary actions to ensure the vacated rules no longer affect asylum seekers."  *Id.* at 7.  While plaintiffs' frustration with defendants' litigation posture and conduct is palpable, these assertions of bad faith fall flat and do not warrant grant of an award of attorneys' fees to plaintiffs under 28 U.S.C. § 2412(b).

Defendants' actions both before and during the litigation were not in bad faith because the law regarding Wolf's appointment as Acting Secretary was not clearly settled law at the time the challenged rules were enacted, *see Am. Emps. Ins. Co. v. Am. Sec. Bank*, 747 F.2d 1493, 1503 (D.C. Cir. 1984) (affirming a finding of no bad faith to justify attorneys' fees because "the law on the issue" before the district court "was not settled"), nor during the pendency of this litigation since the holdings of various district courts are not binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.").  The ability of various courts across the country to disagree is not only permitted, but ripe grounds for the Supreme Court's grant of *certiorari*.  *See, e.g.*, *Heartland Plymouth Court MI, LLC v. NLRB*, 838 F.3d 16, 21–22 (D.C. Cir. 2016) (stating that allowing an issue to "percolat[e] among the circuits" and the "generating [of] a circuit split [] can improve the likelihood of *certiorari* being granted"); *Johnson v. U.S. R.R. Retirement Bd.*, 969

F.2d 1082, 1097 (D.C. Cir. 1992) (Buckley, J., concurring in part and dissenting in part) ("Catching Congress's ear . . . is more easily said than done; and given the huge volume of petitions for *certiorari* that flood the Supreme Court, it is often [more] necessary to establish a split among the circuits before the Court will examine [the] issue.").  Additionally, although defendants' interpretation of the statutes was ultimately rejected, defendants' statutory arguments were neither frivolous nor meritless.  *Cf. Am. Emps. Ins. Co.*, 747 F.2d at 1502 (attorneys' fees permitted "when the party has been the victim of unwarranted, oppressive, or vexatious conduct on the part of his opponent and has been forced to sue to enforce a plain legal right"); *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980) (affirming the district court's holding that the litigant did not engage in bad faith regardless of the merit in the party's claims because, *inter alia*, the litigant was not "substantially motivated by vindictiveness, obduracy or mala fides" nor did the litigant "abuse [] the judicial process in the methodology of its prosecution").

Defendants' actions after resolution of the cross-motions for summary judgment, although slow-moving, was not so dilatory as to suggest bad faith.  Administrative delay in the many-level review at agencies is routine such that a seemingly simple task, like updating the eCFR, the Form, and Form Instructions, requires multiple steps and various input.  *See, e.g.*, *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100–02 (D.C. Cir. 2003) (underscoring the importance of an agency's "competing priorities," including allocation of limited resources, as a consideration in determining whether an agency action was unreasonably delayed in violation of the APA); *Pub. Citizen Health Rsch. Grp. v. Brock*, 823 F.2d 626, 628–29 (D.C. Cir. 1987) (finding that "bureaucratic inefficiency rather than bad faith" justified OSHA's delay in issuing a notice of proposed ruling).  Surely, defendants' continued delay in addressing

the backlogged applications—which, to this Court's knowledge, has not been remedied as of issuance of this opinion despite defendants' estimations of September then November 2022 to clear that backlog, *see* Defs.' Opp'n at 6; Defs.' Sept. 28, 2022 Notice at 2—is challenging and dismaying for all asylum seekers waiting in the application queue.  Nonetheless, the backlog in applications was a foreseeable result of the Court's vacatur order and the agency's efforts to resolve that backlog given its limited resources do not support a finding of bad faith.  Thus, plaintiffs fail to prove that defendants acted in bad faith throughout this litigation and so an award of attorneys' fees under 28 U.S.C. § 2412(b) is not appropriate here.

### 3.    *Statutory Hourly Rate Applies to Hours Plaintiffs Claim*

Although § 2412(b) does not serve as the vehicle through which plaintiffs may claim an award of fees due to defendants' bad faith, they find better footing under § 2412(d).  The parties agree that plaintiffs are the prevailing party, *see* Pls.' Mot. for Fees at 3; Defs.' Opp'n at 16, and defendants "do not argue for purposes of this fee litigation that their position was substantially justified," Defs.' Opp'n at 16.  Additionally, defendants do not challenge plaintiffs' fulfillment of the net worth and size requirements, *see* Pls.' Mot. for Fees at 4 (asserting that plaintiffs meet both requirements), nor do defendants argue that an award would be unjust.  Plaintiffs then are left to prove that their requested fees and costs are reasonable.  Despite acknowledging that a reasonable rate is "not . . . in excess of $125 per hour" under EAJA, 28 U.S.C. § 2412(d)(2)(A), *see* Pls.' Mot. for Fees at 13 n.5 (arguing in the alternative for fees at EAJA's statutory rate), plaintiffs argue that an enhanced fee at the market rate should apply because of various special factors, namely involving plaintiffs' counsel's expertise, *see id.* at 10–13.  Along with challenging the hourly rate, defendants assert that plaintiffs billed an excessive number of hours. *See* Defs.' Opp'n at 24–30.  Thus, the key questions for fees under § 2412(d) is whether the

factors plaintiffs articulate justify an hourly attorney fee rate greater than $125 per hour and whether the number of hours worked for which plaintiffs seek reimbursement is excessive.  Both questions are addressed in turn.

<em>a.      Hourly Rate</em>

Plaintiffs argue that the following special factors apply: (1) many of plaintiffs' attorneys are bilingual Spanish speakers, Pls.' Mot. for Fees at 10–11; and (2) additional plaintiffs' counsel "possess ample background knowledge in a niche area of law," here being immigration, asylum, and administrative law, in federal court, *id.* at 11–12.  Those characteristics of plaintiffs' counsel, however, do not amount to special factors under EAJA.  To be sure, the Supreme Court has defined legal expertise to be a special factor justifying higher rates if the requesting party's attorneys "hav[e] some distinctive knowledge or specialized skill needful for the litigation in question—as opposed to an extraordinary level of the general lawyerly knowledge and ability useful in all litigation."  *Pierce v. Underwood*, 487 U.S. 552, 572 (1988); *see also Truckers United for Safety v. Mead*, 329 F.3d 891, 895 (D.C. Cir. 2003) ("We have similarly declined to construe EAJA's fee enhancement provision in a liberal fashion.").  Example of such specialized skill as defined by the Supreme Court are "an identifiable practice specialty such as patent law, or knowledge of foreign law or language."  *Truckers United for Safety*, 329 F.3d at 895.  Examples of helpful but not specialized skill under this definition are "the novelty and difficulty of issues, the undesirability of the case, the work and ability of counsel, and the results obtained."  *Pierce*, 487 U.S. at 573 (internal quotations omitted).

Under that standard, employing bilingual Spanish-speaking lawyers in this case is not a special factor to justify enhanced fees.  No doubt bilingual lawyers, particularly those with experience in this field of law, were helpful in this litigation.  *See* Pls.' Mot. for Fees at 10–11.

The Supreme Court has also identified foreign language as a practice specialty within EAJA's definition of such.  *See Pierce*, 487 U.S. at 572.  Yet plaintiffs have not proven that their attorneys' language skills were "needful for the litigation in question," *see id.*, when Spanish-English non-lawyer translators could similarly have been employed.  Of the support plaintiffs cite on this point, those courts, all of which are outside of this Circuit, determined that fluency in a foreign language was necessary to the litigation, *see Jean v. Nelson*, 863 F.2d 759, 774 (11th Cir. 1988) (finding that one attorney's fluency in both French and Haitian Creole was "crucial" in preparing non-English-speaking plaintiffs and witnesses to testify at trial to conditions they experienced while detained by the Immigration and Naturalization Service pending adjudication of their asylum applications, a practice plaintiffs challenged at trial); *Flores v. Sessions*, No. 85-cv-4544, 2017 WL 8943169, at *5 (C.D. Cal. Nov. 14, 2017) (holding that attorneys' Spanish fluency was "essential" because it enabled counsel to prepare declarations of minors detailing the detention conditions in U.S. Customs and Border Patrol stations), whereas here, plaintiffs have only proven that bilingual speakers were helpful and efficient.

Additionally, while the issues, statutory landscape, factual background, and regulatory history presented in this case were complex and multifaceted, precedent has determined that administrative law and immigration law do not constitute "special factor" expertise under EAJA or *Pierce.  See Select Milk Producers, Inc. v. Johanns*, 400 F.3d 939, 951 (D.C. Cir. 2005) (reiterating the Circuit's prior holding in *F.J. Vollmer* that "nothing in the text or legislative history of EAJA suggests that Congress intended to make all lawyers practicing administrative law in technical fields eligible for a fee enhancement" (internal quotations omitted)); *see also Nat'l Ass'n of Mfrs. v. U.S. Dep't of Labor*, 962 F. Supp. 191, 198–99 (D.D.C. 1997), *aff'd*, *Nat'l Ass'n of Mfrs. v. Dep't of Labor*, 159 F.3d 597 (D.C. Cir. 1998).  The Circuit has acknowledged

that "lawyers practicing administrative law typically develop expertise in a particular regulated industry," or in this case, in a particular area of immigration law like asylum cases, but these attorneys "usually gain this expertise from experience, not from the specialized training justifying fee enhancement." *F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996); *see also In re Sealed Case 00-5116*, 254 F.3d 233, 236 (D.C. Cir. 2001) ("Although federal election law involves a complex statutory and regulatory framework, the field is not beyond the grasp of a competent practicing attorney with access to a law library and the other accoutrements of modern legal practice." (internal quotations omitted)); *cf. F.J. Vollmer*, 102 F.3d at 598–99 (holding that "specialization in firearms law" did not justify enhanced fees as a "special factor[]" under EAJA); *In re Sealed Case 00-5116*, 254 F.3d at 236 (refusing to deem federal election law, experience in federal litigation, and familiarity with relevant administrative record as "special factors" under EAJA); *Chynoweth v. Sullivan*, 920 F.2d 648, 650 (D.C. Cir. 1990) (failing to deem Social Security benefits law as a special factor).  For the same reasons, Spanish-speaking lawyers with expertise in immigration and administrative law in federal litigation do not result in a special factor.

Since plaintiffs meet all other requirements for fees under § 2412(d) and no special factor applies, plaintiffs may claim fees at the statutory rate of $125 per hour, pursuant to § 2412(d). That statutory rate may also be adjusted up to account for inflation according to the Ninth Circuit's calculations in *Thangaraja v. Gonzales*, 428 F.3d 870, 876–77 (9th Cir. 2005), which the parties agree should apply to account for inflation.  *See* Pls.' Mot. for Fees at 13 n.5 (plaintiffs request that this Court use the Ninth Circuit's published chart depicting EAJA statutory rate adjusted each year for inflation); Defs.' Opp'n at 17 n.6 (defendants' agreement to

use the Ninth Circuit chart); Pls.' Reply at 16 nn.7 & 8 (clarifying that plaintiffs' request the

adjusted rate from 2020, which is $207.78).[7]

b.      <em>Number of Hours Worked</em>

Finally, defendants argue that plaintiffs billed an "excessive" number of hours that do not

justify payment in this case.  *See* Defs.' Opp'n at 24–30.  They organize plaintiffs' excessive

billing into the following five categories: (1) "[p]laintiffs billed excessive hours prior to filing the

complaint," *id.* at 25–26; (2) plaintiffs billed time spent recruiting individual plaintiffs, preparing

retainer agreements, and conducting work before formation of any attorney-client relationship,

*id.* at 26–28; (3) "[p]laintiffs billed excessive hours for summary judgment briefing," *id.* at 28–29;

(4) [p]laintiffs are not entitled to fees for their motion to enforce," *id.* at 29; and (5) [p]laintiffs billed

excessive hours for their motion for attorney's fees," *id.* at 29–30.  They then posit that the correct

number of hours worked can be calculated using an equation of 1.1 hours per page of the filing.

*See id.* at 26 (citing *Elec. Priv. Info. Ctr. v. FBI*, 80 F. Supp. 3d 149, 158 (D.D.C. 2015)).

No category of fees amounts to excessive billing.  For categories one, three, and five,

defendants' facial disagreement with how much time plaintiffs spent preparing their materials

and filings does not prove that such time billed was unreasonable.  *See, e.g.*, *Open Communities*

*Alliance v. Carson*, No. 17-cv-2192 (BAH), 2018 WL 8622230, at *5 (D.D.C. June 15, 2018)

(summarizing case law explaining that numerous attorneys staffed on a matter does not

necessarily lead to a finding of excessive billing).  The number of hours worked on this case

reflects the complicated issues at hand involving multiple individual plaintiffs, organizations,

statutes, and agency rules with complex regimes and implicating a critical area of immigration

---

[7]      The Ninth Circuit has calculated each year's statutory rate under EAJA according to *Thangaraja*'s
guidelines.  *See* Statutory Maximum Rates Under the Equal Access to Justice Act, UNITED STATES COURTS FOR THE
NINTH CIRCUIT (2022), https://www.ca9.uscourts.gov/attorneys/statutory-maximum-rates/.

law over the course of two presidential administrations.  Those complexities are incapable of distillation down to a single mathematical equation to calculate plaintiffs' counsel's productivity.  To imply that attorneys' time should also be cut short because of the availability of similar work product is also meritless.  *See* Defs.' Opp'n at 25–26.  The Court will not reward a suggestion that plaintiffs' counsel should have copied-and-pasted together their materials to save the government's time and money.

Also unpersuasive is defendants' contention that, because "many asylum-seekers arrive in this country with little money," attorneys with asylum law expertise are available at EAJA statutory rates.  Defs.' Opp'n at 24 n.11.  Not only is that argument difficult to follow, but its implication is also incorrect:  No attorney should be paid less for their legal work simply because their clients are indigent.  As plaintiffs counter, the purpose of EAJA is to incentivize lawyers to accept indigent clients.  *See* Pls.' Reply at 20 n.12 (citing H.R. REP. NO. 96-1418, at 5 (1980)).  Thus, categories one, three, and five regarding the number of hours worked by plaintiffs' counsel on the complaint, summary judgment briefing, and the motion for attorneys' fees is not excessive.

Category two is also not grounds for a finding of excessive billing.  For the same reasons identified in *Open Communities*, client recruitment in a complex suit challenging two agency rules and the coordination of those efforts between counsel for three civil rights organizations and one law firm here too "presents challenges beyond simply establishing 'the formal relationship between' a single plaintiff and its attorneys."  *Open Communities*, 2018 WL 8622230, at *4 (quoting *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 973 (D.C. Cir. 2004)).

Lastly, plaintiffs may collect an award for hours under category four.  Despite denial of their motion to enforce, plaintiffs are still the prevailing party or prevailing litigant in this case.

*See Astrue*, 560 U.S. at 592–93.  After five months of apparent inaction by defendants, plaintiffs were left with little choice to fulfill their professional obligations to their clients but to file their motion to enforce DHS to vacate the rules in full—not just in their internal processes but through the public-facing vacatur reflected in the eCFR and the Form and Form Instructions.  Those changes, eventually implemented by defendants almost seven months after issuance of the February 2022 Order, were not voluntary efforts by the government, but rather were pursuant to Court-ordered mandates.  *Cf. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) ("These decisions, taken together, establish that enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees." (internal citation omitted)).  Thus, plaintiffs shall be reimbursed for their diligence in effectuating the Court's Order.

\* \* \*

After parsing through the parties' various fee disputes, plaintiffs are awarded attorneys' fees at EAJA's statutory rate of $125 per hour, as adjusted for inflation according to the parties' agreed-to rate articulated by the Ninth Circuit for the year 2020, which is $207.78 per hour.  The total number of hours worked submitted by plaintiffs is 1,427.3 hours, which includes the number of hours worked on plaintiffs' motion to enforce, which is 158.1 hours.[8]  That number of hours multiplied by the 2020-adjusted statutory fee rate produces plaintiffs' award of $296,564.39.

---

[8]     The total number of hours worked and the number of hours worked only on the motion to enforce was available at the following locations in plaintiffs' materials: Pls.' Mot. to Enforce, Declaration of Deepa Acharya, Ex. A1, QE Time at 20, ECF No. 48-1; *id.*, Declaration of Keren Zwick, Ex. B1, NIJC Time at 11, ECF No. 48-2; *id.*, Declaration of Annie Daher, Ex. D1, CGRS Time at 13, ECF No. 48-4; *id.*, Declaration of Wendy Wylegala, Ex. E1, KIND Time at 4, ECF No. 48-5.

**IV.     CONCLUSION**

For the foregoing reasons, plaintiffs' motion to enforce judgment or for additional injunctive relief is denied and plaintiffs' motion for award of attorneys' fees and expenses pursuant to EAJA is granted in part and denied in part.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:   March 31, 2023

_____
BERYL A. HOWELL
District Judge